UNITED STATES DISTRICT COURT
SOUTHERNN DISTRICT OF NEW YORK

-------------------------------------------------------------------X     Docket No.: 20-cv-01390

AMY MILLER,                                                                              (LAP)(BCM)

                                            Plaintiff,

                -against-

LEVI & KORSINSKY, LLP, EDUARD KORSINSKY,
and JOSEPH LEVI,

                                            Defendants.

-------------------------------------------------------------------X

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS THE COUNTERCLAIMS PURSUANT TO FED. R. CIV. PROC. 12(B)(1) & (6)

MADUEGBUNA COOPER LLP
30 Wall Street, 8th Floor
New York, NY 10005
(232) 232-0155
Attorneys for Plaintiff

**On the Brief:**
Samuel O. Maduegbuna, Esq.
William W. Cowles, Esq.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES..................................................................................ii-v

PRELIMINARY STATEMENT......................................................................................1

PROCEDURAL HISTORY ...........................................................................................1

STATEMENT OF ALLEGED FACTS .........................................................................2

MOTION TO DISMISS STANDARD ..........................................................................4

ARGUMENT ................................................................................................................4

     I.     Defendants' Faithless Servant Counterclaim Must Be Dismissed.........................4

          A.  Legal Standard ..........................................................................5

          B.  Defendants Tolerated Miller's Supposedly Unfaithful Actions and Waived any Claim under the Faithless Servant Doctrine................................................7

          C.  Defendants' Claims are Too Minor to State a Faithless Servant Claim............9

     II.     Defendants' Counterclaim for Tortious Interference with Prospective Economic Advantage Must be Dismissed..............12

     III.    The Court should Decline to Exercise Supplemental Jurisdiction over Defendants' Permissive Counterclaims ................14

CONCLUSION ............................................................................................................17

# TABLE OF AUTHORITIES

**Cases**

*16 Casa Duse, LLC v. Merkin*,
  791 F.3d 247 (2d Cir. 2015)............................................................................ 12,13

*Amaranth LLC v. J.P. Morgan Chase & Co.*,
  888 N.Y.S.2d 489 (1st Dept. 2009) ...................................................... 13

*Arnold K. Davis & Co., Inc. v. Ludemann*,
  160 A.D.2d 614 (1st Dept. 1990)............................................................. 9

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..................................................................................... 4

*Babbitt v. Koeppel Nissan, Inc.*,
  18-cv-5242 (NGG)(CLP), 2020 WL 3183895 (E.D.N.Y. June 15, 2020) .............................. 6,7

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007).................................................................................... 4

*Berwick v. New World Network Intern., Ltd.*,
  06-cv-2641, 2007 WL 949767 (S.D.N.Y. March 28, 2007).................................... 13

*Boyd v. Nationwide Mut. Ins. Co.*,
  208 F.3d 406 (2d Cir. 2000)..................................................................... 13

*Bu ex rel. Bu v. Benenson*,
  181 F.Supp.2d 247 (S.D.N.Y. 2001)......................................................... 16

*Carco Group, Inc. v. Maconachy*,
  383 F. App'x 73 (2d Cir. 2010) ................................................................ 5,10

*Catskill Dev., L.L.C. v. Park Place Entm't Corp.*,
  547 F.3d 115 (2d Cir. 2008)............................................................... 12 n. 2

*Design Strategy, Inc. v. Davis*,
  469 F.3d 284 (2d Cir. 2006).................................................................. 5

*Doe v. Solera Capital LLC*,
  18-cv-1769 (ER), 2019 WL 1437520 (S.D.N.Y. Mar. 31, 2019)................................. 6,7,10,11

*Ello v. Singh*,
  531 F. Supp. 2d 552 (S.D.N.Y. 2007), *as amended* (Nov. 13, 2007) ....................... 13

*Farricker v. Penson Develop., Inc.*,
   07-cv-11191 (DAB), 2010 WL 845983 (S.D.N.Y. March 4, 2010) ........................................ 8

*Ford v. Clement*,
   834 F.Supp. 72 (S.D.N.Y.1993), *aff'd*, 29 F.3d 621 (2d Cir. 1994) ........................................ 14

*Friedman v. Coldwater Creek, Inc.*,
   321 F. App'x 58 (2d Cir. 2009), *aff'd*, 321 F. App'x 58 (2d Cir. 2009) ............................... 12,13

*Ginsberg v. Valhalla Anesthesia Assoc., P.C.*,
   971 F.Supp. 144 (S.D.N.Y. 1997) ........................................ 16

*Goldman Marcus, Inc. v. Goldman*,
   No. 99-cv-11130(KMW), 2000 WL 297169 (S.D.N.Y. Mar. 21, 2000) ................................. 17

*Grewal v. Cuneo*, 13-cv-6836 (RA),
   2016 WL 308803 (S.D.N.Y. Jan. 25, 2016) ........................................ 10,11

*H.Q. Buick-Nissan, Inc. v. Michael Oldsmobile*,
   539 N.Y.S.2d 355 (1st Dept. 1989) ........................................ 8

*Harris v. Mills*,
   572 F.3d 66 (2d Cir. 2009) ........................................ 4

*Jones v. Ford Motor Credit Co.*,
   358 F.3d 205 (2d Cir. 2004) ........................................ 15

*Khodeir v. Sayyed*,
   323 F.R.D. 193 (S.D.N.Y. 2017) ........................................ 15

*Kirch v. Liberty Media Corp.*,
   449 F.3d 388 (2d Cir. 2006) ........................................ 12

*Leary v. Al-Mubaraki*,
   18-cv-0048 (LTS)(HBP), 2019 WL 4805849 (S.D.N.Y. Sept. 30, 2019) ........................... 7,8,9

*Levine v. Bochner*,
   517 N.Y.S.2d 270 (2d Dept. 1987) ........................................ 9

*Malik v. Meissner*,
   82 F.3d 560 (2d Cir. 1996) ........................................ 4

*Maritime Fish Prods., Inc. v. World–Wide Fish Prods., Inc.*,
   474 N.Y.S.2d 281 (1st Dep't 1984) ........................................ 5

*Mottola v. Denegre,*
    12-cv-3465 (LAP), 2012 WL 12883775 (S.D.N.Y. June 8, 2012)..................................... 13,14

*Murray v. Beard,*
    102 N.Y. 505, 7 N.E. 553 (1886)........................................................................ 5,6

*Phansalkar v. Andersen Weinroth & Co., L.P.,*
    344 F.3d 184 (2d Cir. 2003)........................................................................ 5,6,7,11

*Primiani v. Vintage 185,*
    18-cv-2237, 18-cv-2893 (ADS), 2019 WL 486087 (E.D.N.Y. Feb. 6, 2019) ........................ 10

*Probulk Carriers Ltd. v. Peraco Chartering USA LLC,*
    11-cv-5686 (RJS), 2012 WL 3095319 (S.D.N.Y. July 20, 2012)................................. 7

*Ritani, LLC v. Aghjayan,*
    880 F.Supp.2d 425 (S.D.N.Y. 2012)................................................................ 14

*Romero v. Bestcare, Inc.,*
    15-cv-7397 (JS)(GRB), 2018 WL 1702001 (S.D.N.Y. Feb. 28, 2018) ................................ 15

*Sanders v. Madison Square Garden, L.P.*
    06-cv-589 (GEL), 2007 WL 1933933 (S.D.N.Y. July 2, 2007) ........................................ 7,9

*Schanfield v. Sojitz Corp.,*
    663 F.Supp.2d 305 (S.D.N.Y. 2009)................................................................ 7

*Schwartz v. Leonard,*
    526 N.Y.S.2d 506 (2d Dept. 1988) ................................................................ 11

*Scutti Enter., LLC v. Park Place Enter.Corp.,*
    322 F.3d 211 (2d Cir. 2003)........................................................................ 14

*Spencer v. Banco Real, S.A.,*
    623 F. Supp. 1008 (S.D.N.Y. 1985)................................................................ 17

*Stefanovic v. Old Heidelberg Corp.,*
    18-cv-2093 (LTS)(KNF), 2019 WL 3745657 (S.D.N.Y. Aug. 8, 2019) ................................ 7

*Torres v. Gristede's Operating Corp.,*
    628 F.Supp.2d 447 (S.D.N.Y. 2008)............................................................ 7,15,16,17

*United Mine Workers of Am. v. Gibbs,*
    383 U.S. 715 (1966)................................................................................ 16

*W. Elec. Co. v. Brenner,*
  41 N.Y.2d 291 (1977) ....................................................................................... 5

*Walter Karl, Inc. v. Wood*,
  528 N.Y.S.2d 94 (2d Dept. 1988) ...................................................................... 8

*Walton v. Hadley*,
  No. 13-cv-7907 (ER), 2014 WL 3585525 (S.D.N.Y. July 10, 2014) ....................... 4

**Statutes**

28 U.S.C. § 1367 ......................................................................................... 14,15,16,17

Fed.R.Civ.P. 8(a) ................................................................................................... 4

Fed.R.Civ.P. 12(b) ................................................................................................. 4

## PRELIMINARY STATEMENT

Plaintiff Amy Miller ("Miller" or "Plaintiff") submit this memorandum of law in support of her motion to dismiss the counterclaims brought by Defendants Levi & Korsinsky, LLP ("L&K"), Eduard Korsinsky and Joseph Levi (collectively, "Defendants") pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6) of the Federal Rules of Civil Procedure. (Dkt. #19, Defendants' Answer and Counterclaims ("Answer"), dated June 1, 2020.)

Defendants refuse to take responsibility for discriminating against Miller, a former partner in their firm, based on her gender and retaliating against her for complaining about unequal pay by terminating her employment. Worse, Defendants now filed meritless counterclaims against Miller to bully her for challenging their violation of her civil rights and to intimidate their current employees.

In their eagerness to attack and distract, Defendants bring forth hopelessly flawed and implausible faithless servant and tortious interference with prospective economic advantage claims. *First*, the faithless servant claim falters because Defendants tolerated Miller's known allegedly improper behavior and, even if they had not, Defendants failed to plead a pattern of material and substantial self-dealing. *Second*, the tortious interference claim fails because the counterclaims assert no conduct constituting an independent tort or crime. *Third*, and in the alternative, the counterclaims should be dismissed because they are unrelated, permissive counterclaims over which the court need not exercise supplement jurisdiction.

## PROCEDURAL HISTORY

On February 18, 2020, Miller filed her complaint seeking declaratory judgment and money damages to remedy discrimination on the basis of sex, familial status and caregiver status under Title VII of the Civil Rights Act, the Equal Pay Act, and state and city human rights laws. (Dkt. #

1.) Plaintiff, an accomplished attorney with an extensive background in securities and shareholder derivative litigation and who was a partner with Defendant L&K, contends that due to her sex, familial status and caregiver status, her employment relationship with Defendants was adversely affected, and her employment was eventually unjustifiably terminated on March 28, 2019, and in retaliation for her complaints of unequal pay due to her gender. (*Id.*) On June 1, 2020, Defendants filed their Answer and two counterclaims. (Answer *see gen*.)

## STATEMENT OF ALLEGED FACTS[1]

In support of their two counterclaims, Defendants plead that Miller "[o]vertly and vocally unhappy with various aspects of her work arrangements and compensation, upon information and belief, began to pursue career opportunities elsewhere and to seek favor from colleagues and mentors at law firms where she had worked previously or where she had professional relations by virtue of L&K's representation of clients in multi-plaintiff derivative actions." (Answer ¶ 196.) "At the same time that Plaintiff pursued and courted others for her future career opportunities, she took actions inconsistent with her duty of good faith and loyalty to L&K." (*Id.* ¶ 197.)

Defendants also allege that "[i]n April, 2018, L&K entrusted to Plaintiff the handling of certain negotiations representing the interests of L&K in arranging with counsel in a multi-plaintiff derivative litigation the share and amount of attorneys' fees L&K would receive in a substantial matter in which L&K had a large investment of time and effort and a significant stake in the attorneys' fees to be allocated." (*Id.* ¶ 198.)

Defendants explain that they "gave Plaintiff explicit limits concerning her authority to agree to terms concerning the amount of attorneys' fees acceptable to L&K in the allocation." (*Id.*

---

[1] This factual statement is based on the alleged facts in Defendants' Answer and Counterclaims. (Dkt. # 19.) For purposes of this motion only, Plaintiff assumes Defendants' allegations are true. Plaintiff neither admits nor denies the allegations.

¶ 199.) "Plaintiff participated in discussions with representatives of other law firms who, upon information and belief, she perceived as prospective employers and/or sources of future referral business and whose interests in the fee allocation were adverse to L&K's interests." (*Id.* ¶ 200.) Then, "Plaintiff concluded with the other law firms an arrangement that was materially detrimental to L&K and she knew exceeded her authority. Indeed, she later boasted about her unauthorized conduct." (*Id.* ¶ 201.)

In a second claimed incident, "Plaintiff worked actively with a large financial institution that was an L&K client in multi-party derivative actions" and then "made disparaging remarks to such client's General Counsel in the early months of 2019, and in July 2019 directly caused said client to terminate its relationship with L&K and go to a competing firm in a matter that was heading toward a resolution." (*Id.* ¶¶ 203-04.) In connection, Defendants claim that "Plaintiff sought favor from a mentor at a law firm where she had worked previously by orchestrating such change in counsel to this mentor, knowing that her actions were contrary to the interests of L&K." (*Id.* ¶ 205.) "Defendants further explain that the "firm that Plaintiff directed L&K's client to was the very same one through which Plaintiff had concluded an arrangement that was materially detrimental to L&K." (*Id.* ¶ 206.)

The counterclaims go on to assert that "[u]pon information and belief, Plaintiff perceived as a prospective employer and/or source of future referral business or fee arrangement such mentor who she knew had interests in the fee allocation that were adverse to L&K's interests." (*Id.* ¶ 207.) Finally, Defendants contend that by "Plaintiff's actions, L&K's ability to collect a fee in this case was compromised and L&K collected substantially less than it should have." (*Id.* ¶ 208.)

## MOTION TO DISMISS STANDARD

The standard applicable to a motion to dismiss counterclaims is the same as the standard applied to motions to dismiss a complaint. *Walton v. Hadley*, No. 13-cv-7907 (ER), 2014 WL 3585525, at *3 (S.D.N.Y. July 10, 2014). In determining whether a party has set forth the "short and plain statement of the claim showing that [it is] entitled to relief" required by the Federal Rules (*see* Rule 8(a)(2)), the Court looks to whether the allegations in the complaint establish the "facial plausibility" of the claims. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). In deciding a Rule 12(b)(6) motion to dismiss, the Court assumes the truth of the facts asserted in the complaint and draws all reasonable inferences from those facts in favor of the plaintiff. *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009).

A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it. *See* Rule 12(b)(1). The party asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists. *Malik v. Meissner*, 82 F.3d 560, 562 (2d Cir. 1996).

## ARGUMENT

### I.      Defendants' Faithless Servant Counterclaim Must Be Dismissed

Defendants' faithless servant counterclaim is deficiently pled and proposes a radical expansion of the narrow doctrine. Instead of alleging a persistent pattern of direct stealing or diverting corporate opportunities, Defendants' counterclaim suggests that an employee is liable for allegedly exceeding her attorney's fees settlement authority one time – which Defendants

tolerated – and for allegedly "disparaging" them. Defendants' faithless servant counterclaim falls well short and must be dismissed.

### A.  Legal Standard

"New York law with respect to disloyal or faithless performance of employment duties is grounded in the law of agency, and has developed for well over a century." *Phansalkar v. Andersen Weinroth & Co., L.P.*, 344 F.3d 184, 200 (2d Cir. 2003) (citing *Murray v. Beard*, 102 N.Y. 505, 7 N.E. 553 (1886)). "An agent is obligated 'to be loyal to his employer and is prohibited from acting in any manner inconsistent with his agency or trust and is at all times bound to exercise the utmost good faith and loyalty in the performance of his duties.'" *Id.* (quoting *W. Elec. Co. v. Brenner*, 41 N.Y.2d 291 (1977)).

A person found to be faithless in her performance of services is generally liable for all compensation from the date of the breach, and the faithlessness need not have caused damages. *Carco Group, Inc. v. Maconachy*, 383 F. App'x 73, 76 (2d Cir. 2010); *Maritime Fish Prods., Inc. v. World–Wide Fish Prods., Inc.*, 474 N.Y.S.2d 281, 287 (1st Dep't 1984) (employer is entitled to the return of compensation paid employee during period of disloyalty). As the Second Circuit has explained, forfeiture is limited to the period of disloyalty. *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 301 (2d Cir. 2006) (plaintiff "insists it is entitled to forfeiture of all salaries and commissions earned by Davis over his thirteen-year career at Design. Design cites no authority for this proposition, and this Court rejects it."). When an employee's compensation is a mix of salary and commission, no forfeiture is permitted of commissions that were not related to a disloyal act. *Id.* at 301-02.

In the past, New York courts have applied two alternative standards for determining whether an employee's conduct warrants forfeiture under the faithless servant doctrine.

*Phansalkar*, 344 F.3d at 200; *Babbitt v. Koeppel Nissan, Inc.*, 18-cv-5242 (NGG)(CLP), 2020 WL 3183895, at *6 (E.D.N.Y. June 15, 2020).

The first – more stringent and favored – standard requires that "the misconduct and unfaithfulness ... substantially violates the contract of service" such that it "permeates the employee's service in its most material and substantial part." *Babbitt*, 2020 WL 318395 at *6. Courts have found disloyalty not to be "substantial" where the disloyalty consisted of a single act, or where the employer knew of and tolerated the behavior. *Phansalkar*, 344 F.3d at 201-02; *Babbitt*, 2020 WL 318395 at *6; *Doe v. Solera Capital LLC*, 18-cv-1769 (ER), 2019 WL 1437520, at *9 (S.D.N.Y. Mar. 31, 2019) ("Courts have found disloyalty not to be 'substantial' when the behavior consisted of a single act of disloyalty, as opposed to a persistent pattern, or the employer knew of and tolerated the behavior.") (collecting cases).

The second standard requires only "misconduct ... that rises to the level of a breach of a duty of loyalty or good faith." *Phansalkar*, 344 F.3d at 202. This standard is met when an employee "acts adversely to [her] employer in any part of the transaction, or omits to disclose any interest which would naturally influence [her] conduct in dealing with the subject of [her] employment." *Id.* (quoting *Murray v. Beard*, 102 N.Y. 505, 508 (1886)).

Following recent trends, district courts in the Southern District of New York apply the more stringent "material and substantial" standard. In light of the apparent conflict, in *Solera Capital*, the district court explained that in "the two Second Circuit cases that highlight the conflict, the court simply noted that the defendant in each case was liable because he qualified as a faithless servant under either test." *Solera Capital LLC*, 2019 WL 1437520, at *9.

Similarly, in *Leary v. Al-Mubaraki*, the district court dismissed the faithless servant claim where the allegations in the pleadings could not satisfy the more stringent "material and

- 6 -

substantial" standard. *Leary v. Al-Mubaraki*, 18-cv-0048 (LTS)(HBP), 2019 WL 4805849, at *4 (S.D.N.Y. Sept. 30, 2019); *see also Stefanovic v. Old Heidelberg Corp.*, 18-cv-2093 (LTS)(KNF), 2019 WL 3745657, at *3 (S.D.N.Y. Aug. 8, 2019) (requiring "material and substantial" standard); *Probulk Carriers Ltd. v. Peraco Chartering USA LLC*, 11-cv-5686 (RJS), 2012 WL 3095319, at *8 (S.D.N.Y. July 20, 2012) (requiring "substantial" violation of loyalty under Second Circuit's *Phansalkar*); *Schanfield v. Sojitz Corp.*, 663 F.Supp.2d 305, 348-49 (S.D.N.Y. 2009) (granting summary judgment where faithless servant claim could not satisfy "material and substantial" standard); *Torres v. Gristede's Operating Corp.*, 628 F.Supp.2d 447, 466 (S.D.N.Y. 2008) (requiring "material and substantial" standard); *Sanders v. Madison Square Garden, L.P.*, 06-cv-589 (GEL), 2007 WL 1933933, at *5 (S.D.N.Y. July 2, 2007) (same).

Regardless of the standard, a pattern of disloyalty is generally required rather than isolated acts. *See Solera Capital*, 2019 WL 1437520, at *9.

## B. Defendants Tolerated Miller's Supposedly Unfaithful Actions and Waived any Claim under the Faithless Servant Doctrine

Based on the pleadings, Defendants knew of and tolerated Miller's actions and waived any faithless servant claim. *Phansalkar*, 344 F.3d at 201-02; *Babbitt*, 2020 WL 318395 at *6. First, regarding the April 2018 settlement claim, the pleadings state that Miller allegedly exceeded her settlement authority for attorney's fees in one case to favor other firms. (Answer ¶¶ 198-202.) While the Answer is unclear about the exact date of the settlement, Defendants' concede that Miller "later boasted" about her actions with no allegation that Defendants took any corrective action from April 2018 to Miller's termination nearly a year later. (*Id.* ¶ 201.) From this, in April 2018, Defendants knew of and tolerated Miller's settlement decision, waiving any claim for that conduct. *Phansalkar*, 344 F.3d at 201-02. While this court should follow the trend of applying the "material and substantial" standard, under either standard, it would be illogical for an employer to openly

tolerate behavior and then file counterclaims for the same behavior. *Leary*, 2019 WL 4805849, at *4 (employee's known and tolerated workplace intoxication for over three years before any corrective action other than his termination failed to state faithless servant claim); *Farricker v. Penson Develop., Inc.*, 07-cv-11191 (DAB), 2010 WL 845983, at *2 (S.D.N.Y. March 4, 2010) (court commenting on a motion to dismiss counterclaims that faithless servant claim "simply does not make sense" where employee was not fired when unauthorized acts were discovered).

Second, the pleadings show that Defendants knew of and tolerated Miller disparaging them to an unnamed client's general counsel "in the early months of 2019" but there is no allegation that any corrective action – or even her March 2019 termination – was due to the disparagement. (Answer ¶¶ 203-05.) While Defendants' response to Miller's Complaint in Paragraph 102 suggests that Defendants "suspected" Miller of disparaging them when she was terminated, Defendants do not say that is why she was terminated or for how long Defendants "suspected" Miller was disparaging them. (*Id.* ¶ 102.)

Moreover, regarding the allegation that "in July 2019" Miller "directly caused said client" to terminate L&K (*id.*), it is unclear whether L&K lost the client due to the earlier 2019 disparaging or new (unstated) actions Miller took in July 2019 after L&K terminated her.

Regardless, even if the counterclaim meant to claim that Miller took new actions in July 2019, the allegation is too vague to infer that Miller, for example, misappropriated confidential information to compete or took any other wrongful action. *See H.Q. Buick-Nissan, Inc. v. Michael Oldsmobile*, 539 N.Y.S.2d 355, 356 (1st Dept. 1989) ("In the absence of a breach of fiduciary duty, a covenant not to compete, or fraud, an at will employee is free to compete with his former employer."); *Walter Karl, Inc. v. Wood*, 528 N.Y.S.2d 94, 97 (2d Dept. 1988) ("It is fundamental that absent a restrictive covenant not to compete, an employee is free to compete with his or her

former employer unless trade secrets are involved or fraudulent methods are employed."); *see also Arnold K. Davis & Co., Inc. v. Ludemann*, 160 A.D.2d 614, 616 (1st Dept. 1990) (denying injunctive relief where former employee contacted employer's customers based on his recollection and not a misappropriated list); *Levine v. Bochner*, 517 N.Y.S.2d 270, 271 (2d Dept. 1987) ("It is well established that solicitation of an employer's customers by a former employee is not actionable unless the customer list could be considered a trade secret or there was wrongful conduct by the employee, such as physically taking or copying the employer's files or using confidential information.").

Additionally, Defendants' claim that the cases "under Plaintiff's supervision generated a cumulative loss during Plaintiff's tenure at L&K," (Answer ¶ 190), does not connect the losses to any disloyal act or provide any facts about how long they tolerated her lack of profitability. *Leary*, 2019 WL 4805849, at *4 (dismissing faithless servant claim where Defendant pled no facts explaining "how Plaintiff's alleged disloyalty substantially affected his job performance" or how this led to "underperformance by his clients' securities portfolios and causing his division to not be profitable."). Given their waiver, Defendants' claims must be dismissed.

### C. Defendants' Claims are Too Minor to State a Faithless Servant Claim

Miller exceeding her settlement authority and disparaging Defendants, even had they not been tolerated, are too minor and speculative to state a faithless servant claim.

An attorney exceeding settlement authority is the type of workplace rule breaking insufficient under the high standards of being a faithless servant, particularly where there is no allegation that Miller *actually* benefited. There is no claim she even received a job interview or job recommendation, much less any financial benefit. *See Sanders*, 2007 WL 1933933, at *5 (noting lack of precedential support for proposition that faithless servant doctrine applies whenever

an employee violates work rules); *Solera Capital*, 2019 WL 1437520, at *10 (no faithless servant claim for competing against employer where no claim employee "received an improper kickback."). Other than speculation that "upon information and belief" Miller hoped to benefit or curry favor in an unknown way in the future, the unauthorized settlement counterclaim is "unaccompanied by any facts that she benefitted from these representations to the detriment of the firm." *Grewal v. Cuneo*, 13-cv-6836 (RA), 2016 WL 308803, at *5 (S.D.N.Y. Jan. 25, 2016) (claim that former employee engaged in unauthorized representation of clients failed to show how employee benefited from the *ultra vires* act). There is simply no concrete allegation of self-dealing beyond the hypothetical. *Carco Group, Inc. v. Maconachy*, 383 F. App'x 73, 77 (2d Cir. 2010). Similarly, in *Primiani v. Vintage 185*, the court dismissed the faithless servant claim based on an employee posting fake and disparaging internet reviews of the wine bar where she worked given the lack of any self-dealing or personal benefit. *Primiani v. Vintage 185*, 18-cv-2237, 18-cv-2893 (ADS), 2019 WL 486087, at *4 (E.D.N.Y. Feb. 6, 2019).

From a precedential standpoint, accepting Defendants' claim would wildly expand the faithless servant doctrine. Law firms could contend that any displeasing act involving other firms or clients was potential job hunting and favor seeking, therefore, it was self-dealing and breached a fiduciary duty. This court should not permit such a dramatic escalation of what has been for nearly two centuries reserved for serious, long-term disloyalty that usually involves criminal acts.

Next, Miller disparaging Defendants is insufficient to state a claim. *See e.g., Grewal v. Cuneo*, 2016 WL 308803, at *5 (dismissing faithless servant claim where, *inter alia*, law firm claimed that former attorney-employee made disparaging remarks to a potential client and other firm attorneys about the firm and its founder, including that founder was incompetent and always lost his cases.) Defendants include no factual allegations that Miller specifically took any action

to divert L&K's lost client to a past mentor's firm other than the disparagement itself. Nothing about the disparagement, as pled, suggests that Miller used the disparagement to divert the client to a mentor she believed would benefit her career. That is, Defendants pled no causal link to nudge the claim over the line as plausible. Defendants plead only a series of unconnected events. Without more, the allegations are merely an employee griping – for some unstated reasons – about her employer.

In sum, the faithless servant doctrine does not protect employers from one *ultra vires* act or isolated employee complaints. Far more has been found lacking. *See Grewal*, 2016 WL 308803, at *8 (allegations insufficient that included serious charges against a lawyer by her former law firm including representing third parties without the firm's authorization, disparaging firm to potential client, lying to the firm about possession of third parties' documents, and preparing to take firm's clients upon her departure from the firm); *Schwartz v. Leonard*, 526 N.Y.S.2d 506, 508 (2d Dept. 1988) (finding allegation that defendant took client files and made secret plans to move to new office space insufficient to show that defendant neglected the files during his employment or that he was furthering his own interest at plaintiff's expense).

Additionally, Defendants failed to plead a pattern of disloyalty necessary to meet the material and substantial standard. *Phansalkar*, 344 F.3d at 201-02; *Solera Capital*, 2019 WL 1437520, at *9; *see also Schwartz*, 526 N.Y.S.2d at 508 (denying faithless servant claim where attorney secretly removed confidential files from the workplace because employer did not show that there was a "persistent pattern of disloyalty"). Accordingly, Defendants' faithless servant counterclaim must be dismissed for failing to state a claim as a matter of law.

## II.     Defendants' Counterclaim for Tortious Interference with Prospective Economic Advantage Must be Dismissed

Defendants fall well short of pleading that Miller committed a crime or an independent tort necessary to state a claim for tortious interference with prospective economic advantage. The claim must be dismissed.

Under New York law, in order to make out a *prima facie* case for tortious interference with prospective economic advantage, a party must establish "(1) that [he] had a business relationship with a third party; (2) the defendant knew of that relationship and intentionally interfered with it; (3) the defendant acted solely out of malice, or used dishonest, unfair, or improper means; and (4) the defendant's interference caused injury to the relationship." *Friedman v. Coldwater Creek, Inc.*, 321 F. App'x 58, 59-60 (2d Cir. 2009) (quoting *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 400 (2d Cir. 2006)).[2]

> To sufficiently plead the third element:
>
> > 'as a general rule, a defendant's conduct must amount to a crime or an independent tort' in order to amount to tortious interference with a prospective economic advantage. *Carvel Corp. v. Noonan*, 3 N.Y.3d 182, 190 (2004). A defendant who has not committed a crime or independent tort or acted solely out of malice may nevertheless be liable if he has employed 'wrongful means.' 'Wrongful means' include physical violence, fraud or misrepresentation, civil suits and criminal prosecutions,'[], and 'extreme and unfair' economic pressure."

*Friedman*, 321 F. App'x at 60 (internal citations omitted).

The Second Circuit has further clarified that the "wrongful means" language is a "narrow exception" and "sets a high bar" that is not triggered even when a defendant harms the plaintiff by acting in her own economic self-interest. *16 Casa Duse, LLC v. Merkin*, 791 F.3d 247, 262 (2d

---

[2] Tortious interference with business relations and tortious interference with prospective economic advantage are not distinct causes of action. *Catskill Dev., L.L.C. v. Park Place Entm't Corp.*, 547 F.3d 115, 132 (2d Cir. 2008).

Cir. 2015). Moreover, mere misrepresentations that do not arise to the level of defamation as an independent tort are rarely "wrongful means." *Friedman v. Coldwater Creek, Inc.*, 551 F.Supp.2d 164, 169-70 (S.D.N.Y. 2008) (Preska, J.) *aff'd*, 321 F. App'x 58 (2d Cir. 2009); *Berwick v. New World Network Intern., Ltd.*, 06-cv-2641, 2007 WL 949767, at *14 (S.D.N.Y. March 28, 2007).

In this case, the counterclaim fails to sufficiently plead that Miller committed a crime or independent tort. The closest tort alleged is that Defendants lost a client in July 2019 after Miller allegedly "made disparaging remarks to such client's General Counsel in the early months of 2019." (Answer ¶ 204.) There is no dispute that "[d]efamation is a predicate wrongful act for a tortious interference claim." *Amaranth LLC v. J.P. Morgan Chase & Co.*, 888 N.Y.S.2d 489, 494 (1st Dept. 2009).

However, Defendants failed to sufficiently plead defamation. To state a defamation claim under New York law, a plaintiff must allege that the defendant made (1) a false statement, (2) regarding the plaintiff, (3) published without privilege or authorization to a third party, and (4) injury to the plaintiff. *Mottola v. Denegre*, 12-cv-3465 (LAP), 2012 WL 12883775, at *1-3 (S.D.N.Y. June 8, 2012) (Preska, J.) (citing *Boyd v. Nationwide Mut. Ins. Co.*, 208 F.3d 406, 409 (2d Cir. 2000)).

Defendants falter by not adequately pleading the required elements. Other than the conclusory statement that Miller "disparaged" them, Defendants fail to plead that Miller's disparagement was a "false statement." The disparaging statements may have been true.

Defendants also fail to "identify adequately the purported defamatory statements, who made them, when they were made and the persons to whom they were communicated." *Id.; see also Ello v. Singh*, 531 F. Supp. 2d 552, 575-76 (S.D.N.Y. 2007), *as amended* (Nov. 13, 2007) ("[m]ere conclusory statements that the claimant was disparaged by false statements are

- 13 -

insufficient to state a defamation claim.") (internal quote omitted); *Ford v. Clement*, 834 F.Supp. 72, 78 (S.D.N.Y.1993) (holding that allegations of defamation were insufficient where they failed to "give [defendant] any notice whatsoever of the communications at issue"), *aff'd,* 29 F.3d 621 (2d Cir. 1994).

Defendants do not identify anything about the statement or the name of the third-party general counsel or what client they worked for. As a result, Defendants have not made out the claim or provided Miller "sufficient notice of the communications complained of to enable [her] to defend [herself]." *Mottola,* 2012 WL 12883775, at *3.

Returning to the overarching elements for a tortious interference claim, Defendants fail to plead any facts to plausibly suggest that Miller's comments to a general counsel caused Defendants to lose the client. The threadbare pleading is nothing but a conclusory hunch and "mere suspicions are inadequate to support a claim for tortious interference with business relations." *Scutti Enter., LLC v. Park Place Enter.Corp.*, 322 F.3d 211, 217 (2d Cir. 2003). In relation, Defendants plead no basis to plausibly support "the expectation it would yield future business" from the lost client. *Ritani, LLC v. Aghjayan*, 880 F.Supp.2d 425, 451 (S.D.N.Y. 2012). Accordingly, Defendants' tortious interference claim should be dismissed.

### III.    The Court should Decline to Exercise Supplemental Jurisdiction over Defendants' Permissive Counterclaims

Regardless of the merits, Defendants' state counterclaims are permissive and fall outside the court's supplemental jurisdiction under 28 U.S.C. § 1367. Therefore, this court should dismiss the counterclaims.

The first issue for determining whether a court has subject matter jurisdiction is whether a counterclaim is compulsory or permissive under Rule 13(a). The second issue is whether a

permissive claim falls within the court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367. *Torres*, 628 F.Supp.2d at 467.

Rule 13 defines whether a counterclaim is compulsory, meaning if it is not filed at the time of the underlying action it is waived, or if the claim is permissive. *Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 209 (2d Cir. 2004).

In deciding whether a counterclaim is compulsory or permissive, the Second Circuit inquires whether a "logical relationship" exists between the claims where the "counterclaim arises out of the transaction or occurrence that is the subject matter of the opposing party's claim," and whether "the essential facts of the claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit." *Id.*

Courts consider the following factors when deciding whether a counterclaim is compulsory or permissive: (1) identity of facts between the original claim and counterclaim; (2) mutuality of proof; (3) logical relationship between original claim and counterclaim. *Romero v. Bestcare, Inc.*, 15-cv-7397 (JS)(GRB), 2018 WL 1702001, at *11 (S.D.N.Y. Feb. 28, 2018).

In the employment discrimination context, "courts have held that when a plaintiff sues for unlawful termination of employment, counterclaims arising from an employer's claimed non-discriminatory basis for termination of plaintiff's employment are compulsory counterclaims." *Khodeir v. Sayyed*, 323 F.R.D. 193, 199 (S.D.N.Y. 2017).

Applying these principles, Defendants do not allege Miller was terminated because she settled a case beyond her authority in April 2018 and disparaged Defendants in 2019. Without a close nexus between termination and the counterclaim, simply because both claims arise out of the employment relationship is insufficient to find that the counterclaims are compulsory. *Torres*, 628

F.Supp.2d at 467-58; *Ginsberg v. Valhalla Anesthesia Assoc.*, *P.C.*, 971 F.Supp. 144, 147 (S.D.N.Y. 1997) (collecting cases).

As a result, there is no "logical relationship" between Miller's termination and the counterclaims, making the counterclaims merely permissive. It is also unclear from the counterclaims whether Defendants knew about Miller's "disparaging remarks" at the time she was terminated or if they actually motivated her termination. Clearly, the counterclaims are permissive.

Under the second stage of the analysis, as permissive counterclaims, the court must dismiss the state-law counterclaims for lack of subject matter jurisdiction. Supplemental jurisdiction exists over "all other claims" in a civil action "so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." *See* 28 U.S.C. § 1367(a).

"Thus, even where, as in the case at bar, the court lacks an independent basis for its exercise of subject matter jurisdiction over permissive counterclaims, it must still determine whether the claims fall under its supplemental jurisdiction pursuant to 28 U.S.C. § 1367." *Torres*, 628 F.Supp.2d at 468. Counterclaims raising issues of state law are part of the "same case or controversy" where they share a "common nucleus of operative fact" with the plaintiff's underlying claim. *Id.* (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966)).

Here, Defendants fail to show sufficient grounds to place its counterclaims within the court's supplemental jurisdiction. Critically, none of the events alleged are relevant to Miller's discrimination claims. *See Bu ex rel. Bu v. Benenson*, 181 F.Supp.2d 247, 254 (S.D.N.Y. 2001) (claims were not part of the same case or controversy where state law claims "involve[d] different rights, different interests, and different underlying facts" than the federal law claims).

Again, Defendants do not allege that Miller's settlement action and disparagement caused her to be paid less than male attorneys or caused her termination. The only connection is both sets of claims arose from the employment context. Based on established caselaw, "the employment relationship does not establish a common nucleus of operative fact where it is the sole fact connecting" the claims. *Torres*, 628 F.Supp.2d at 468 (collecting cases); *Goldman Marcus, Inc. v. Goldman*, No. 99-cv-11130(KMW), 2000 WL 297169, at *7 (S.D.N.Y. Mar. 21, 2000) ("That claims and counterclaims arise from the same employment relationship, however, does not necessarily convey subject matter jurisdiction over the latter."); *Spencer v. Banco Real, S.A.*, 623 F. Supp. 1008, 1011-12 (S.D.N.Y. 1985) (counterclaims for state law torts of conversion, trespass, unfair competition, breach of fiduciary duty, and tortious interference insufficiently related to underlying discrimination claims).

In light of the above, Defendants' counterclaims do not arise out of a "common nucleus of operative fact" and, thus, are not subject to the court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367, and must be dismissed.

## CONCLUSION

Based on the foregoing, it is respectfully requested that the court grant Plaintiffs' motion in its entirety by dismissing Defendants' counterclaims for failing to state a claim or, in the alternative, for lack of subject matter jurisdiction.

Dated: New York, New York
      July 21, 2020                 Respectfully Submitted,

                                        */s/ Samuel O. Maduegbuna*
                                        Samuel O. Maduegbuna, Esq.
                                        MADUEGBUNA COOPER LLP
                                        Attorneys for Plaintiff AMY MILLER
                                        30 Wall Street, 8th Floor
                                        New York, NY 10005
                                        (212) 232-0155