UNITED STATES DISTRICT COURT
SOUTHERNN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X   Docket No.: 20-cv-01390
AMY MILLER,                                                                                (LAP)(BCM)

                                        Plaintiff,

        -against-

LEVI & KORSINSKY, LLP, EDUARD KORSINSKY,
and JOSEPH LEVI,

                                        Defendants.
-----------------------------------------------------------------------X

## PLAINTIFF'S REPLY MEMORANDUM OF LAW
## IN FURTHER SUPPORT OF MOTION TO DISMISS THE COUNTERCLAIMS
## PURSUANT TO FED. R. CIV. PROC. 12(B)(1) & (6)

                                                         MADUEGBUNA COOPER LLP
                                                         30 Wall Street, 8th Floor
                                                         New York, NY 10005
                                                         (232) 232-0155
                                                         Attorneys for Plaintiff

**On the Brief:**
Samuel O. Maduegbuna, Esq.
William W. Cowles, Esq.

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. ii-iii

INTRODUCTION ....................................................................................................................... 1

ARGUMENT ............................................................................................................................... 1

    I.      Defendants' Faithless Servant Counterclaim Must Be Dismissed .......................... 1

           A.  Defendant Concedes that the More Stringent Standard Applies to a Faithless Servant Claim, which L&K's Pleadings Do Not Meet ..................................... 1

           B.  L&K Tolerated Plaintiff's Actions and Cannot Repackage Stale Workplace Disagreements as Counterclaims .................................................................. 2

           C.  Defendant Failed to Plead the Required Pattern of Disloyalty ......................... 3

           D.  Defendant Abandoned "Disparagement" as a Supposedly Disloyal Act ........... 6

    II.     Defendant's Tortious Interference Claim Must be Dismissed Because the Type of Fiduciary Breach Alleged is Insufficient to Meet the "Wrongful Means" Requirement of a Crime or Independent Tort ........................................................... 6

    III.    The Court Should Decline to Exercise Supplemental Jurisdiction Over L&K's State Law Counterclaims ................................................................................................ 9

CONCLUSION ......................................................................................................................... 10

# TABLE OF AUTHORITIES

**Cases**

*Am. Bldg. Maint. Co. v. Acme Prop. Services, Inc.*,
   515 F. Supp. 2d 298 (N.D.N.Y. 2007) .................................................................................. 7

*Babbitt v. Koeppel Nissan, Inc.*,
   2020 WL 3183895 (E.D.N.Y. June 15, 2020) ................................................................ 8 n. 1

*Carco Group, Inc. v. Maconachy*,
   383 F. App'x 73 (2d Cir. 2010) ......................................................................................... 5,6

*Carvel Corp. v. Noonan*,
   3 N.Y.3d 182 (2004) ............................................................................................................ 7

*Design Strategies, Inc. v Davis*,
   384 F.Supp.2d 649 (S.D.N.Y. 2005) ................................................................................. 3,4

*Hannex Corp. v. GMI, Inc.*,
   140 F.3d 194 (2d Cir. 1998) .............................................................................................. 7,8

*LLM B. Exam, LLC v. Barbri, Inc.*,
   271 F. Supp. 3d 547 (S.D.N.Y. 2017) .................................................................................. 9

*McLeod v. Verizon New York, Inc.*,
   995 F. Supp. 2d 134 (E.D.N.Y. 2014) .................................................................................. 6

*Penrose Computer Marketgroup, Inc. v. Camin*,
   682 F. Supp. 2d 202 (N.D.N.Y. 2010) .................................................................................. 8

*Phanasalkar v. Andersen Weinroth & Co.*,
   344 F.3d 184 (2d Cir. 2003) ................................................................................................. 2

*Schanfield v. Sojitz Corp. of Am.*,
   663 F. Supp. 2d 305 (S.D.N.Y. 2009) .................................................................................. 6

*Shamrock Power Sales, LLC v. Schere*,
   No. 12-cv-8959 (KMK), 2015 WL 5730339 (S.D.N.Y. Sept. 30, 2015) ............................ 4,5

*Stanley v. Skowron*,
   989 F.Supp.2d 356 (S.D.N.Y. 2013) .................................................................................... 5

*Stefanovic v. Old Heidelberg Corp.*,
   2019 WL 3745657 (S.D.N.Y. Aug. 8, 2019) ........................................................................ 6

**Statutes**

Fed.R.Civ.P. 9(b) ............................................................................................................. 8 n. 1

# INTRODUCTION

Plaintiff Amy Miller ("Miller" or "Plaintiff") respectfully submits this reply memorandum of law in further support of her motion to dismiss the counterclaims of Defendant Levi & Korsinsky, LLP ("L&K" or "Defendant") accusing Miller of being a faithless servant and for tortious interference with prospective economic advantage. (Dkt. # 19, Answer with Counterclaims, "Answer".)

In opposing the motion, Defendant fails to rebut Plaintiff's arguments that any alleged actions were tolerated or, in the alternative, too minor to state a faithless servant claim reserved for "substantial" and long-term disloyalty that usually involves criminal acts. The faithless servant doctrine is not an amorphous "get out of jail free card" for employers facing valid discrimination claims.

On the tortious interference claim, Defendant misreads its cited caselaw, resulting in a lack of support for its position that any type of breach of fiduciary duty standing alone amounts to "wrongful means" sufficient to be a crime or independent tort.

Overall, Defendant boasts that Miller moved to dismiss the counterclaims to prevent L&K from conducting discovery of her "misdeeds." L&K puts the cart before the horse. It has not pled any actionable "misdeeds." For that reason, the court should dismiss the counterclaims and deny L&K's request to dramatically expand a narrow cause of action.

# ARGUMENT

I.  **Defendant's Faithless Servant Counterclaim Must be Dismissed**

   A. **Defendant Concedes that the More Stringent Standard Applies to a Faithless Servant Claim, which L&K's Pleadings Do Not Meet**

Defendant makes no argument of which standard applies in a faithless servant claim and thereby concedes that it must plead a pattern of disloyalty that is "substantial" to satisfy the more

stringent test. Trying to side-step the issue of which standard applies, L&K quotes the Second Circuit's historical definition in *Phanasalkar v. Andersen Weinroth & Co.*, 344 F.3d 184 (2d Cir. 2003), of a faithless servant claim while acknowledging in a footnote that two distinct standards exist. (Dkt. # 29, dated Sept. 4, 2020, Defendant's Memo. of Law ("Def.") at 14.) The definition from *Phanasalkar* is not the legal standard to be applied. That definition does not list the elements that must be met for the disloyalty to be "substantial."

In connection, Defendant wrongly asserts that "Plaintiff does not argue that some legal standard enables her [sic] escape liability for her wrongful conduct." (Def. at 13.) That is precisely what Plaintiff argued: that under either standard, Defendant's allegations do not state a faithless servant claim against Plaintiff. (Dkt. # 24, dated July 21, 2020, Plaintiff's Memo. of Law ("Plf.") at 13-14.) As a result, Defendant concedes that it must meet the higher standard.

### B. L&K Tolerated Plaintiff's Actions and Cannot Repackage Stale Workplace Disagreements as Counterclaims

In response to Plaintiff's argument that Defendant tolerated the purported fee reduction in April 2018 and waived it, Defendant claims it was not aware of the reason *why* Plaintiff secured the alleged lesser fees for L&K and, therefore, did not "tolerate" the act. (Def. at 16.) Defendant writes that "Plaintiff wrongfully withheld from Levi and Korsinsky knowledge of the personal interests that motivated her defiant diversion of L&K's proper and expected share of fees and the delivery of an undeserved benefit to L&K's competitors." (Def. at 15.)

Yet, Defendant's own pleadings undermine the attempt to avoid waiver. Defendant's pleadings admit that the main competitor law firm it references as receiving more fees to L&K's detriment is Plaintiff's "former employer and the firm where her mentor worked." (Def. at 15; Answer ¶¶ 206-07.) Defendant, however, also pled that Miller was "[o]vertly and vocally unhappy with various aspects of her work arrangements and compensation [.]" (*Id.* at ¶ 196.)

Defendant does not allege that it only learned Miller was unhappy *after* the April 2018 settlement. It is also implausible to accept that L&K was not aware that an "overtly and vocally unhappy" attorney viewed other law firms doing the same type of derivative litigation as "prospective employers and/or sources of future referral business." (*Id.* ¶ 200.) Moreover, L&K does not clearly plead that it only learned after her employment that Plaintiff's mentor worked for the competitor.

Defendant's claim boils down to this: we knew Plaintiff exceeded her authority by purportedly favoring her former employer and mentor, and we knew she was disgruntled with her pay, but we did nothing because we did not know why she did it. Accordingly, since L&K cannot manufacture a claim out of conduct it tolerated, the court should dismiss the faithless servant claim.

### C. Defendant Failed to Plead the Required Pattern of Disloyalty

Even if toleration is not found, Defendant has no credible response to Plaintiff's argument that it failed to plead a pattern of disloyalty as required. To begin, Defendant cites *Design Strategies, Inc. v. Davis* to suggest a pattern of disloyalty is not required. *Design Strategies, Inc. v Davis*, 384 F. Supp. 2d 649, 660-64 (S.D.N.Y. 2005). *Design Strategy* is not helpful to Defendant because the employee's actions were found to have been repetitive and substantial even though they involved only a single business opportunity. *Id.* The district court carefully explained, why in the specific context, a "substantial" pattern of disloyalty existed for a single business opportunity. Among the reasons, which distinguish the case from L&K's allegations, the employee in *Design Strategy* (1) made multiple communications and actively encouraged and provided "specific instructions" on how to achieve a side-deal over the course of several months, (2) hid his actions from his employer, (3) the deal involved "an extremely

significant client" – Microsoft – and was an "extremely lucrative" opportunity, and (4) the employee was interviewing with a beneficiary of the side-deal. *Id.* at 663-64.

In contrast, L&K has (1) no allegation that Miller encouraged an alleged reduction of fees over months with multiple communications or advised others how to carry out the act, (2) no allegation that L&K was not told about the fee share – it admits having knowledge of it during Miller's employment, (3) no allegation that the purported fee reduction was anywhere near as profitable as a tech company landing a deal with Microsoft, and in fact, L&K utterly failed to plead how much in fees it claimed to lose, preventing the court from determining whether the claimed loss was "extremely lucrative" due to L&K's conclusory allegations, and (4) no allegation that Plaintiff was actually interviewing, at that time, with the competitor law firms. *Design Strategy* is an outlier. Yet, the district court was at pains to show that the facts still met the stringent standard of "substantial" disloyalty.

Moreover, while Defendant's citation to *Design Strategy* would leave the reader to believe the Second Court affirmed the district court's finding of liability on the faithless servant doctrine, (Def. at 15), that issue was not challenged on appeal. *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 301 (2d Cir. 2006) ("Davis does not argue that he was not disloyal nor that some forfeiture of income was appropriate. Thus, the only question presented here is Design's contention that the District Court erred in determining the remedy.") The Second Circuit did not affirm that "substantial" disloyalty can occur from diverting one business opportunity.

*Shamrock Power Sales, LLC v. Schere* is equally unhelpful to Defendant because the court found a pattern of incidents such that the "disloyalty was not an isolated incident" and involved an employee secretly establishing a competitor business against his employer, who even "took various confidential and proprietary data and documents from Shamrock, making

copies of the data on his company-issued laptop and phone, which included price lists for Shamrock's clients" in addition to securing several purchase orders from the employer's client. *Shamrock Power Sales, LLC v. Schere*, No. 12-cv-8959 (KMK), 2015 WL 5730339, at *23-24 (S.D.N.Y. Sept. 30, 2015). That Defendant cites *Shamrock* simply invites the unflattering comparison that this doctrine is reserved for serious breaches, not an employer strategically opposing a discrimination case.

Finally, *Stanley v. Skowron* is not applicable because it involved the crime of insider trading. *Stanley v. Skowron*, 989 F. Supp. 2d 356, 361-62 (S.D.N.Y. 2013). Although the employee only admitted to one act of insider trading, the act was "substantial," the court found, because the "acts of disloyalty 'occurred repeatedly,' 'lasted for many months,' 'persisted boldly through an opportunity to correct them,'" and exposed the employer to government investigations. *Id.* None of those extreme and extenuating circumstances are present here. And unlike concealing insider trading, Miller, an at-will employee, had no duty to tell her employer that she was considering working at another firm (which L&K clearly knew). It cannot be argued that Miller's failure to explicitly identify her motivation to L&K was a pattern of disloyalty or was a cover-up exposing L&K to criminal liability, which is the exception that the court in *Stanley* uses to find liability with no pattern, despite acknowledging that the Second Circuit generally requires a pattern. *Id.*

Even setting aside the lack of a pattern, Defendant cites no cases with similarly minor alleged disloyal acts and has no answer to the cases Plaintiff cites showing that conduct far worse did not make out a faithless servant claim. (Plf. at 17.)

In a footnote, Defendant incorrectly claims that cases Plaintiff cites actually support Defendant. (Def. at 13 n.4.) The opposite is true. *See Carco Group, Inc. v. Maconachy*, 383 F.

App'x 73, 77 (2d Cir. 2010) (pattern of disloyalty shown where employee disobediently concealed family member's name on over 100 weekly reports); *Schanfield v. Sojitz Corp. of Am.*, 663 F. Supp. 2d 305, 321 (S.D.N.Y. 2009) (plaintiff accused of disloyalty "sent hundreds of confidential or privileged SCA documents from his SCA computer to third parties [] not authorized to see such documents"); *Stefanovic v. Old Heidelberg Corp.*, No. 18-cv-2093 (LTS)(KNF), 2019 WL 3745657, at *4 (S.D.N.Y. Aug. 8, 2019) (stealing from restaurant customers by fraudulently altering tip amount over "multiple instances" sufficiently alleged faithless servant claim).

### D.  Defendant Abandoned "Disparagement" as a Supposedly Disloyal Act

Defendant failed to argue that Miller's alleged "disparagement" was a breach in response to Plaintiff's arguments, (Plf. at 14-16), and provide no supportive caselaw. The claim for disparagement should, therefore, be deemed abandoned. *McLeod v. Verizon New York, Inc*., 995 F. Supp. 2d 134, 143 (E.D.N.Y. 2014) (pleading party's "failure to respond to contentions raised in a motion to dismiss claims constitute an abandonment of those claims.").

### II.  Defendant's Tortious Interference Claim Must be Dismissed Because the Type of Fiduciary Breach Alleged is Insufficient to Meet the "Wrongful Means" Requirement of a Crime or Independent Tort

Defendant failed to rebut Plaintiff's argument that its tortious interference with prospective economic advantage claim should be dismissed for failure to plead conduct that amounts to a crime or independent tort as required in the third element as "wrongful means."

L&K cites two cases it claims supports the broad proposition that any breach of fiduciary duty necessarily satisfies the third element. However, Defendant misreads both cases. More narrowly, the cases only provide that where the breach of fiduciary duty is based on fraud or misappropriation of trade secrets, that type of fiduciary breach can satisfy the third element.

In *Hannex Corp. v. GMI, Inc.*, cited by Defendant, the Second Circuit explains that the third element requires "wrongful means" defined as "physical violence, fraud or misrepresentation, civil suits and criminal prosecutions, and some degrees of economic pressure." *Hannex Corp. v. GMI, Inc.*, 140 F.3d 194, 206 (2d Cir. 1998). The Court further notes that, "[i]f the defendant's interference is intended, at least in part, to advance its own competing interests, the claim will fail unless the means employed include criminal or fraudulent conduct." *Id.* On that point, Defendant already admitted that Miller was trying to "advance [her] own competing interests" and, as required, Defendant failed to plead criminal or fraudulent conduct because the fiduciary breach that L&K alleges is neither criminal nor fraudulent.

As an aside, in their eighth footnote, Defendant suggests it can conduct discovery of malice to meet the third element. (Def. at 18 n.8.) But L&K did not plausibly plead malice and inconsistently claims that Miller acted in her own financial interest, defeating any inference of malice because "acts motivated by economic self-interest are not ones taken solely out of malice, as is required to meet this element of tortious interference." *Am. Bldg. Maint. Co. v. Acme Prop. Services, Inc.*, 515 F. Supp. 2d 298, 317 (N.D.N.Y. 2007) (citing *Carvel Corp. v. Noonan*, 3 N.Y.3d 182, 190 (2004)).

Next, the Second Circuit makes the key point Defendant overlooked – the fiduciary breach must be itself be a fraud or misrepresentation to meet the third element: "A knowing breach of fiduciary duty may also, if it satisfies the usual common law elements, amount to a fraud or misrepresentation." *Id.* at 206. Not just any fiduciary breach is automatically "wrongful means" to satisfy the third element. It must be a fiduciary breach sounding in fraud. Driving home the point, the Second Circuit emphasized the need for fraudulent conduct: "We believe that Hannex adduced *sufficient evidence to prove fraudulent conduct*." *Id.* at 206 (emphasis added.)

Since Miller's alleged conduct breaching her fiduciary duty was not fraudulent, Defendant failed to plead a claim for tortious interference with prospective economic advantage as required under *Hannex*.[1]

The second inapposite case Defendant cites, *Penrose Computer Marketgroup, Inc. v. Camin*, involves a fiduciary breach that was based on misappropriating trade secrets to compete against the employer and crimes under the Stored Communications Act ("SCA") and Computer Fraud and Abuse Act ("CFAA"). *Penrose Computer Marketgroup, Inc. v. Camin*, 682 F. Supp. 2d 202, 216 (N.D.N.Y. 2010).

Critical to the holding in *Penrose*, which Defendant misses, the court only found that a tortious interference claim exists because it was premised on criminal acts in addition to a fiduciary breach involving trade secrets: "because Plaintiff has sufficiently alleged that Defendant's conduct: (1) violated the CFAA and the SCA; (2) resulted in misappropriation of trade secrets; and (3) breached fiduciary duties, Plaintiff has sufficiently alleged tortious interference." *Id*. The case does not support Defendant's position that any run-of-the-mill fiduciary breach – or a fiduciary breach standing on its own – meets the third element of "wrongful means." And L&K have, unlike *Penrose*, alleged no crimes. Finally, it does not appear *Penrose* has been cited by a New York court on the issue of whether a fiduciary breach, standing alone or with criminal acts, is "wrongful means." The case has minimal persuasive value, even if it were on point.

---

[1] To be sure, Plaintiff was not on notice that Defendant alleged fraud. If that is the case, the heightened pleading standard of Fed. R. Civ. P. Rule 9(b) applies and Defendant's claims fall far short. *Babbitt v. Koeppel Nissan, Inc.*, 18-cv-5242 (NGG) (CLP), 2020 WL 3183895, at *3 (E.D.N.Y. June 15, 2020). Plaintiff must re-brief the motion before any ruling on whether fraud was pled.

### III. The Court Should Decline to Exercise Supplemental Jurisdiction Over L&K's State Law Counterclaims

Defendant claims that Plaintiff's allegations and the counterclaims are intertwined because the fees Plaintiff seeks in her lawsuit are from the same case L&K accuses her of purportedly reducing the firm's fees on. (Def. at 20.) That claimed connection is not within the four-corners of the complaint or counterclaims, notably because L&K does not identify the case or the firms that received the fees or point to any pleading that connects Plaintiff's damages with its faithless servant counterclaim. *See LLM B. Exam, LLC v. Barbri, Inc.*, 271 F. Supp. 3d 547, 580 (S.D.N.Y. 2017) (pleadings "cannot be amended by the briefs in opposition to a motion to dismiss.").

Second, contrary to Defendant's argument, there will be no judicial economy. The counterclaim will require the Court (or a jury) to referee how attorney's fees are distributed among law firms. That is far afield from whether Miller was paid less and terminated due to her gender and retaliation complaints.

Turning to the tortious interference claim, Defendant claims that the disparagement (which was waived for the reasons briefed above) was after-acquired evidence which prevented it from being a basis for Plaintiff's termination. (Def. at 22.) But as explained in Plaintiff's main brief, (Plf. at 22), the disparagement allegation timeline is so vague it is difficult to determine from the pleadings whether L&K is actually alleging it did not learn about the disparagement until after terminating Miller or how Miller was the but-for cause of the client loss. As such, the allegations are too vague to find that there is logical connection other than the employment relationship itself, which does not suffice. *Torres v. Gristede's Op. Corp.*, 628 F. Supp. 2d 447, 468 (S.D.N.Y. 2008).

Finally, turning to the issue of forfeiture, Defendant misstates Plaintiff's brief by contending that "Plaintiff concedes in her Memorandum of Law that should L&K prevail [], Plaintiff must return to L&K all compensation from the date of her breach." (Def. at 21.) Rather, and not conceding anything since this issue is not before the court, courts generally limit forfeiture to only the period of disloyalty and only the commissions or bonuses impacted by the disloyalty. Even if properly pled and prevailing at trial, no employer in L&K's position would be entitled to "all compensation" from the date of the breach given plaintiff's compensation arrangement. (Plf. at 11.) Accordingly, the court should decline to exercise supplemental jurisdiction over Defendant's counterclaims.

## CONCLUSION

Based on the above and the arguments in Plaintiff's moving memorandum of law, it is respectfully requested that the court grant Plaintiff's motion in its entirety by dismissing Defendant's counterclaims for failing to state a claim or, in the alternative, for lack of subject matter jurisdiction.

Dated: New York, New York
September 18, 2020

Respectfully Submitted,

*/s/ Samuel O. Maduegbuna*
Samuel O. Maduegbuna, Esq.
MADUEGBUNA COOPER LLP
Attorneys for Plaintiff AMY MILLER
30 Wall Street, 8th Floor
New York, NY 10005
(212) 232-0155