UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

AMY MILLER,

                 Plaintiff/
      Counterclaim Defendant,

-against-

LEVI & KORSINSKY, LLP; EDUARD
KORSINSKY; and JOSEPH LEVI,

              Defendants/
         Counterclaimants.

No. 20 Civ. 1390 (LAP)

OPINION & ORDER

---

LORETTA A. PRESKA, Senior United States District Judge:

Before the Court is a motion by Plaintiff/Counterclaim Defendant Amy Miller ("Miller") to dismiss counterclaims brought by Defendant/Counterclaimant Levi & Korsinsky, LLP ("L&K") pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. L&K opposes the motion.

For the reasons below, the motion is GRANTED.

## I. **Background**

The following facts are drawn from Miller's complaint and L&K's counterclaims. (See Complaint ("Compl."), dated Feb. 18, 2020 [dkt. no. 1]; Answer, Defenses and Counterclaims ("Answer & Countercls."), dated June 1, 2020 [dkt. no. 19].) They are assumed true at this procedural stage. See Koch v. Christie's Int'l PLC, 699 F.3d 141, 145 (2d Cir. 2012).

Plaintiff Amy Miller is an accomplished attorney with an extensive background in securities and shareholder derivative

litigation.  (Compl. ¶ 3.)  She is 47 years old, married, and the mother of two children.  (Id. ¶ 11.)  In 2001, after graduating from New York Law School summa cum laude, Miller embarked on a long and distinguished legal career litigating sophisticated business disputes, stockholder class actions, and derivative lawsuits as an associate, senior associate, and eventually senior counsel at three New York law firms.  (Id. ¶¶ 26, 28-31.)

In August 2016, after approximately 15 years of practice, Miller joined Defendant Levi & Korsinsky, LLP, a New York-based law firm that primarily engaged in securities and derivative litigation.  (Id. ¶¶ 15-16, 32.)  Defendants Eduard Korsinsky ("Korsinsky") and Joseph Levi ("Levi") are the founding and managing partners of L&K, and they were responsible for personnel decisions in L&K's New York office, including attorney promotions, compensation structures and bonuses, case assignments and reassignments, and employee terminations.  (Id. ¶¶ 18, 20, 22.)

In December 2017, Korsinsky offered to promote Miller from her position as Of Counsel with the firm to the role of Partner. (Id. ¶¶ 32, 37.)  During that meeting, Korsinsky explained that certain male partners, such as Donald Enright and Nicholas Porritt in L&K's Washington D.C. office, earned commissions in addition to their base salary.  (Id. ¶ 39.)  The commissions

2

represented a percentage of the total fees paid to L&K on cases handled by an individual partner.  (Id. ¶ 40.)  Korsinsky promised that he and Miller would further discuss and memorialize the terms of Miller's compensation.  (Id. ¶ 37.)

Miller alleges that, despite her promotion, outstanding performance, and Korsinsky's promise, the terms of her compensation as a partner at L&K were never reduced to writing, she continued to receive the same and lesser compensation under the written contract for her Of Counsel position, and she was subject to discrimination by L&K, Korsinsky, and Levi based on her sex, familial status, and caregiver status.  (Id. ¶¶ 1-3, 38.)  Specifically, Miller alleges that (1) unlike male partners at L&K, she was not paid commissions on certain legal fees that she earned; (2) she received annual bonuses that were equal to or lower than bonuses received by male junior-attorneys whom she supervised; (3) she faced sexist and discriminatory comments from Korsinsky and Levi, including being asked whether her husband should negotiate Miller's compensation on her behalf; (4) she was stripped of handling complex cases, which were then reassigned to male junior-attorneys with far less experience than Miller, who then relied on her for advice and guidance; and (5) she was terminated on March 28, 2019, for vague and conclusory reasons which were a pretext for unlawful considerations of Miller's sex, familial status, and caregiver

status, and in retaliation for her complaints of unequal pay due
to her gender.  (Id. ¶ 3.)

On February 18, 2020, Miller initiated this action seeking
money damages pursuant to Title VII of the Civil Rights Act of
1964 ("Title VII"), the Fair Labor Standards Act of 1938 as
amended by the Equal Pay Act of 1963 ("Equal Pay Act"), the New
York State Equal Pay Law ("NYSEPL"), the New York State Human
Rights Law ("NYSHRL"), and the New York City Human Rights Law
("NYCHRL").  (Id. ¶ 1.)  Miller's complaint asserts three counts
against L&K for sex/gender discrimination under Title VII,
retaliation under Title VII, and breach of contract; and seven
counts against L&K, Korsinsky, and Levi for violation of and
retaliation under the Equal Pay Act, violation of the NYSEPL,
sex and familial status discrimination and retaliation under the
NYSHRL and NYCHRL, and caregiver discrimination under the
NYCHRL.  (Id. ¶¶ 116-65.)  Miller seeks an award of compensatory
and punitive damages to compensate her for her loss of past and
future earnings, bonuses, compensation, and other employment
benefits.  (Id. ¶ 166.)

On June 1, 2020, L&K, Korsinsky, and Levi filed an answer
in which they deny Miller's allegations of wrongdoing and assert
that all actions they took regarding her employment were based
on reasonable, legitimate business factors undertaken in good
faith, none of which were discriminatory, retaliatory, or

4

harassing in nature.  (See generally Answer & Countercls. ¶¶ 3, 172.)  In that filing, L&K also asserted two counterclaims against Miller for faithless and disloyal service under the faithless servant doctrine, and tortious interference with prospective economic advantage.  (Id. ¶¶ 210–17.)

In support of its counterclaims, L&K alleges that, while she was employed with the firm, Miller acted in a manner that was materially disloyal, adverse to L&K's interests, and inconsistent with the fiduciary duties she owed to the firm. (Id. ¶ 189.)  Specifically, L&K alleges that Miller, who was "[o]vertly and vocally unhappy with various aspects of her work arrangements and compensation, . . . began to pursue career opportunities elsewhere and to seek favor from colleagues and mentors at law firms where she had worked previously or where she had professional relations by virtue of L&K's representation of clients in multi-plaintiff derivative actions."  (Id. ¶ 196.)

L&K asserts two specific acts of misconduct by Miller.  In the first, L&K alleges that, in April 2018, the firm entrusted Miller with representing its interests during negotiations with representatives of other law firms over the amount of attorneys' fees that L&K would receive in a multi-plaintiff derivative litigation.  (Id. ¶¶ 198–200.)  Instead of fulfilling her duties in good faith and with loyalty to L&K, and despite "explicit limits concerning her authority to agree to terms concerning the

amount of attorneys' fees acceptable to L&K in the allocation,"
Miller agreed to "an arrangement that was materially detrimental
to L&K" and one which "she knew exceeded her authority."  (Id.
¶¶ 199, 201.)  L&K alleges that Miller did so to advance her own
interests with law firms whom "she perceived as prospective
employers and/or sources of future referral business and whose
interests in the fee allocation were adverse to L&K's
interests."  (Id. ¶¶ 200, 202.)  L&K further alleges that Miller
"later boasted about her unauthorized conduct."  (Id. ¶ 201.)

The second instance of misconduct occurred "in the early
months of 2019," when Miller made "disparaging remarks" about
L&K to the General Counsel of a large financial institution
which was a client of L&K's in multi-party derivative actions.
(Id. ¶¶ 203-04, 209.)  As a result of Miller's disparagement, in
July 2019--more than three months after Miller was terminated by
L&K--the financial institution terminated its relationship with
L&K and changed counsel to the law firm of one of Miller's
mentors, where she had worked previously, and which was the same
firm through which Miller had concluded the arrangement of fees
that was materially detrimental to L&K described above.  (Id. ¶¶
3, 204-06.)  L&K alleges that Miller breached duties of good
faith and loyalty owed to L&K and tortiously interfered with
L&K's prospective economic advantage by "orchestrating" the

financial institution's change in counsel in order to seek favor from her mentor.  (Id. ¶¶ 205, 209.)

On July 21, 2020, Miller moved to dismiss L&K's counterclaims pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  (See Notice of Motion to Dismiss the Counterclaims Pursuant to Fed. R. Civ. Proc. 12(b)(1) & (6), dated July 21, 2020 [dkt. no. 23]; Plaintiff's Memorandum of Law in Support of Motion to Dismiss the Counterclaims Pursuant to Fed. R. Civ. Proc. 12(b)(1) & (6) ("Mem. of L."), dated July 21, 2020 [dkt. no. 24].)  L&K opposed the motion on September 4, 2020.  (See Memorandum of Law of Defendant Levi & Korsinsky, LLP in Opposition to Plaintiff's Motion to Dismiss the Counterclaims Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) ("Opp'n"), dated Sept. 4, 2020 [dkt. no. 29].)  Miller filed a reply on September 18, 2020.  (See Plaintiff's Reply Memorandum of Law in Further Support of Motion to Dismiss the Counterclaims Pursuant to Fed. R. Civ. Proc. 12(b)(1) & (6) ("Reply"), dated Sept. 18, 2020 [dkt. no. 30].)

## II.  **Legal Standard**

"A motion to dismiss a counterclaim is evaluated under the same standard as a motion to dismiss a complaint." S & R Dev. Estates, LLC v. Town of Greenburgh, New York, 336 F. Supp. 3d 300, 307 (S.D.N.Y. 2018) (quotation marks omitted). Accordingly, "Federal Rule of Civil Procedure 8(a)(2) requires

only a short and plain statement of the claim showing that the [counterclaimant] is entitled to relief, in order to give the [counterclaim] defendant fair notice of what the claim is and the grounds upon which it rests." Keiler v. Harlequin Enters. Ltd., 751 F.3d 64, 70 (2d Cir. 2014).

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), "[t]he plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." Aurecchione v. Schoolman Transp. Sys., Inc., 426 F.3d 635, 638 (2d Cir. 2005). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000).

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the plaintiff must plead sufficient facts "to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). That "standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has

acted unlawfully." Palin v. New York Times Co., 940 F.3d 804, 810 (2d Cir. 2019) (quotation marks omitted).  Evaluating "whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

On a motion to dismiss, the Court "accept[s] as true all factual allegations and draw[s] from them all reasonable inferences." Dane v. UnitedHealthcare Ins. Co., 974 F.3d 183, 188 (2d Cir. 2020) (quoting Nielsen v. Rabin, 746 F.3d 58, 62 (2d Cir. 2014)).  The Court, however, is "not required to credit conclusory allegations or legal conclusions couched as factual allegations." Id. at 188–89 (ellipsis omitted).  "Accordingly, 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" Id. at 189.  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Iqbal, 556 U.S. at 679.

## III.  Discussion

Miller argues that L&K's counterclaims do not arise out of the same transaction or occurrence that is the subject matter of her original action against L&K.  Accordingly, she argues, the Court may decline to exercise jurisdiction over the counterclaims, and it may dismiss them pursuant to Rule

12(b)(1).  In the alternative, Miller argues that the counterclaims must be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

### A.  <u>Jurisdiction</u>

"The Court's first inquiry must be whether it has the constitutional or statutory authority to adjudicate a case.  If there is no subject matter jurisdiction, the Court lacks power to consider the action further."  <u>ICOS Vision Sys. Corp., N.V. v. Scanner Techs. Corp.</u>, 699 F. Supp. 2d 664, 667 (S.D.N.Y. 2010).  Courts have supplemental jurisdiction over counterclaims which "form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). "Under the Supreme Court's classic formulation, counterclaims raising issues of state law are part of the 'same case or controversy' where they share a 'common nucleus of operative fact' with the plaintiff's underlying claim." <u>Torres v. Gristede's Operating Corp.</u>, 628 F. Supp. 2d 447, 468 (S.D.N.Y. 2008) (citing <u>United Mine Workers of Am. v. Gibbs</u>, 383 U.S. 715, 725 (1966)).  "The existence of such a common nucleus may be established where either the 'facts underlying the federal and state claims substantially overlap or where presentation of the federal claim necessarily brings the facts underlying the state claim before the court.'" <u>Stefanovic v. Old Heidelberg Corp.</u>, No. 18 Civ. 2093 (LTS) (KNF), 2019 WL 3745657, at *2 (S.D.N.Y.

Aug. 8, 2019) (quoting Lyndonville Sav. Bank & Tr. Co. v. Lussier, 211 F.3d 697, 704 (2d Cir. 2000)) (cleaned up).

In this action, Miller seeks compensation from L&K for improperly withholding certain earnings, bonuses, compensation, and other employment benefits.  (Compl. ¶ 166.)  In its eighteenth and nineteenth affirmative defenses, L&K asserts that Miller's claims are barred based on her faithless and disloyal service and the faithless servant doctrine.  (Answer & Countercls. ¶¶ 185–86.)  As discussed below, under New York common law, a faithless servant forfeits the right to compensation for services tainted by her faithlessness.  See Phansalkar v. Andersen Weinroth & Co., L.P., 344 F.3d 184, 200 (2d Cir. 2003); Stefanovic, 2019 WL 3745657, at *2. Accordingly, presentation of Miller's claim that certain compensation was wrongfully withheld will necessarily bring before the Court the facts underlying L&K's state law counterclaims regarding Miller's purported disloyalty to the firm.  As a result, L&K's counterclaims "form[] part of the same case or controversy as the claims already before the Court and [they are] thus within the Court's supplemental jurisdiction." Stefanovic, 2019 WL 3745657, at *2 (under similar circumstances, denying motion to dismiss faithless servant counterclaim for lack of jurisdiction).  Miller's motion pursuant to Rule 12(b)(1) is denied.

## B. <u>Faithless Servant</u>

Under New York law, "it is well settled that an employee owes a duty of good faith and loyalty to an employer in the performance of the employee's duties." <u>Slue v. New York Univ. Med. Ctr.</u>, 409 F. Supp. 2d 349, 373 (S.D.N.Y. 2006) (cleaned up). "One who owes a duty of fidelity to a principal and who is faithless in the performance of h[er] services is generally disentitled to recover h[er] compensation, whether commissions or salary." <u>Phansalkar</u>, 344 F.3d at 200 (quoting <u>Feiger v. Iral Jewelry, Ltd.</u>, 363 N.E.2d 350, 351 (N.Y. 1977)). "Fundamental to [the employer-employee] relationship is the proposition that an employee is to be loyal to h[er] employer and is prohibited from acting in any manner inconsistent with h[er] agency or trust and is at all times bound to exercise the utmost good faith and loyalty in the performance of h[er] duties." <u>W. Elec. Co. v. Brenner</u>, 360 N.E.2d 1091, 1094 (N.Y. 1977) (internal quotation marks omitted). "A person who is found to be faithless in h[er] performance of services is generally liable for all compensation from the date of the breach, and the faithlessness need not have caused damages." <u>Carco Grp., Inc. v. Maconachy</u>, 383 F. App'x 73, 76 (2d Cir. 2010) (citing <u>Phansalkar</u>, 344 F.3d at 200).

"New York courts . . . apply two alternative standards for determining whether an employee's conduct warrants forfeiture

under the faithless servant doctrine." Id. "The first standard requires that 'misconduct and unfaithfulness substantially violate the contract of service.'" Id. (quoting Turner v. Konwenhoven, 2 N.E. 637, 639 (N.Y. 1885)) (cleaned up). Under this standard, courts have found disloyalty not to be "substantial" where the behavior consisted of a single act of disloyalty, as opposed to a persistent pattern, or the employer knew of and tolerated the behavior. See Phansalkar, 344 F.3d at 201–02.

"The second standard requires only that an agent 'act adversely to h[er] employer in any part of a transaction, or omit to disclose any interest which would naturally influence h[er] conduct in dealing with the subject of h[er] employment.'" Carco Grp., 383 F. App'x at 76 (quoting Murray v. Beard, 7 N.E. 553, 554 (N.Y. 1886)) (cleaned up). In other words, "misconduct by an employee that rises to the level of a breach of a duty of loyalty or good faith." Phansalkar, 344 F.3d at 202. Despite the differing standards, "New York courts have not reconciled any differences between them, or defined the circumstances, if any, in which one standard should apply rather than the other." Id. "Instead, in the two Second Circuit cases that highlight the conflict, the court simply noted that the defendant in each case was liable because he qualified as a faithless servant

13

under either test." <u>Doe v. Solera Capital LLC</u>, No. 18 Civ. 1769
(ER), 2019 WL 1437520, at *9 (S.D.N.Y. Mar. 31, 2019).

As a preliminary matter, Miller argues that L&K has
abandoned its assertion that her "disparaging remarks" to the
General Counsel of L&K's client constitutes a disloyal act under
the faithless servant doctrine because L&K did not respond to
Miller's arguments in support of dismissal of that branch of
L&K's counterclaim.  (Reply at 6; Mem. of L. at 8-9, 10-11
(arguing L&K knew of and tolerated Miller's alleged
disparagement and, regardless, the claim is too vague to infer
that she caused the client to change counsel).)  The Court
agrees.  Here, neither L&K's first counterclaim, nor its
memorandum of law in opposition to Miller's motion, argues that
Miller's disparaging remarks constitute a sufficiently disloyal
act under the faithless servant doctrine.  (<u>See</u> Answer &
Countercls. ¶¶ 210-13 (specifically citing only the allegations
regarding attorneys' fees in support of faithless servant
counterclaim); Opp'n at 3-5 (recounting allegations regarding
attorneys' fees in support of faithless servant counterclaim
only, and allegations regarding disparagement in support of
tortious interference counterclaim only).)  Accordingly, L&K has
abandoned that branch of its faithless service claim which
arguably could be based on Miller's disparagement of L&K to its
client.  <u>See</u> <u>Nielsen v. AECOM Tech. Corp.</u>, 762 F.3d 214, 222 n.9

(2d Cir. 2014) (noting plaintiff abandoned certain claims in part because he failed to "oppos[e] the motion to dismiss on [those] issue[s]"); Rivera v. Balter Sales Co. Inc., No. 14 Civ. 1205 (LTS), 2014 WL 6784384, at *3 (S.D.N.Y. Dec. 1, 2014) ("A plaintiff's failure to respond to contentions raised in a motion to dismiss claims constitutes an abandonment of those claims."); see also Grewal v. Cuneo, No. 13 Civ. 6836 (RA), 2016 WL 308803, at *5 (S.D.N.Y. Jan. 25, 2016) (dismissing faithless servant counterclaim which included allegations that the attorney-plaintiff "made disparaging remarks to a potential client and other [individuals] about the firm and its founder . . . including that [the founder] was incompetent and always lost his cases").

Turning to the merits of Miller's motion, even if L&K had not abandoned the second branch of its faithless servant counterclaim, neither allegation of Miller's misconduct plausibly alleges a violation of the doctrine which would entitle L&K to the relief it seeks.

First, L&K's own allegations indicate that it knew of and tolerated Miller's purported faithless behavior. Indeed, L&K asserts that Miller "began to pursue career opportunities elsewhere and to seek favor from colleagues and mentors at law firms where she had worked previously" while she was "[o]vertly

and vocally unhappy with various aspects of her work arrangements and compensation." (Answer & Countercls. ¶ 196.)

Further, regarding the first instance of misconduct, despite giving Miller "explicit limits concerning her authority to agree to terms," L&K does not assert that it was unaware of what Miller had done or that she had improperly exceeded her authority. (Id. ¶ 199.) Rather, L&K alleges that Miller "boasted about her unauthorized conduct." (Id. ¶ 201.) In addition, L&K does not allege that it took disciplinary action against Miller or even raised a concern that her actions were disloyal or improperly motivated. See, e.g., Leary v. Al-Mubaraki, No. 18 Civ. 48 (LTS) (HBP), 2019 WL 4805849, at *4 (S.D.N.Y. Sept. 30, 2019) (dismissing faithless servant counterclaim where the allegations indicated that defendants tolerated plaintiff's years-long consumption of alcohol at work and did not specify any occasion, other than plaintiff's termination, where defendants took corrective action); Farricker v. Penson Dev., Inc., No. 07 Civ. 11191 (DAB), 2010 WL 845983, at *2–3 (S.D.N.Y. Mar. 4, 2010) (noting defendant's counterclaim for breaches of good faith and loyalty "simply does not make sense" where plaintiff was not terminated after his alleged misconduct was discovered).

As for the second instance of misconduct, in its Answer, L&K asserts that Miller was terminated, at least in part, for

"disparaging L&K, both internally and in the close community of law firms, [including to] prospective employees and clients within L&K's practice area."  (Answer & Countercls. ¶ 102.) This gives rise to the inference, even when drawn in L&K's favor, that the firm was aware that Miller made disparaging remarks to others--and yet, there is no allegation that L&K took any corrective action in response until it terminated her.  Cf. Leary, 2019 WL 4805849, at *4.

Second, the two instances of misconduct that L&K alleges are not severe enough to warrant relief under the faithless servant doctrine.  "The remedies of the faithless servant doctrine are drastic, and appropriately so where the doctrine applies.  An employee who works to undermine or covertly compete with her employer cannot be permitted to retain the benefits of an agency relationship she has betrayed.  An employee who violates an incidental work rule, however, . . . need not forfeit her entire salary."  Sanders v. Madison Square Garden, L.P., No. 06 Civ. 589 (GEL), 2007 WL 1933933, at *6 (S.D.N.Y. July 2, 2007); see also Solera Capital, 2019 WL 1437520, at *10 n.6 (noting it is a "good thing" that courts have not applied the faithless servant doctrine to "garden-variety, petty pilfering by an employee").

Regarding both instances of misconduct, L&K alleges that Miller acted unfaithfully to benefit other law firms and a

mentor of hers whom "she perceived as prospective employers
and/or sources of future referral business."  (Answer &
Countercls. ¶¶ 200, 207.)  L&K, however, does not allege any
benefit actually received by Miller flowing from her disloyalty,
such as an improper kickback or an offer of employment.  Rather,
the counterclaims imply that Miller was motivated, at least in
part, by increasing the amount of referred business she received
as a partner of L&K--i.e., increasing a benefit to L&K in the
form of the amount of business that flowed to the firm.  (Id.)
Indeed, as noted above, L&K acknowledges a "close community of
law firms . . . within L&K's practice area."  (Id. ¶ 102.)  As
alleged, Miller's actions, while purportedly detrimental to L&K
in the short run, cannot be said to violate the "substantial
misconduct" or "adverse action" standards warranting forfeiture,
and they are vastly different from other instances of self-
dealing to which courts have applied the faithless servant
doctrine.  Compare Phansalkar, 344 F.3d at 211 (holding employee
was required to forfeit all compensation received after disloyal
acts such as his receipt of stock options, stock shares, fees,
and business opportunities that should have been passed on to
the firm), Carco Grp., 383 F. App'x at 77 (holding the same
where employee kept a family member on the payroll against his
superior's direct orders, during which time the family member
received substantial compensation from the employer), and

18

Stefanovic, 2019 WL 3745657, at *4 (denying dismissal of
faithless servant counterclaim where employee, on multiple
occasions, allegedly altered tips on customers' receipts for his
own benefit), with Leary, 2019 WL 4805849, at *4 (dismissing
faithless servant counterclaim which alleged on-the-job
consumption of alcohol and improper use of company email and
confidential information), Solera Capital, 2019 WL 1437520, at
*11 (same where allegations included theft of approximately $224
and snooping of certain sensitive material), and Grewal, 2016 WL
308803, at *8 (same where allegations included serious charges
against an attorney that she represented third parties without
the firm's authorization, disparaged senior members of the firm,
lied to the firm, and prepared to take the firm's clients upon
her departure).  Furthermore, L&K avers that it offered Miller a
severance agreement at her termination, (Answer & Countercls.
¶ 106), which cuts against an inference that Miller's purported
disloyalty or disparagement warrants forfeiture of all
compensation received after her first disloyal act--the relief
required under the faithless servant doctrine, see Phansalkar,
344 F.3d at 211.

Accordingly, L&K fails to state a claim for breach of
fiduciary duty under the faithless servant doctrine, and the
counterclaim is dismissed pursuant to Rule 12(b)(6).

## C.  <u>Tortious Interference</u>

"Under New York law, in order to make out a prima facie case for tortious interference with prospective economic advantage, a plaintiff must establish '(1) that he had a business relationship with a third party; (2) the defendant knew of that relationship and intentionally interfered with it; (3) the defendant acted solely out of malice, or used dishonest, unfair, or improper means; and (4) the defendant's interference caused injury to the relationship.'"  <u>Friedman v. Coldwater Creek, Inc.</u>, 321 F. App'x 58, 59-60 (2d Cir. 2009) (quoting <u>Kirch v. Liberty Media Corp.</u>, 449 F.3d 388, 400 (2d Cir. 2006)) (brackets omitted).

"[A]s a general rule, the defendant's conduct must amount to a crime or an independent tort."  <u>Carvel Corp. v. Noonan</u>, 818 N.E.2d 1100, 1103 (N.Y. 2004).  "Conduct that is not criminal or tortious will generally be lawful and thus insufficiently culpable to create liability for interference with prospective contracts or other nonbinding economic relations."  <u>Id.</u> (internal quotation marks omitted).  "A defendant who has not committed a crime or independent tort or acted solely out of malice may nevertheless be liable if he has employed 'wrongful means.'"  <u>Friedman</u>, 321 F. App'x at 60.  "Wrongful means include physical violence, fraud or misrepresentation, civil suits and criminal prosecutions, and some degrees of economic pressure."

Astro Kings, LLC v. Scannapieco, 127 N.Y.S.3d 493, 495 (2d Dep't 2020) (quoting Guard-Life Corp. v. S. Parker Hardware Mfg. Corp., 406 N.E.2d 445, 449 (N.Y. 1980)).  However, "the 'wrongful means' element sets a high bar."  16 Casa Duse, LLC v. Merkin, 791 F.3d 247, 262 (2d Cir. 2015).  "New York courts have recognized an exception to this rule where a defendant engages in conduct for the sole purpose of inflicting intentional harm on plaintiffs.  But this exception is narrow:  When a defendant has acted with a permissible purpose, such as normal economic self-interest, wrongful means have not been shown, even if the defendant was indifferent to the plaintiff's fate."  Id. (cleaned up).

L&K alleges that Miller purposely and in bad faith acted to harm L&K and interfere with its business relations by "orchestrating" its former client's change of counsel to the firm of Miller's mentor.  (Answer & Countercls. ¶¶ 205, 216.) Miller argues that L&K's counterclaim must be dismissed because L&K does not allege conduct that amounts to crime, independent tort, or other sufficient wrongful means.  The Court agrees.

First, as discussed above, L&K's counterclaims imply that Miller was motivated, at least in part, by increasing the amount of business that flowed to her and L&K.  (Answer & Countercls. ¶¶ 200, 207.)  Accordingly, L&K fails to allege plausibly that Miller "acted solely out of malice" or "for the sole purpose of

inflicting intentional harm" on L&K under the third element of a claim for tortious interference.  See 16 Casa Duse, 791 F.3d at 262; Kirch, 449 F.3d at 400.

Second, L&K's counterclaim fails to allege plausibly means by Miller which were sufficiently wrongful.  As discussed above, L&K's counterclaims do not meet the pleading standard for a breach of fiduciary duty claim under the faithless servant doctrine.  In its opposition, however, L&K argues that a generalized breach of fiduciary duty is sufficient to bring a claim for tortious interference, citing Hannex Corp. v. GMI, Inc., 140 F.3d 194 (2d Cir. 1998), and Penrose Computer Marketgroup, Inc. v. Camin, 682 F. Supp. 2d 202 (N.D.N.Y. 2010), in support.  The Court is not persuaded.  In Hannex Corp., the Second Circuit explained that a knowing breach of fiduciary duty may amount to wrongful means "if it satisfies the usual common law elements" of a claim for fraud or misrepresentation.  140 F.3d at 206.  Here, L&K's counterclaims allege that Miller acted to further her own economic self-interests, but L&K does not assert that she did so via fraudulent conduct or other deceptive means--indeed, L&K does not even allege that Miller's disparaging remarks were untrue or incorrect, to say nothing of the heightened pleading requirements of Federal Rule of Civil Procedure 9(b).  See id.; Fed. R. Civ. P. 9(b) (requiring allegations of fraud or mistake to be pled "with

particularity").  Likewise, in Penrose, the court denied

dismissal of a tortious interference claim where the plaintiff

sufficiently alleged not merely breaches of certain fiduciary

duties by the defendant but also misappropriation of trade

secrets and violations of the Computer Fraud and Abuse Act, 18

U.S.C. § 1030, and the Stored Communication Act, 18 U.S.C.

§ 2701.  682 F. Supp. 2d at 216.  Such allegations of wrongful

conduct by the defendant in Penrose are a far cry from L&K's

assertions here.  Cf. 16 Casa Duse, 791 F.3d at 263 (concluding

that defendant's actions, "however misguided, . . . did not

amount to 'the sort of egregious wrongdoing that might support a

tortious interference claim in the absence of an independently

unlawful act or evil motive'") (quoting Carvel Corp., 818 N.E.2d

at 1102-03).

Finally, even if Miller's disparaging remarks or other

misconduct could qualify as wrongful means, injury to L&K relies

on the conclusory and unsupported allegation that Miller's

remarks "directly caused" L&K's client to terminate its

relationship with the firm more than three months after Miller

herself was terminated by L&K and after some unalleged period of

time following her remarks.  (Answer & Countercls. ¶ 204.)

Similarly, L&K alleges--again, without any factual support--that

Miller "orchestrated" the client's change of counsel.  (Id. ¶¶

205, 209.)  Such allegations are not entitled to the presumption

of truth, and they are not sufficient to withstand a challenge pursuant to Rule 12(b)(6).  See Dane, 974 F.3d at 189 (explaining courts are not required to credit conclusory allegations or legal conclusions couched as factual allegations); see also Nadel v. Play-By-Play Toys & Novelties, Inc., 208 F.3d 368, 382 (2d Cir. 2000) (explaining allegations based on "suspicions" "cannot suffice to support a claim for tortious interference"); Anaen Goyburu Corp. v. Vill. of Port Chester, No. 09 Civ. 3540 (CS), 2010 WL 11712794, at *8-9 (S.D.N.Y. June 14, 2010) (dismissing tortious interference claim which relied on conclusory allegations).

Accordingly, L&K fails to state a claim for tortious interference with prospective economic advantage, and the counterclaim is dismissed pursuant to Rule 12(b)(6).

## IV.  Conclusion

For the foregoing reasons, Plaintiff Amy Miller's motion to dismiss Defendant Levi & Korsinsky, LLP's counterclaims [dkt. no. 23] is GRANTED.  Counsel shall confer and inform the Court by letter no later than February 19, 2021, of the status of the action.  The Clerk of the Court shall close the open motion.

**SO ORDERED.**

Dated:     New York, New York
           February 12, 2021

_Loretta A. Preska_
LORETTA A. PRESKA
Senior United States District Judge