**MADUEGBUNA COOPER LLP**
ATTORNEYS AT LAW
30 WALL STREET
8TH FLOOR
NEW YORK, NEW YORK 10005
(212) 232-0155
FAX: (212) 232-0156
www.mcande.com

February 16, 2022

**VIA ELECTRONIC CASE FILING**
The Honorable Loretta A. Preska
United States District Judge
500 Pearl Street
New York, NY 10007-1312

Re: *Amy Miller v. Levi & Korsinsky, LLP, et al.*
Docket No.: 20-cv-01390(LAP)(BCM)

Dear Judge Preska:

We represent the plaintiff, Amy Miller, in the above-referenced matter and write jointly with counsel for Defendants Levi & Korsinsky, LLP ("L&K"), Eduard Korsinsky ("Korsinsky") and Joseph Levi ("Levi") to report back to the Court promptly after taking the depositions of the parties and Svetlana Mayzus, ("Mayzus"). (Dkt. # 43, Civil Case Mgt. and Scheduling Order, dated Sept. 16, 2021.)

**1. Report on Depositions and Discovery**

The deposition of Plaintiff was held on January 24, 2022; Defendant Korsinsky on January 25, 2021; Defendant Levi on January 27, 2021; and, non-party Ms. Mayzus on January 28, 2022, in accordance with the Court's deadline of January 31, 2022. (Dkt. # 50, dated Dec. 6, 21.) The current deadline for all fact discovery is February 28, 2022. (*Id*.)

Because Plaintiff's deposition had already occurred before the Court issued its Order directing Defendant Korsinsky's deposition to be held first, (Dkt. # 65, date Jan. 26, 2022), Defendants deposed Plaintiff before listening to the four (4) audio recordings that Plaintiff produced to Defendants on January 28, 2022 pursuant to the Court's order granting Plaintiff's application for a temporary protective order.

In addition, pursuant to the Court's order, Plaintiff also provided certain pay information related to her professional practice, except for Plaintiff's 2021 W-2 and paystubs for 2021 to present, and a sworn statement confirming such in addition to the statement that she is only seeking garden variety emotional distress damages.

### 2. Plaintiff's Summary of the First Four Depositions

#### a. Summary of Depositions

In regard to the Court's direction to summarize the four depositions, Plaintiff can provide a more detailed and page specific summary under separate cover or in the form of an *ex parte* settlement submission to the Court. Given that discovery is still on-going, Plaintiff provides the following general summary. Plaintiff believes that the four depositions fully support her allegations that she was paid less than comparable male non-equity partners doing similar or less advanced legal work; that Defendants became upset when Plaintiff sought pay parity; and then began searching for a pretext to fire her. And, consistent with her unlawful termination, Defendants testified to conflicting and varied reasons about the basis for her termination and the timing of the decision on March 28, 2019. In contradiction with their position, Defendants' discovery production confirms that even where comparable male partners had down years and lost money, they were paid significant bonuses. As a counter, Defendants testified that they do not have accurate "Profit and Loss" records from 2016 to 2019, and that the spreadsheets that they produced in discovery were backwards looking reviews created in 2019, not contemporaneous records showing why male partners received higher commissions or bonuses than Plaintiff in terms of fees versus case expenses. But the sheets appear to accurately reflect the fees generated and bonuses paid from 2016 to 2019. Instead, Defendants relied on "back of the envelope" calculations to determine the "Profit and Losses" on cases in support of partner bonuses.

Plaintiff also deposed Ms. Mayzus, L&K's former Director of Administration & Finance. Ms. Mayzus, represented by Defendants' same counsel for purposes of her deposition, was confronted with her own handwritten notes that support Plaintiff's entitlement to pay and bonuses equal with male comparators. The handwritten notes confirm the recommendation and opinion she gave Plaintiff about what her bonus should be and that she should be treated "equal" with male partners. However, Ms. Mayzus testified that she was unsure if the notes were actually her own handwriting, though she confirmed having several meetings to discuss Plaintiff's complaints about her "unhappiness" with her unfair pay compared to male partners.

#### b. Response to Defendants' Summary

Discovery confirmed that Defendants' dismissed counter-claims were baseless. Defendants admitted that the claims were based on "speculation" and they could not provide any facts to support them. Instead, the baseless counter-claims were pursued in retaliation, designed to harm Plaintiff's reputation and intimidate her from asserting her rights in court. Defendants had no factual basis to claim that Plaintiff "disparaged" them or casused any clients to leave L&K or that she was "shopping L&K clients" or being "disloyal." The only client that left L&K did so because it was offended by Defendants' behavior and treatment of female attormeys --- and did so after Defendants terminated Plaintiff. Defendants' claim that Plaintiff cost them millions has no basis in fact. Defendants's claim that Plaintiff "hatched a deal via secret mobile texts" to cause a client to fire L&K is another fabrication. As Defendants know, the client chose to follow Plaintiff to her new firm after L&K fired her, but a conflict prevented it, causing the client to need a referral to a new law firm. Still, L&K was paid handsomely for its hours, despite losing the confidence of

the client and after, it appears, interfering to ensure that Plaintiff received no referall fee. Indeed, Defendants Korinsky and Levi could not testify to any facts establishing that Plaintiff harmed L&K or conduct that would justify her termination.

Earlier in her career, Plaintiff was warned to not work for L&K because they had a poor reputation. Plaintiff's testimony and evidence reveal these warnings to be true. Discovery has also revealed that Defendants unethically charged firm expenses to Ms. Miller's cases and expense reports to hide firm overhead as reimbursable litigation expenses. Discovery also revealed that Defendants cared little about their clients' settlement positions; but instead aims to enrich themselves with undeserved attorney's fee windfalls. In connection, discoveryconfirmed that Defendants' claim that Plaitniff's insubordination during a settlement negotiation cost them $400,000, was the basis for her termination is totally undocumented and simply not true. Defendants were aware of the settlement goal beforehand, the client authorized the settlement, and a highly-regarded non-party attorney retained as local counsel made the decision to settle, not Plaintiff.

Defendants harp on Plaintiff's honest admission that she took a a day off to interview for a job, conduct which Defendant Levi conceded was normal for attorneys that needed to discretely interview during office hours and that he did not have any problem with her interviewing. Defendants also inaccurately claim that Plaintiff took firm emails after her terminaton. But the facts show that Plaintiff gathered documents of her own creation like Status Reports to preserve evidence of discrimination and did so before her termination took effect. Next, there was no testimony or documented evidence that Plaintiff "blackmailed" Defendants during serverance negotiations. Defendants are just spinning heated rhetoric to obscure what really happened. The unethical behavior during severance negotiations occurred when Defendants tried to bind Plaintiff's severance payment on a client not leaving L&K, something no attorney can control or guarantee given the client's utmost right to counsel of their choosing.

  c. **Conclusion**

In sum, discovery has shown that due to her gender, Plaintiff's was paid less than male partners, and she was unjustifiably terminated in retaliation for her seeking equal pay.

In any event, in addition to depositions taken so far, and given the current February 28, 2022 fact discovery deadline, Plaintiff is deciding which other depositions are necessary and will likely seek to depose (i) Shannon Hopkins, a current partner at Defendant L&K; (ii) Arthur Homewood, who is L&K's former accountant; (iii) Joanne Chlebus, L&K's former employee who worked in marketing and e-discovery; (iv) Nancy Kulesa, a former L&K partner; and, (v) Andrew Dupre, a partner with McCarter & English who served as local counsel on L&K cases at issue in this litigation.

3.  **Defendants' Summary of the First Four Depositions**

The deposition testimony of Plaintiff, Defendants Levi and Korsinsky and former L&K office manager Svetlana Mayzus, shows by undisputed material facts that Plaintiff's allegations of unequal pay and discrimination based on gender or caregiver status are not sustainable and that her claims should be dismissed on a summary judgment motion by Defendants because L&K applied a gender-neutral, merit-based compensation and incentive structure.

Deposition testimony shows Plaintiff's awareness that she benefited from negotiating and receiving the highest salary L&K paid to any attorney and benefited from L&K enabling her to work from home with her husband as she attended to personal affairs. Against that background, Plaintiff presses her Complaint allegations of unequal pay, in complete disregard of undisputed evidence showing: (1) the requirements under L&K's gender-neutral compensation structure; and (2) her lack of knowledge or consideration of the experience, performance record, fees generated, profitability and compensation terms of other L&K female and male attorneys who received fee-based bonuses. Plaintiff continues to pursue her claims notwithstanding the undisputed evidence that she compares unfavorably to L&K's more highly performing, valued and compensated female and male attorneys.

L&K's compensation policy, applicable equally to female and male attorneys with no prior record of frontline fee generation, required a $2.5 million fee threshold in one year before becoming eligible for fee-based bonuses, a level Plaintiff knew about but never attained. Both Plaintiff and a male attorney were announced as new partners at the same time and both were treated in the same manner; consistent with L&K's gender-neutral policy, neither received fee-based bonuses because they had not attained L&K's fee generation threshold. On the other hand, when L&K has hired experienced lateral partners (two females and two males) with a reliable history of frontline success, irrespective of gender, these senior partners were offered fee-based bonuses at the outset without having to meet the $2.5 million threshold required of the less experienced attorneys.

After only five months of being given the partner title and conceding that she never satisfied the $2.5 million threshold, Plaintiff pressed for a bonus compensation structure that was substantially higher than what even senior partners received. Despite pleading entitlement to a 15% commission on any fee earned from L&K's "Derivative Department cases," and "a 10% commission for any fee earned by L&K using any of Plaintiff's clients for cases not in her department" (Complaint ¶66) as a predicate of her gender and family caregiver discrimination claims, Plaintiff admits that she is not aware of any L&K attorney – female or male – receiving those terms. Plaintiff concedes that she never satisfied L&K's $2.5 million threshold, and she was not aware of the profitability of her own cases. No L&K attorney, not even female and male partners with established records of substantial and profitable fee generation, were compensated at the level Plaintiff brazenly brands discriminatory. In other words, Plaintiff's case demands *more*, not equal, compensation.

Deposition testimony shows that Plaintiff engaged in insubordinate, defiant, confrontational and disloyal conduct that was damaging to L&K financially and reputationally. In a manner costly to L&K, Plaintiff defied instructions and her authority and undermined Levi

and Korsinsky as the managing partners, concealing information on substantive matters affecting L&K and its profitability. Plaintiff acted unilaterally, contrary to instruction, and without authorization when she disagreed with a managing partner's assessment of active matters and L&K's posture in relations with co-counsel, mediators and courts, disregarding the larger perspective of the objectives of Levi and Korsinsky as founders and managers of a firm whose revenue and profitability depends entirely on continuing a record of favorable outcomes in contingency litigation within a small community of plaintiffs' law firms. Prior to her request for compensation that eclipsed that of L&K's more valuable female and male attorneys, Plaintiff conspired to conceal from the managing partners the progress of a fee negotiation and proceeded to agree to a fee which was some $400,000 less than the $1.5 million they had authorized, and which a Court had already escrowed for the benefit of L&K, and she engaged in other confrontations and resistance on other matters – insubordination documented in Plaintiff's written communications.

Plaintiff decided in August 2018 to leave L&K after disagreements with a managing partner over her actions that were contrary to his instruction and displaying her unwillingness to adhere to L&K's supervision and approach to managing cases and settlements consistent with the approach and objectives of L&K's practice and economics. Plaintiff had actively engaged a headhunter since at least September 2018 and disloyally shopped L&K cases, clients, proprietary information, and associates, in an attempt to improve her job prospects. The managing partners were aware since the fall of 2018 of Plaintiff's intended departure from L&K and gave her months to find a new job, even though this exposed L&K to the risk of keeping on an insubordinate employee with no current or future loyalties to L&K.

With admitted disregard for her confidentiality and ethical responsibilities, while employed by L&K and owing a duty of loyalty to L&K, Plaintiff breached firm and client confidentiality by indiscriminately communicating about matter and settlement status, "oversharing" which Plaintiff now apparently regrets. Between September 2018 and her March 2019 employment termination, Plaintiff had developed and actively shopped a business plan based on L&K cases, clients and proprietary information. Plaintiff learned that her new firm had a conflict preventing her transfer of an L&K case and client and thus she was unable to perform ongoing legal services in the case. Plaintiff did not refer to ethical rules barring attorneys from receiving fees for client referrals without performing future services. Plaintiff's testimony reveals that she hatched a deal with an attorney at another firm to directly pay her as much as $500,000 for the time she worked on the case while at L&K. Thus, she entered into an agreement to misappropriate this L&K asset for her own gain and impacted L&K's ability to get fully compensated for its lodestar in the case. The improper agreement also potentially shifted millions in fees from L&K to the transferee firm. Plaintiff testified that the scheme was unwritten so it would not be "discoverable" by Defendants. Although the referral was accomplished, Plaintiff was "really mad" when that attorney "went back on the deal" and refused to pay her. Deposition testimony shows that despite the unraveling of her scheme, Plaintiff brazenly seeks a portion of the fees L&K received in the case notwithstanding the damage her improper conduct caused to L&K.

Notwithstanding her clear understanding of the ethical and professional reasons that confidential information pertaining to client cases or affairs could not be removed from L&K's premises or systems, Plaintiff admits to sending "a lot of documents," including status reports, to

her personal e-mail account over a span of "like a couple of hours" on March 28, 2019 after her employment was terminated. Plaintiff believed the documents, secured with only her e-mail password, would help her by supporting a contemplated lawsuit against L&K or serve as "insurance" if she was not successful in working out a severance agreement.

Deposition testimony shows that Plaintiff cannot establish the essential and critical temporal proximity linking her asserted unrealistic and naïve economic requests during 2018 to L&K's decision to terminate her employment at least ten months later. Despite their knowledge of Plaintiff's unsatisfied economic ambitions and job search and her intent to leave L&K, Defendants continued her in their employ and rewarded her with an undeserved year-end bonus in 2018. Defendants indulgently allowed a corridor of many months for Plaintiff's employment search to reach fruition, but Plaintiff's open, vigorous and exhaustive search had not yielded the anticipated departure. Compounding her misdeeds, by late March 2019, Plaintiff had intensified her job search and scheduled lengthy interviews, dishonestly telling Korsinsky and others that she was sick, but otherwise expressing satisfaction about her admitted lie. Defendants' annoyance with her unrelenting hostile, disloyal and disruptive performance and behavior, exacerbated by her outright lying, reached the breaking point, animating the decision to terminate her employment on March 28, 2019.

In sum, deposition testimony shows that Defendants did not engage in any discriminatory or retaliatory activity alleged by Plaintiff and that Plaintiff cannot establish a *prima facie* case to withstand summary judgment dismissal of her claims, even by piecing together soundbites from surreptitious recordings she staged as she plotted to construct "blackmail" as a basis for exacting a separation agreement on economic terms richer than offered by L&K. Rather, Plaintiff is shown to follow her own moral and economic compass, calibrated to her own distorted opportunism and at odds with absolute and objective standards of truth, professional and ethical boundaries, and L&K's policies, management instruction and oversight.

### 4. Status of Settlement Discussions

In terms of settlement, the parties have discussed whether a formal settlement conference would be fruitful and have determined that a settlement conference would not be productive.

### 5. Conclusion

We thank the Court for its attention to this matter.

Respectfully Submitted,

*/s/ Samuel O. Maduegbuna*
Samuel O. Maduegbuna

cc: Allen B. Roberts, Esq.
Lori A. Medley, Esq.

*Attorneys for Defendants*