

Attorneys at Law

Allen B. Roberts
t  212.351.3780
f  212.878.8600
ARoberts@ebglaw.com

May 6, 2022

VIA ECF

Honorable Loretta A. Preska, U.S.D.J.
United States Courthouse
500 Pearl Street, Room 2220
New York, New York 10007

     Re:  *Amy Miller v. Levi & Korsinsky, LLP, et al,* 1:20-cv-01390 (LAP)(BCM)
           Defendants' Pre-Motion Letter – Summary Judgment

Dear Judge Preska:

     Pursuant to the Court's February 24, 2022 Order (Dkt. No. 71), we file this Pre-Motion Letter concerning summary judgment on behalf of Defendants Levi & Korsinsky, LLP ("L&K"), Eduard Korsinsky ("Korsinsky") and Joseph Levi ("Levi").  The documentary evidence and undisputed deposition testimony of all parties shows that Plaintiff cannot establish a *prima facie* case of gender, familial or caregiver discrimination, retaliation, or breach of contract, and that her claims should be dismissed on summary judgment because L&K applied a gender-neutral, merit-based compensation and incentive structure and terminated Plaintiff's employment for legitimate, sound business reasons,  as noted in Defendants' portion of the parties' Joint Letter filed February 16, 2022 (Dkt. No. 66).

     Plaintiff's extensive discovery and deposition examination of Defendants Levi and Korsinsky and L&K's former office manager concluded on February 28 (Dkt. No. 50) with no evidence in support of her case.  Plaintiff then sought two and one-half months of additional discovery for the express purpose of taking up to five additional depositions of non-parties (*See* Dkt. No. 66; Dkt. No. 71), individuals long identified by Plaintiff as potential witnesses.[1]  After being granted the extension, Plaintiff took only a single additional deposition and she otherwise emerged from discovery with no evidence to avert summary judgment dismissal of each of her causes of action.

     Plaintiff complains that she was denied fee-based "commissions" because of her gender. However, undisputed evidence shows that L&K applied gender-neutral criteria in deciding

---

[1] Responsive to the Court's inquiry during the February 24, 2022 conference whether discovery was "substantially finished", Plaintiff stated that her only remaining discovery was five "very short, half-day depositions that we need to take" (Transcript of Proceedings re: Conference Held On 2/24/2022 Before Honorable Loretta A. Preska at 3:9-19).

Honorable Loretta A. Preska, U.S.D.J.
May 6, 2022
Page 2

compensation and Plaintiff simply did not attain the performance record, fees generated and profitability of other L&K female and male attorneys who received fee-based bonuses. Senior attorneys, far more accomplished than Plaintiff, with an established track record of success as partners in prior firms before being hired by L&K, were offered fee-based bonuses when they joined L&K, and L&K offered such fee-based bonuses to two male and two female senior attorneys. For other, less-experienced junior attorneys who first became a partner during their L&K employment, such as Plaintiff, L&K required achievement of positive financial results – generating $2.5 million in fees in one year – before they could become entitled to fee-based bonuses. The $2.5 million threshold requirement was applied to both male and female attorneys. Indeed, when Plaintiff and a male attorney were announced as partners at the same time in 2017, both were treated in the same manner, consistent with L&K's gender-neutral policy, and neither was entitled to receive fee-based bonuses because they had not achieved L&K's fee generation threshold. The undisputed evidence shows that Plaintiff was aware of, and never met, the $2.5 million threshold. Therefore, Plaintiff never became entitled to receive fee-based bonuses.

Notwithstanding her knowledge of L&K's policy, about five months after being given the title of partner, Plaintiff requested bonuses in the amount of 15% of gross fees earned from L&K's "Derivative Department cases," and "a 10% commission for any fee earned by L&K using any of Plaintiff's clients for cases not in her department." (Complaint ¶66). While Plaintiff pleads that "Messrs. Enright and Porritt have similar compensation plans" (Complaint ¶67) to what she sought, undisputed evidence establishes that under L&K's compensation structure, no L&K partner – male or female – was entitled to 15% of fees and 10% for "using" their clients. Indeed, notwithstanding their senior status and record of success as partners at well-regarded firms prior to joining L&K, both Messrs. Enright and Porritt had a base salary at L&K that was lower than what Plaintiff received and a bonus structure that was substantially less than what Plaintiff requested for herself. Further, Plaintiff admits she was not aware of any L&K attorney – male or female – receiving the compensation terms she proposed and she had no idea of the profitability of her cases. Thus, Plaintiff's claims of gender, family and caregiver discrimination fail in the face of her ignorance of the bonus compensation structure that other attorneys received, her concession that she never satisfied L&K's $2.5 million threshold for fee-based bonuses, and her lack of awareness of the profitability of her own cases.

Plaintiff's claims also fail because she is left to argue – inconsistently – that the same actors who granted her favorable treatment, knowing her gender, familial and caregiver status, also acted discriminatorily on the basis of those very factors. Undisputed facts show that Defendants Levi and Korsinsky offered Plaintiff employment in 2011, knowing she was pregnant with a second child, and that *she* declined the offer, opting to remain with her then current employer. When Plaintiff reengaged with L&K five years later, she demanded a higher base-salary than L&K paid to any other attorney, and L&K agreed to grant that request. In 2017, Defendants Levi and Korsinsky gave Plaintiff the title and opportunity of partner, something she never attained at any firm before her employment at L&K, and a position she could not attain despite the aggressive nine-month job search she commenced in August 2018, while working for L&K and trading on the title and work experience she gained at L&K. Plaintiff also took full advantage of L&K's flexible policy allowing discretion to work from home to attend to personal affairs.

Notwithstanding the favorable opportunity and platform L&K made available to Plaintiff, she engaged in insubordinate, defiant, confrontational and disloyal conduct that was damaging to L&K financially and reputationally. Plaintiff openly defied instructions and undermined Defendants Levi and Korsinsky as the managing partners, concealing information on substantive matters affecting L&K and its profitability. By acting unilaterally and without authorization when she disagreed with a managing partner's assessment of active matters and L&K's posture in relations with co-counsel, mediators and courts, Plaintiff demonstrated disregard for the firm's financial wellbeing as well as of the business objectives of Defendants Levi and Korsinsky as founders and managers of a firm whose revenue and profitability depends entirely on continuing a record of favorable outcomes in contingency litigation within a small community of plaintiffs' law firms. After disagreements with managing partner Korsinsky over her actions that were contrary to his instruction and displaying her unwillingness to adhere to L&K's supervision and approach to managing cases and settlements consistent with the approach and objectives of L&K's practice and economics, Plaintiff decided in August 2018 to leave L&K and she commenced a job search.

With respect to her retaliation claim, Plaintiff cannot establish either a factual connection or the essential temporal proximity to link her asserted unrealistic and naïve economic requests during 2018 to L&K's decision to terminate her employment at least ten months later. Defendants became aware of Plaintiff's job search in the fall of 2018, and Plaintiff was aware that Defendants knew of her plans to seek employment elsewhere. Yet, despite Plaintiff's plans to leave the firm, Defendants gave her an undeserved year-end bonus in 2018, while bearing the risks of keeping on staff a disloyal and disaffected employee who disparaged L&K and shopped L&K clients, cases and associates to other firms as she actively attempted to improve her own job prospects. Plaintiff's hostile, disloyal and disruptive behavior continued through March 2019, and she became less engaged in her job responsibilities, scheduling lengthy interviews as she intensified her job search, dishonestly telling Defendant Korsinsky and colleagues that she was sick, but otherwise expressing satisfaction about her admitted lie. On March 28, 2019, Defendants exercised their sound business judgment and terminated Plaintiff's employment.

In sum, undisputed evidence shows that Defendants did not engage in any discriminatory or retaliatory activity alleged by Plaintiff and that Plaintiff cannot establish a *prima facie* case to withstand summary judgment dismissal of her gender, familial or caregiver discrimination, retaliation, and breach of contract claims.

We thank the Court for its attention to this matter.

Respectfully,

*/s/ Allen B. Roberts*

Allen B. Roberts

cc: All counsel of record via ECF