# MADUEGBUNA COOPER LLP

ATTORNEYS AT LAW

30 WALL STREET

8TH FLOOR

NEW YORK, NEW YORK 10005

(212) 232-0155

FAX: (212) 232-0156

www.mcande.com

May 13, 2022

**VIA ELECTRONIC CASE FILING**
The Honorable Loretta A. Preska
United States District Judge
500 Pearl Street
New York, NY 10007-1312

    Re: *Amy Miller v. Levi & Korsinsky, LLP, et al.*
       __Docket No.: 20-cv-01390(LAP)(BCM)__

Dear Judge Preska:

 We represent Plaintiff, Amy Miller and write in opposition to the pre-motion letter for summary judgment filed by Defendants Levi & Korsinsky, LLP ("L&K"), Eduard Korsinsky ("Korsinsky") and Joseph Levi ("Levi") (Dkt. # 74.)

 Summary judgment is improper. Material disputes of fact exist on the issues of whether Miller was paid less than male partners based on her gender, and whether she was unjustifiably terminated in retaliation for her seeking equal pay. Sharp disputes of fact also exist on the issue of whether Defendnts' claimed reasons for paying Miller less and terminating her were a pretext for discrimination. A jury must weigh Defendants' inconsistent and ever shifting explanations.

 Given the record in this case, Defendants' proposed motion lacks merit.

 **1. Plaintiff's Claims Raise Triable Disputes of Fact**

 Miller can easily state a *prima facie* case that she was paid less paid based on her gender under circumstances raising an inference of discriminatory intent. Discovery shows that she was paid less than comparable male non-equity partners doing similar or less advanced legal work; that Korsinsky and Levi immediately became upset when Miller sought pay parity and degraded her with sexist taunts; and then began searching for, in their own words, a "pretext" to fire her.

**MADUEGBUNA COOPER LLP**

*Miller v. L&K*, *et al.*
May 13, 2022
Page 2 of 3

      Material disputes exist regarding Defendants' claimed "gender-neutral, merit-based compensation and incentive structure" or what they now call "L&K's policy." (Defs. at 1.) The record shows that there was no "L&K policy." As a litigation defense, Defendants have concotated an after-the-fact "policy" and $2.5 million threshold that never existed, was never documented, was never told to Miller or other partners or Ms. Mayzus, L&K's Director of Administration & Finance. Indeed, discovery and Defendants' depositions show that L&K did not have a contemporaneous record of case profit and losses. There was no accounting. In his deposition, Levi admitted that the many spreadhseets of profit and losses produced by Defendants in discovery for 2016 to 2019 were unreliable academic exercises done years later. It would have been impossible to impose a uniformed compensation "policy" based on merit – even if one existed. Despite efforts to reverse-engineer a "policy," L&K's non-equity partner compensation was *ad hoc* with money flying around at the whim of Korsinsky and Levi that allowed unequal pay to flourish. Oddly, Defendants tout that Miller "had no idea of the profitability of her cases," (Defs. at 2), but Korsinksy and Levi had no idea either. They flipped out when Miller – like any reasonable professional – requested financial data about her cases. A jury must hear how Defendants conspired to keep Miller in the dark so she could not seek equal pay and fired her to deprive her compensation from fees on cases she had developed.

      The testimony of Mayzus, who holds a Ph.D. and had a career of director positions at New York City law firms, before L&K, supports Miller's claims. Although Korsinksy diminished Mayzus as someone who keeps the coffeepot full, Director Mayzus knew about male partner compensation and her own handwritten notes support Miller's entitlement to pay and bonuses equal with male comparators. The handwritten notes confirm the recommendation and opinion she gave Plaintiff about what her bonus should be and that she should be treated "equal" with male partners. However, Mayzus, now represented by Defendants' attorneys, testified that she was unsure if the notes were actually her own handwriting, though she confirmed having several meetings to discuss Plaintiff's complaints about her "unhappiness" with her unfair pay compared to male partners. The male employee that Defendants try to compare to Miller did not lead a litigation team and was subordinate to a partner on Miller's level. He was not Miller's equal. Instead, he is more evidence of Miller being treated less well due to her gender.

      Defendants testified to conflicting and varied reasons about the basis for her termination and the timing of the decision on March 28, 2019. Defendants' claims of Miller being "confrontational" and "defiant" simply smack of more sexist tropes. At trial, Miller will show the jury how Defendants employed woman to look progressive but did not see them as equals. What Defendants now spin as "disloyal" conduct was never raised with Miller, including during the termination meeting which was recorded, or ever discussed in Defendants' emails. It is simply more baseless after-the-fact mud slinging. Defendants crowing that Miller used a sick day to interview for a job shows how weak their defense really is.

      In response to Defendants' comments about discovery, the final portion of discovery was productive and illuminating. We disagree that no new evidence will "avert summary judgment." The opposite is true. Far from Defendants' view that nothing occurred in the last portion of discovery, Plaintiff served discovery demands, several deficiency letters and follow-up emails, and

MADUEGBUNA COOPER LLP

*Miller v*. *L&K*, *et al*.
May 13, 2022
Page 3 of 3

consistently requested meet-and-confers. Despite these robust efforts, two documentary issues are still being worked out by the parties.

### 2. Plaintiff's Cross-Motion to Amend Complaint

Miller requests a conference to seek leave to file an amended complaint specifying that her retaliation claim includes Defendants' counterclaim lawsuit. "An employer's bad faith assertion of counterclaims against a former employee may constitute unlawful retaliation." *Grauer v. UBS Fin. Services, Inc.*, 2008 WL 11398936, at *8 (S.D.N.Y. Dec. 17, 2008) (citing *Robinson v. Shell Oil Co.*, 519 U.S. 337, 346 (1997)). "Several courts have found that compulsory counterclaims are not actionable adverse actions unless they are 'totally baseless.'" *Id.*

Even assuming the counterclaims were compulsory, under that higher standard discovery confirmed that Defendants' dismissed counterclaims were baseless. Defendants admitted that the claims were based on "speculation" and they could not provide any facts to support them. Instead, the counterclaims were pursued in retaliation, designed to harm Miller's reputation and intimidate her from her claims. Defendants had no factual basis to claim that Plaintiff "disparaged" them or caused any clients to leave L&K or that she was "shopping L&K clients" or being "disloyal."

As discovery revealed, the only client that left L&K had explained their reasons to Defendants in a letter that dispelled any basis to file a claim that Miller improperly caused the client to leave. Even losing the client, L&K was paid handsomely for its hours – *that Miller worked*. Based on the amended complaint, Miller will seek summary judgment based on Defendants' deposition admissions and undisputed documentary evidence that the counterclaims were baseless.

### 3. Conclusion

Given triable disptues of fact, Defendnts' proposed motion for summary judgment should be discouraged and denied. Miller's motion for leave to amend should be granted.

We thank the Court for its attention to this matter.

Respectfully Submitted,

*/s/ Samuel O. Maduegbuna*

Samuel O. Maduegbuna

cc:   Allen B. Roberts, Esq.
      Lori A. Medley, Esq.

      *Attorneys for Defendants*