UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

AMY MILLER,                                             :
                                                        :
                        Plaintiff,                      :
                                                        :  20-CV-01390 (LAP)(BCM)
                                                        :
            - v -                                       :
                                                        :
                                                        :
LEVI & KORSINSKY, LLP, EDUARD                           :
KORSINSKY, and JOSEPH LEVI,                             :
                                                        :
                                                        :
                        Defendants.                     :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

_____

MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT

_____

EPSTEIN BECKER & GREEN, P.C.
Allen B. Roberts
Jessica Giambrone Palmese
875 Third Avenue
New York, New York 10022
Tel: (212) 351-4500
*Attorneys for Defendants Levi &
Korsinsky, LLP, Eduard Korsinsky and
Joseph Levi*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................. 1

STATEMENT OF UNDISPUTED FACTS ........................................ 5

   A.  L&K's Practice and Compensation Structure for Partners ............................5

   B.  Plaintiff's Employment by L&K ................................................................6

   C.  Plaintiff Receives the Title of Partner ......................................................7

   D.  Plaintiff's Desire to Earn More ................................................................8

   E.  Plaintiff's Disappointing Experience in Generating Fees ........................9

   F.  Plaintiff's Defiant and Belligerent Behavior in April through August 2018 .10

   G.  Plaintiff's Actions to Leave L&K and the Termination of Her Employment 11

ARGUMENT ................................................................................ 15

I.     PLAINTIFF CANNOT ESTABLISH DISCRIMINATION ...........................15

   A.  The Applicable Standard for Assessing Plaintiff's Discrimination Claims ...15

   B.  Plaintiff Cannot Establish Discrimination on the Basis of Her Employment Terms under Title VII or the NYSHRL ......................................................16

   C.  Plaintiff Cannot Establish Discrimination on the Basis of Her Employment Termination Under Title VII or the NYSHRL ...............................................19

   D.  Plaintiff Cannot Establish Discrimination Under the NYCHRL ..................21

II.    PLAINTIFF CANNOT ESTABLISH LIABILITY UNDER THE EPA AND NYEPA ...............................................................................................21

III.   PLAINTIFF'S RETALIATION CLAIMS FAIL AS A MATTER OF LAW ............................................................................................25

IV.   PLAINTIFF'S BREACH OF CONTRACT CLAIM FAILS AS A MATTER OF LAW .......................................................................................32

CONCLUSION ...........................................................................33

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bentley-Ammonds v. Northwell Health, Inc.*,
2022 WL 893716 (2d Cir. March 28, 2022)......................................................16

*Beyer v. Cnty. of Nassau*,
524 F.3d 160 (2d Cir. 2008) .............................................................................24

*Byrd v. Ronayne*,
61 F.3d 1026 (1st Cir. 1995)..............................................................................18

*Byrne v. Telesector Res. Group, Inc.*,
339 F. App'x 13 (2d Cir. 2009) .........................................................................18

*Chiaramonte v. Animal Med. Ctr.*,
677 F. App'x 689 (2d Cir. 2017) .......................................................................18

*Clark County Sch. Dist. v. Breeden*,
532 U.S. 268 (2001)...........................................................................................22

*Cobb v. Pozzi*,
363 F.3d 89 (2d Cir. 2004) ..........................................................................22, 25

*Conforti v. Sunbelt Rentals, Inc.*,
201 F. Supp. 3d 278 (E.D.N.Y. 2016) ...............................................................24

*Cordell v. Verizon Commc'ns, Inc.*,
331 F. App'x 56 (2d Cir. 2009) .........................................................................15

*E.E.O.C. v. Bloomberg L.P.*,
967 F.Supp.2d 816 (S.D.N.Y. 2013) ..................................................................24

*E.E.O.C. v. Port Auth. of N.Y. & N.J.*,
768 F.3d 247 (2014)...........................................................................................17

*Ebel v. G/O Media Inc.*,
No. 20 Civ. 7483 (PAE), 2022 WL 2359245 (S.D.N.Y. 2022) ..................19, 24

*Edwards v. Schrader-Bridgeport Int'l, Inc.*,
205 F. Supp. 2d 3 (N.D.N.Y. 2002)...................................................................25

*Edwards v. Thomson Reuters (Tax & Acct.) Inc.*,
2022 WL 767218 (S.D.N.Y. Mar. 14, 2022)......................................................21

*Eisenhauer v. Culinary Institute of America*,
No. 19 Civ. 10933 (PED), 2021 WL 5112625 (S.D.N.Y. 2021) .......................19

*Fahrenkrug v. Verizon Servs. Corp.*,
652 F. App'x 54 (2d Cir. 2016) .........................................................................12

*Filippi v. Elmont Union Free Sch. Dist. Bd. of Educ.*,
  2012 WL 4483046 (E.D.N.Y. Sept. 27, 2012) ............................................ 14, 20

*Garcia v. Barclays Capital, Inc.*,
  281 F.Supp.3d 365 (S.D.N.Y. 2017) ........................................................... 14, 17

*Graham v. Long Island R.R.*,
  230 F.3d 34 (2d Cir. 2000) ................................................................................. 12

*Grauer v. UBS Fin. Services, Inc.*,
  2008 WL 11398936 (S.D.N.Y. Dec. 17, 2008) .................................................. 25

*Grisetti v. Super Value, Inc.*,
  189 Misc.2d 800 (2d Dep't 2001) ...................................................................... 25

*Hollander v. Am. Cyanamid Co.*,
  895 F.2d 80 (2d Cir.1990) .................................................................................. 22

*Jeffreys v. City of New York*,
  426 F.3d 549 (2d Cir. 2005) ............................................................................... 16

*Jones v. New York City Bd. of Educ.*,
  2012 WL 1116906 (S.D.N.Y. 2012) ................................................................... 23

*Kaytor v. Elec. Boat Corp.*,
  609 F.3d 537 (2d Cir. 2010) ............................................................................... 19

*Kent v. Papert Cos., Inc.*,
  309 A.D.2d 234 (1st Dep't 2003) ....................................................................... 17

*Lehman v. Bergmann Assocs., Inc.*,
  11 F.Supp.3d 408 (W.D.N.Y. 2014) ................................................................... 17

*Lore v. City of Syracuse*,
  670 F.3d 127 (2d Cir.2012) ................................................................................ 19

*McDonnell Douglas Corp. v. Green*,
  411 U.S. 792 (1973) ............................................................................................ 12

*Meiri v. Dacon*,
  759 F.2d 989 (2d Cir. 1985) ............................................................................... 16

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*,
  715 F.3d 102 (2d Cir. 2013) ............................................................................... 12

*Ramos v. City of New York*,
  1997 WL 410493 (S.D.N.Y. 1997) ..................................................................... 21

*Renz v. Grey Advertising Inc.*,
  135 F.3d 217 (2d Cir. 1997) ............................................................................... 15

*Rojas v. Roman Catholic Diocese of Rochester*,
  660 F.3d 98 (2d Cir. 2011) ................................................................................. 20

iii

*Ruhling v. Tribune Co.*,
  2007 WL 28283 (E.D.N.Y. Jan. 3, 2007) ...........................................................22

*Sanders v. N.Y.C. Human Res. Admin.*,
  361 F.3d 749 (2d Cir. 2004) ...........................................................................12

*Schnabel v. Abramson*,
  232 F.3d 83 (2d Cir. 2000) .............................................................................15

*Sobol v. Kidder, Peabody & Co.*,
  49 F. Supp. 2d 208 (S.D.N.Y. 1999) ..............................................................18

*Sprague v. Thorn Americas, Inc.*,
  129 F.3d 1355 (10th Cir. 1997) .......................................................................18

*Velasquez v. Goldwater Mem'l Hosp.*,
  88 F.Supp.2d 257 (S.D.N.Y.2000) ...................................................................21

*Villetti v. Guidepoint Glob. LLC*,
  2022 WL 2525662 (2d Cir. July 7, 2022)....................................................13, 16

*Ya-Chen Chen v. City Univ. of New York*,
  805 F.3d 59 (2d Cir. 2015) ...................................................................12, 16, 25

**Statutes**

29 U.S.C. § 206(d)(1)...................................................................................17, 19

42 U.S.C. § 2000e *et seq.*................................................................................1

Civil Rights Act of 1964 Title VII................................................................1, 19

Equal Pay Act of 1963, 29 U.S.C. § 206, *et seq.*.........................................1, 17, 19

Fair Labor Standards Act of 1938....................................................................1

N.Y. Labor Law § 194(1)..................................................................................19

New York City Human Rights Law ....................................................................1

New York Equal Pay Law, N.Y.........................................................................1

New York Human Rights Law ...........................................................................1

NYSHRL.................................................................................12, 13, 15, 19

State Executive Law, § 296 *et seq.*.................................................................1

Title VII..............................................................................12, 13, 15, 21

**Other Authorities**

Federal Rules of Civil Procedure, Rule 56 ........................................................1, 4

## PRELIMINARY STATEMENT

Defendants Levi & Korsinsky, LLP ("L&K"), Eduard Korsinsky ("Korsinsky") and Joseph Levi ("Levi") (collectively "Defendants") respectfully submit this Memorandum of Law in support of their Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, seeking dismissal of the Amended Complaint ("Am. Compl.")filed by Plaintiff Amy Miller ("Plaintiff"). Plaintiff alleges that she was: (i) discriminated against because she was a woman and a mother (Counts 1, 6, 7, and 8); (ii) paid unequally because she was a woman (Counts 3 and 5); (iii) retaliated against because she purportedly complained about the so-called discrimination on account of her gender, familial and caregiver status, and unequal pay, and because Defendants filed counterclaims (Counts 2, 4, and 9); and (iv) subject to an employment contract that was breached (Count 10). Plaintiff cannot establish a *prima facie* case for any of her causes of action based on the undisputed facts[1].

The undisputed record belies Plaintiff's claims and shows the opportunities Plaintiff benefited from during her employment with Defendants. By her own written and spoken words, Plaintiff is on record discussing her "love" of L&K

---

[1] Plaintiff's claims in this action arise under four theories of liability under various statutes: Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"), the Fair Labor Standards Act of 1938, as amended by the Equal Pay Act of 1963, 29 U.S.C. § 206, *et seq.* ("EPA"); the New York Equal Pay Law, N.Y. Labor Law §194 ("NYEPA"); the New York Human Rights Law as contained in New York State Executive Law, § 296 *et seq.* ("NYSHRL"); and the New York City Human Rights Law as contained in the Administrative Code of the City of New York, § 8-107 *et seq.* ("NYCHRL").

from the start of her employment in 2016 and her "love" of the work she was doing at L&K through the March 28, 2019 discussion terminating her employment, which she secretly recorded. Plaintiff was hired and then promoted by Levi and Korsinsky, knowing her to be a woman and mother of two young children. In addition to giving Plaintiff the single highest base salary of any L&K employee, Defendants consistently aided Plaintiff by giving her associate support to assist on her cases and full discretion to work from home to achieve work-life balance, prompting Plaintiff's open expression about the unprecedented and unparalleled opportunity at L&K that she never experienced before her L&K employment. L&K is the only law firm where Plaintiff gained partner status, even though she had not produced any meaningful fees or any profit for L&K.

Plaintiff makes no claim that her employment in August 2016 was discriminatory or that the basis of her compensation at the time of hire was discriminatory, and all of her writings and testimony attest to her delight with terms and conditions of her L&K employment leading to her elevation to Partner. However, once she attained Partner status some 15 months after hire, Plaintiff claims she should have been entitled to receive bonuses based on a percentage of fees generated ("fee-based bonuses"). That is wrong for two reasons that are undisputed. First, Plaintiff commenced employment with L&K on the same basis as other male and female attorneys who started their tenures at L&K as non-

partners without demonstrated histories of fee generation. All such attorneys were required to generate $2.5 million in fees in one year before being entitled to fee-based bonuses. Second, it is undisputed that Plaintiff never came close to meeting L&K's $2.5 million threshold requirement and that the threshold requirement was applied equally to both men and women who were promoted to Partner while at L&K.

Although Plaintiff was treated equally to her actual peers, she complains of gender discrimination by segueing to two male Partners who were successful partners in prior firms before being employed by L&K with an understanding that they would receive fee-based bonuses without a threshold requirement. However, the undisputed facts eviscerate Plaintiff's claims of gender discrimination and pay inequality because it is undisputed that in addition to the two male Partners Plaintiff claims were favored, two females who joined L&K laterally as Partners also were hired with an arrangement for fee-based bonuses without a threshold requirement. What Plaintiff brands as discriminatory is in fact gender neutral.

After Plaintiff attained Partner status, undisputed facts show that Plaintiff's economic performance and productivity do not remotely measure up to that of the two male Partners she selects as comparators. With the entire derivative practice generating fees of less than $1.9 million for the group over the two-year period from January 2017 through December 2018, Plaintiff's

3

productivity certainly does not compare favorably to the productivity of the so-called male comparators, each of whom generated more than $12 million in revenue in the same two-year period.

Plaintiff's allegations of retaliation fail because undisputed evidence establishes that she never complained about discrimination, but rather, simply spoke generally about wanting more compensation, which is not protected activity. Moreover, undisputed facts contradict Plaintiff's claim that her employment was terminated because of her request ten months earlier for a fee-based bonus. Plaintiff was actively seeking a new job for seven months and Defendants knew Plaintiff had commenced a job search at least four months prior to her termination. Despite the risks of keeping on staff an insubordinate employee who was considered an active threat with no current or future loyalties to L&K, Defendants did not terminate her at that time but rather opted for letting Plaintiff find a new opportunity and leave on her own timing. However, Plaintiff's unrelenting belligerent, defiant and disruptive performance and behavior, exacerbated by her outright lying, reached the point that Levi and Korsinsky decided they could not wait for Plaintiff's job search to conclude, and they terminated her employment on March 28, 2019.

Plaintiff also cannot establish retaliation under a theory that a causal connection exists between her purported protected activity and Defendants' legitimately raised counterclaims. Plaintiff is unable to establish that the

counterclaims were totally baseless. Defendants' counterclaims were validated by ample evidence showing Plaintiff's faithless and disloyal service and her tortious interference with Defendants' prospective economic advantage. Finally, Plaintiff fails to present any contract to the Court thus requiring that her frivolously claimed breach of contract be dismissed.

## STATEMENT OF UNDISPUTED FACTS[2]

### A.    L&K's Practice and Compensation Structure for Partners

L&K is a law firm founded by Levi and Korsinsky and is engaged primarily in plaintiff's side securities and derivative litigation. 56.1 ¶¶1, 3.[3] L&K litigates on a contingency basis so no fees are recovered unless there is a successful resolution. 56.1¶2. L&K's compensation structure takes account of the performance and productivity of attorneys. Prior to and during the time period of Plaintiff's employment at L&K, L&K had offered select attorneys, who were successful partners in prior law firms, fee-based commissions when they joined L&K. 56.1 ¶73. After vetting Donald Enright ("Enright"), Nicholas Porritt ("Porritt"), Lori Feldman ("Feldman"), and Rosemary Rivas ("Rivas"), who had been established partners with demonstrated abilities to generate fees as rainmakers at their previous firms, L&K hired them as Partners, with arrangements for sharing their fee generation, without a stated threshold. 56.1 ¶¶74, 75, 76, 77. Other attorneys, male and female

---

[2] Unless otherwise indicated, all references are to the Rule 56.1 Statement in Support of Defendants' Motion for Summary Judgment ("56.1" ¶__), which provides a lengthier, more detailed factual background.

5

alike, who were not successful partners in prior firms and who were first promoted to partner at L&K, were subject to L&K's uniform terms which required them to generate $2.5 million in fees in one year before being entitled to fee-based bonuses. 56.1 ¶¶78, 79. During Plaintiff's tenure at L&K, Partners subject to L&K's $2.5 million threshold for fee-based bonuses were two males, Adam Apton ("Apton") and Shane Rowley ("Rowley"), and Plaintiff and Shannon Hopkins ("Hopkins"), both female. 56.1 ¶¶78, 79, 80.

### B.     Plaintiff's Employment by L&K

Plaintiff applied for employment with L&K twice. First, in 2011, Plaintiff applied for employment and received an offer. 56.1 ¶¶4, 5, 6, 7. However, soon afterwards, Plaintiff learned that she was pregnant with her second child. 56.1 ¶9. Nevertheless, believing that Plaintiff possessed the skills, knowledge, and qualities to be a strong asset at L&K, Defendants continued to recruit Plaintiff. 56.1 ¶10. But Plaintiff rejected L&K's employment offer, explaining that she thought it best to remain at her current law firm 56.1 ¶11. Knowing that Plaintiff was soon to have two young children, Korsinsky nevertheless encouraged her to remain in contact, stating that there was a place for her at L&K. 56.1 ¶¶13, 14.

Five years later, Plaintiff contacted Korsinsky to revisit joining L&K. 56.1 ¶¶15, 16. She had not advanced beyond Senior Counsel at her firm and was unhappy that her skills were not being fully utilized. Amended Comp. ¶¶26-33; 56.1¶¶17, 18, 95. ███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████

        ████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████

### C.      Plaintiff Receives the Title of Partner

In or around the late fall of 2017, Levi and Korsinsky decided to promote longtime L&K Associate Apton to the title of Partner. 56.1 ¶67. Levi and Korsinsky wanted to reward Apton for his contributions to L&K and help increase his standing professionally among his peers and when appearing in court. 56.1 ¶68. In December 2017, Levi and Korsinsky decided to encourage and support Plaintiff professionally by also giving her the title and standing of Partner, something she never attained at any prior or subsequent firm. 56.1 ¶70. Although Plaintiff had not generated any meaningful fees or profits for L&K as of December 2017, Levi and Korsinsky

decided to change Plaintiff's title to Partner in order to increase her professional standing, and growth potential, with other members of the bar with whom she regularly interacted. 56.1 ¶71. As with Apton, L&K did not alter the terms of Plaintiff's compensation when her title changed to Partner, and Plaintiff's compensation structure remained an annual salary of $285,000 with the opportunity to receive an annual discretionary bonus. 56.1 ¶72.

### D.    Plaintiff's Desire to Earn More

Because Plaintiff did not achieve success as a partner in a prior firm at the time of hire, she was subject to L&K's uniformly applied, gender neutral compensation arrangement, applicable also to Apton, Rowley and Hopkins. 56.1 ¶¶83, 85, 86. For such attorneys, fee-based bonuses were available only after satisfying threshold fee generation of $2.5 million. 56.1 ¶¶78, 79, 88, 86. Plaintiff understood L&K's $2.5 million threshold, just as she was ambitious to earn "lots of money." 56.1 ¶¶89, 98. ██████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████ For his part, Korsinsky attempted to coach Plaintiff on a path to filling a "pipeline with more quality cases," building a profitable docket by focusing her attention on high level matters rather than "small little cases" and properly staffing cases more economically by utilizing lower paid junior attorneys so Plaintiff could perform "higher level" work for her own benefit and the benefit of L&K, and working on her reputation by socializing

more with judges and writing articles, 56.1 ¶¶100, 101, 106.



On January 8, 2019, Korsinsky discussed with Plaintiff losses incurred by L&K because of cases on which she and other L&K attorneys had invested time that were worthless or had negative value to L&K and he mentioned a discussion she had with Levi in 2018 about profitability of her cases. 56.1 ¶ 107. Korsinsky told Plaintiff that prospectively she needed to do things differently to have a more valuable docket. 56.1 ¶108.

### E.    Plaintiff's Disappointing Experience in Generating Fees

Despite Plaintiff knowing that she needed to improve her ability to generate fees she never achieved that objective. 56.1 ¶¶95, 97, 99. In 2017, the entire derivative practice generated only $319,724 in fees, and in 2018, it generated $1,497.091 in fees. 56.1 ¶141. Moreover, $1.1 million of the 2018 fees was attributable to a single case involving Fox News (the "Fox case"), in which Plaintiff caused L&K to lose $400,000 in expected fees because she disregarded Korsinsky's instruction to settle for no less than the $1.5 million that had been escrowed by the Court for L&K. 56.1 ¶¶142, 143. Just as Plaintiff's participation in fee generation failed to satisfy L&K's $2.5 million threshold or accomplish her own aspirations, it

did not measure up to the productivity of L&K's successful Partners to whom Plaintiff endeavors to compare herself now. Plaintiff did not generate fees for L&K comparable to Enright and Porritt. 56.1 ¶144. While Plaintiff participated in fee generation of less than $1.9 million combined for 2017 and 2018, Enright and Porritt each generated fees in excess of $12 million. 56.1 ¶¶145, 146.

### F.  Plaintiff's Defiant and Belligerent Behavior in April through August 2018

Commencing April 2018, Plaintiff embarked on a course of behavior marked by instances of defiance, belligerence, insubordination and, eventually, disloyalty. Plaintiff's first costly act of defiance was her settlement of the Fox case on terms contrary to Korsinsky's instruction to settle the case for no less than $1.5 million, causing L&K to lose $400,000 that had been escrowed by the court. 56.1 ¶¶147, 148, 149, 150, 151, 152. ████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████

In August 2018, Plaintiff escalated her confrontations with Korsinsky, disagreeing with him and criticizing his approach and strategy in managing a matter involving Patriot National. 56.1 ¶159. ████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

Korsinsky considered Plaintiff's behavior and disagreements with him to be

insubordinate and undermining. 56.1 ¶¶161, 170.

**G.    Plaintiff's Actions to Leave L&K and the Termination of Her Employment**

████████████████████████████████████████████████

███████████████████████████████████  ████████████████

████████████████████████████████████████████████████

██████████████████████████████  ████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

Indeed, when Levi informed Plaintiff in December 2018 that he was aware she was

looking for another job, she denied it. 56.1 ¶179. ████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████  ██████████████████████████

████████████████████████████████████████████████████

█████████████ Although Levi and Korsinsky were aware since the fall of 2018 of Plaintiff's intended departure from L&K, they allowed her time to find new employment, even though this exposed L&K to the risk of continuing the employment of an insubordinate employee who was considered an active threat with no current or future loyalties to L&K. 56.1 ¶178. Korsinsky even accommodated Plaintiff by granting her request to become involved again on a case involving Patriot National 56.1 ¶177. Both Levi and Korsinsky also continued to offer tangible financial inducements for Plaintiff to remain productive and loyal to L&K. During Plaintiff's review in December 2018, Levi told her that he would consider paying her on a "case-by-case" basis going forward. 56.1 ¶104. On March 4, 2019, Korsinsky proposed an agreement for Plaintiff to receive 10% of fees L&K generated from claims filing for Amalgamated Bank. 56.1 ¶¶109, 110.

███████████████████████████████████████████

███████████████████████████

Even while Plaintiff worked to deceive Levi and Korsinsky and undermine their client relations and major investment in the McKesson case, Plaintiff's secret audio recordings reveal how Levi and Korsinsky endured her presence and tried to counsel Plaintiff on how to make her docket more profitable, an outcome that would be mutually beneficial by giving her the potential for more compensation while also bringing more profit to L&K. 56.1 ¶¶109, 110. On March 4, 2019, when Korsinsky proposed an agreement for Plaintiff to receive 10% of fees L&K generated from claims filing for Amalgamated Bank, Plaintiff did not disclose the commitment she secured a few weeks earlier to transfer the valuable McKesson case (in which she had billed approximately $500,000 of her own time) when she left L&K. 56.1 ¶¶109, 110, 214. Korsinsky's belief that Plaintiff intended leaving L&K, with an expectation of taking Amalgamated Bank and the McKesson case to her new firm, was reinforced when Plaintiff did not respond to Korsinsky's offer. 56.1 ¶¶111, 112, 127. █████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

█████████████████████████████████████ Korsinsky told Plaintiff he thought she was marginalizing his participation, not acting like a team player,

detrimentally affecting the profitability of the case to L&K and creating a power struggle with him. 56.1 ¶200.

Upon learning from L&K's Office Manager that Plaintiff had used 56 hours of her available annual vacation of 80 hours and 32 of 40 hours of available annual sick/personal time as of March 15, 2019, Levi wrote to Korsinsky, noting the absences as "another data point" reinforcing their knowledge that Plaintiff was planning to leave L&K. 56.1 ¶186, 187. ████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████  ████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████ Defendants' annoyance with Plaintiff's unrelenting, belligerent, defiant and disruptive performance and behavior, exacerbated by her outright lying, compounded by the risk that Plaintiff would leave L&K with at least one significant L&K client and matter in which L&K had a large investment and with L&K associates, had reached the breaking point. 56.1 ¶193. Levi and Korsinsky

rationally and responsibly terminated Plaintiff's employment on March 28, 2019 for legitimate and lawful reasons. 56.1 ¶194.

## ARGUMENT

## I.   PLAINTIFF CANNOT ESTABLISH DISCRIMINATION

### A.   The Applicable Standard for Plaintiff's Discrimination Claims

Discrimination claims under Title VII and the NYSHRL are analyzed under the same burden-shifting framework described in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973). *Fahrenkrug v. Verizon Servs. Corp.*, 652 F. App'x 54, 56 (2d Cir. 2016). To establish a *prima facie* case, a plaintiff must demonstrate: (1) membership in a protected class; (2) satisfactory job performance; (3) an adverse employment action; and (4) circumstances surrounding the employment action that give rise to an inference of discrimination. *Id.* (citing *Pucino v. Verizon Wireless Commc'ns, Inc.*, 618 F.3d 112, 117 n.2 (2d Cir. 2010). Failure to establish any one of the four necessary elements of a *prima facie* case mandates dismissal of the plaintiff's complaint. *Fehrenkrug,* 652 F. App'x at 57. An adverse employment action is a "materially adverse change in the terms and conditions of employment." *Sanders v. N.Y.C. Human Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004) (citation omitted). A plaintiff may raise an inference of discrimination by showing that the employer "treated him less favorably than a similarly situated employee outside his protected group." *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000). Under such a theory, however, a plaintiff must show she was "similarly situated in all material respects" to the individuals with whom she seeks

to compare herself. "A court can properly grant summary judgment where it is clear that no reasonable jury could find the similarly situated prong met." *Fahrenkrug*, 652 F. App'x at 56–57 (citations omitted).

Although the NYCHRL defines discrimination more broadly and such claims must be analyzed "separately and independently," *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013), summary judgment is warranted "if the record establishes as a matter of law that discrimination ... played no role in the defendant's actions." *Ya-Chen Chen v. City Univ. of New York*, 805 F.3d 59, 76 (2d Cir. 2015) (internal alternations adopted and quotation marks omitted). *Villetti v. Guidepoint Glob. LLC*, 2022 WL 2525662, at *3 (2d Cir. July 7, 2022).

### B. Plaintiff Cannot Establish Discrimination under Title VII or the NYSHRL on the Basis of Her Employment Terms

With the exception of her employment termination, which Defendants address separately, Plaintiff's claims of discrimination fail because she cannot establish any actionable adverse employment actions. Although Plaintiff had sound experience, she had not attained partner status at any previous law firm after completing law school in 2001. 56.1 ¶20. At the time of her hire by L&K in 2016, Plaintiff negotiated a base salary that was the highest of any L&K attorney, save for Levi and Korsinsky themselves, the founders and managing partners at the firm which operated entirely on the risk of success in contingency cases. 56.1 ¶¶2, 23.

16

Plaintiff asserts that despite being granted a generous base salary and then Partner title, L&K discriminated against her by "refusing to provide her with a written contract, refusing to pay her commissions on legal fees, paying her the same or lower bonuses than male associates under her supervision, and being stripped of handling complex cases. Am. Compl. ¶131. On this record, none of the allegations rise to the level of materially adverse employment actions. Any dissatisfaction by Plaintiff was attributable to her frustrations that she: (i) had not succeeded in the law firms that employed her before she secured employment with L&K (56.1 ¶20); (ii) was not generating fees comparable to successful female and male L&K attorneys (56.1 ¶¶74, 75, 76, 77, 78); and (iii) was not making as much money as she desired in a preexisting stressful domestic situation where she was criticized but had "the steady salary" in her marriage, which she hoped to resolve "by making lots of money" (56.1 ¶¶98, 99, 100).

To the extent that Plaintiff argues that male Partners were favored by receiving employment agreements that she was denied because of her gender or her familial or caregiver status, that is nonsense having no evidentiary support. First, L&K provided select employees, female and male alike, offer letters with fee-based agreements. 56.1 ¶74, 75, 76. An inference of gender discrimination is undermined where both women and men receive preferential treatment. *Filippi v. Elmont Union Free Sch. Dist. Bd. of Educ.*, 2012 WL 4483046, at *14 (E.D.N.Y. Sept. 27, 2012). On a non-discriminatory basis, L&K attracted accomplished attorneys who had been

successful partners in their prior law firms with offers of fee-based bonuses. 56.1 ¶¶74, 75, 76.

Plaintiff claims pay discrimination by attempting to compare herself to Enright and Porritt, two of L&K's biggest rainmakers who were successful partners in prior firms with records of proven ability to generate fees. 56.1 ¶¶74, 145, 146. It is factually and legally unsound for Plaintiff to claim entitlement to the sort of fee-based bonus arrangement that L&K established not only with Enright and Porritt, but also with two female attorneys (Feldman and Rivas) who also were successful partners prior to joining L&K. 56.1 ¶¶75, 77. Next, Plaintiff compounds her initial factual and legal error by imagining her productivity at L&K as comparable to that of Enright and Porritt, whose substantial contributions to L&K's revenue dwarfs any contribution made by Plaintiff. In 2017 and 2018, cases in which Plaintiff merely participated generated fees to L&K of $1,816,815 (56.1 ¶¶130, 131, 147), while Enright and Porritt each generated more than $12 million in fees (56.1 ¶¶134, 135, 137, 138). With case activity generating less than 17% of the fees generated by Enright and Porritt, Plaintiff has no valid basis for comparing herself to either of them for pay equity purposes. *Garcia v. Barclays Capital, Inc*., 281 F.Supp.3d 365, 382–83 (S.D.N.Y. 2017)(summary judgment for defendants proper where female plaintiff's total production was significantly lower than the total production of each male she identified as a comparator). In sum, Plaintiff is not similarly situated to either Enright or Porritt in any respect that matters, and there is no basis for

discrimination in Defendants' recognition of the superior qualifications and productivity of Enright and Porritt in making compensation decisions affecting Plaintiff.

Additionally, Plaintiff cannot demonstrate that any bonuses awarded to her were discriminatory relative to the bonuses received by male Associate attorney William Fields ("Fields"). Am. Compl. ¶¶48, 91. While Plaintiff compares her 2017 and 2018 bonuses unfavorably to bonuses received by Fields (Am. Compl. ¶91), she cannot show that an Associate earning combined salary and bonus of $170,000 in 2017 and $180,000 in 2018 was treated more favorably than she. 56.1 ¶¶142-145. There is no basis for a contention that Fields, whose total income was 54% of Plaintiff's in 2017 and 60% Plaintiff's in 2018, was treated more favorably than she. Levi considered Fields's salary a bit low and believed the bonus given to Fields served as an incentive for him to stay with L&K and recognition of his efforts. 56.1 ¶147.

### C.   Plaintiff Cannot Establish Discrimination under Title VII or the NYSHRL on the Basis of Her Employment Termination

Plaintiff cannot establish any evidence to show that the same men who offered her employment in 2011 knowing she was pregnant (56.1 ¶¶4, 5, 9, 10, 11), then hired her five years after she had declined their 2011 offer (56.1 ¶¶15, 21, 22), and promoted her to Partner a year after hiring her (56.1 ¶¶71, 72), somehow were motivated to fire her *because* she was a woman and mother with the same family and caregiving status she had at the time of hire and throughout her employment. As

the Second Circuit has stated, "where the person who made the decision to fire was the same person who made the decision to hire, it is difficult to impute to her an invidious motivation that would be inconsistent with the decision to hire." *Schnabel v. Abramson,* 232 F.3d 83, 91 (2d Cir. 2000). The same actor consideration "remains a highly relevant factor in adjudicating a motion for summary judgment." *Cordell v. Verizon Commc'ns, Inc*., 331 F. App'x 56, 58 (2d Cir. 2009)(internal citations omitted); *Renz v. Grey Advertising Inc.*, 135 F.3d 217, 220 (2d Cir. 1997). The undisputed record presents no evidence that links the decision to terminate Plaintiff's employment to her gender or her familial or caregiver status.

Although Defendants do not concede that Plaintiff's characterization of any conversations with Defendants is accurate, even if deemed true for purposes of this motion, the few trivial, stray remarks Plaintiff attributes to Korsinsky (Am. Compl. ¶¶62, 63, 64, 70, 71, 72) are not sufficient to establish that Levi and Korsinsky were motivated to terminate Plaintiff's employment in March 2019 based on her gender or familial or caregiver status. *See*, *Bentley-Ammonds v. Northwell Health, Inc.*, 2022 WL 893716 at *2 (2d Cir. March 28, 2022)(holding that stray remarks, even from a decision maker, were insufficient to establish that a plaintiff's termination was motivated by discrimination). Even giving Plaintiff the benefit on summary judgment of disputed facts regarding comments Korsinsky allegedly made about negotiating with Plaintiff's husband and women's caregiving responsibilities, such comments are too attenuated and stray to support a finding that they motivated

Plaintiff's termination. *Id.*, 2022 WL 893716 at *2 (remarks made three or more months before termination and unrelated to performance, retention or termination could not support a finding of unlawful intent). Plaintiff cannot establish a *prima facie* case "purely conclusory allegations of discrimination, absent any concrete particulars." *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985); *Jeffreys v. City of New York*, 426 F.3d 549, 555 (2d Cir. 2005).

### D.   Plaintiff Cannot Establish Discrimination Under the NYCHRL

Because there is no record evidence that Plaintiff was treated "less well" than any male counterparts, and discrimination played no role in Defendants' actions, even the more relaxed standard of the NYCHRL does not save Plaintiff's discrimination claims from dismissal. *Villetti*, 2022 WL 2525662, at *3; *Ya-Chen Chen*, 805 F.3d at 76. On the telltale record she created, Plaintiff cannot establish that she was treated less well than others because of her sex or familial status, or on the basis of her caregiver status under the NYCHRL, or that her termination was pretextual.

## II.   PLAINTIFF CANNOT ESTABLISH LIABILITY UNDER THE EPA AND NYEPA

The EPA and NYEPA require that Plaintiff demonstrate that: (1) "the employer pays different wages to employees of the opposite sex;" (2) "the employees perform equal work on jobs requiring equal skill, effort, and responsibility;" and (3) "the jobs are performed under similar working conditions." *E.E.O.C. v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 254-55 (2014) (citation omitted); *Kent v. Papert Cos., Inc.,* 309 A.D.2d 234, 246 (1st Dep't 2003); *Lehman*

*v. Bergmann Assocs., Inc*., 11 F.Supp.3d 408, 420 n.6 (W.D.N.Y. 2014) (citing *Kent*, 309 A.D.2d at 246).

Plaintiff's equal work burden is demanding, requiring her to present evidence that her job and the alleged higher paid job held by a member of the opposite sex are "substantially equal" such that they "entail common duties or content, and do not simply overlap in titles or classifications." *Port Auth. of N.Y. & N.J.*, 768 F.3d at 255 (citations omitted). Should a plaintiff meet her *prima facie* burden, the burden shifts to the employer to demonstrate that wage disparity is justified by one of the four affirmative defenses: "(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex." 29 U.S.C. § 206(d)(1); *Garcia*, 281 F. Supp. 3d at 386.

The circumstances of Plaintiff's compensation relative to both male and female attorney-comparators show that Plaintiff cannot carry her burden. First, Plaintiff cannot establish a *prima facie* case that Enright and Porritt are appropriate comparators because she cannot demonstrate that she performed equal work requiring equal skill, effort and responsibility. *See*, *Garcia*, 281 F. Supp 3d at 385. Plaintiff did not know any specifics concerning Enright and Porritt essential to carrying her burden of establishing a *prima facie* case; she did not know how much revenue they produced or their profitability to L&K, and she based all her information on conjecture. 56.1 ¶¶113, 115, 120. *See Byrne v. Telesector Res.*

*Group, Inc.*, 339 F. App'x 13, 16-19 (2d Cir. 2009)(holding that because the plaintiff had adduced no evidence demonstrating equal job content with her comparators, she did not satisfy her *prima facie* burden); *Chiaramonte v. Animal Med. Ctr.*, 677 F. App'x 689, 691–92 (2d Cir. 2017)(upholding the grant of summary judgment because "the fact that plaintiff and the alleged comparators are department heads whose positions share some common responsibilities is insufficient to demonstrate substantially equal work.")

The record also is clear that L&K's system of pay is based on the quantity and quality of production and that any pay differential is based on a factor other than sex – an affirmative defense to Plaintiff's claims. The undisputed evidence shows that Enright and Porritt generated fees approximately six times greater than the entire New York derivative practice in each full year Plaintiff was employed. 56.1 ¶¶95, 134, 135, 137, 138. The fee generation for which Enright and Porritt had demonstrated skill, effort and responsibility either eluded Plaintiff or were beyond her capabilities or competence. Further, the pay system in place allowed partners who were successful at prior firms to move laterally to L&K and receive a portion of fees generated from the commencement of their time at L&K. Thus, Plaintiff can point to no facts showing that L&K had an unlawful pay structure, because it is undisputed that Defendants maintained a gender-neutral practice of awarding more compensation to attorneys like Enright and Porritt who laterally moved to L&K and then efficiently generated high revenue than to those like Plaintiff who did not. *Sobol*

*v. Kidder, Peabody & Co.*, 49 F. Supp. 2d 208, 220 (S.D.N.Y. 1999); *Byrd v. Ronayne*, 61 F.3d 1026, 1034 (1st Cir. 1995); *Sprague v. Thorn Americas, Inc.*, 129 F.3d 1355, 1364 (10th Cir. 1997)(lower pay to female permissible where her department produced less than one-tenth of the revenue of the department worked in by male comparators); *Eisenhauer v. Culinary Institute of America*, No. 19 Civ. 10933 (PED), 2021 WL 5112625 at *7 (S.D.N.Y. 2021)(affirmative defense established where pay differential was based on a factor other than sex: prior experience, education and professional credentials at the *time of hire*). Besides, during Plaintiff's review in December 2018, Levi told her that he would consider paying her on a "case-by-case" basis going forward. (56.1 ¶¶104), and on March 4, 2019, Korsinsky offered Plaintiff 10% of fees L&K generated from claims filing for Amalgamated Bank (56.1 ¶¶109, 110).

Not only is Plaintiff unable to establish a *prima facie* case of unequal pay, but her EPA and NYEPA claims fail for the additional reason that Defendants determined Plaintiff's compensation based on legitimate, non-discriminatory business factors other than sex. *See* 29 U.S.C. § 206(d)(1); N.Y. Labor Law § 194(1). Plaintiff simply did not generate fees comparable to her chosen comparators, Enright and Porritt. 56.1 ¶¶148, 150, 151. Because Defendants' determinations regarding Plaintiff's overall compensation and bonuses were based strictly on the numbers – legitimate non-discriminatory factors other than sex – Plaintiff's claims under the EPA and NYEPA should be dismissed.

## III.   PLAINTIFF'S RETALIATION CLAIMS FAIL AS A MATTER OF LAW

Plaintiff's retaliation claims under the EPA, Title VII, the NYSHRL and NYCHRL also fail. To demonstrate a *prima facie* case of retaliation, a plaintiff must establish: "(1) that she participated in an activity protected by the statute, (2) that her participation was known to her employer, (3) that her employer thereafter subjected her to a materially adverse employment action, and (4) that there was a causal connection between the protected activity and the adverse employment action." *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 552 (2d Cir. 2010); *Lore v. City of Syracuse*, 670 F.3d 127, 157 (2d Cir.2012); *Ebel v. G/O Media Inc.*, No. 20 Civ. 7483 (PAE), 2022 WL 2359245 at *23 (S.D.N.Y. 2022).

As a threshold matter, Plaintiff fails to satisfy the first essential prong of a *prima facie* case because she never engaged in protected activity by complaining about discrimination while she was employed at L&K and her discussions about more compensation, and references to a better compensation package than such high producing Partners as Enright and Porritt, simply do not rise to the level of protected activity. "The onus is on the speaker to clarify to the employer that he is complaining of unfair treatment due to his membership in a protected class and that he is not complaining merely of unfair treatment generally." *Filippi*, 2012 WL 4483046, at *16 (citing *Dinice-Allen v. Yale New Haven Hosp.,* 2008 WL 160206, at *4 (D. Conn. Jan 10, 2008)); *Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 108 (2d Cir. 2011). ████████████████████████████

25

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

█████████████████████████████████████ Indeed, in her

surreptitious recording of the March 28, 2019 meeting in which Korsinsky

terminated her employment – that is, up to the final minutes she worked for L&K –

Plaintiff acknowledged that she loved the work she was doing at L&K and she was

trying to "change" her unhappiness with compensation "by bringing in more

money." 56.1 ¶232.

Plaintiff, an experienced attorney, never utilized any of the complaint

procedures detailed in L&K's Handbook concerning discrimination, harassment or

retaliation (56.1 ¶213), nor did she complain in writing or write to L&K, Levi or

Korsinsky or to any agents, employees, or other representatives of any of them about

any complaints or grievances of any sort concerning any alleged discrimination or

unfair treatment of Plaintiff or retaliation against Plaintiff (56.1 ¶¶214, 215, 217).

Indeed, while Plaintiff pleads entitlement to a 15% commission on any fee earned

from L&K's "Derivative Department" cases (56.1 ¶¶121), she was not aware of any

L&K attorney – male or female – receiving a 15% share of fees generated (56.1

¶120). Nor did Plaintiff expect L&K to agree to her request for 15% commission on

any fee earned from L&K's New York derivative practice cases; she considered that formula only a basis for a "negotiation." 56.1 ¶¶123, 124.[4]

To constitute retaliation, a plaintiff's employer "must have understood, or been able to understand, that plaintiff's opposition was directed at conduct prohibited by Title VII." *Velasquez v. Goldwater Mem'l Hosp.,* 88 F.Supp.2d 257, 264 (S.D.N.Y.2000). *See also Ramos v. City of New York,* 1997 WL 410493, at *3 (S.D.N.Y. 1997)(" in order to be protected activity the complainant must put the employer on notice that the complainant believes that discrimination is occurring."); *Edwards v. Thomson Reuters (Tax & Acct.) Inc.*, 2022 WL 767218, at *6 (S.D.N.Y. Mar. 14, 2022)(informal complaint must be sufficiently specific to make it clear that the employee is complaining about statutorily prohibited conduct). ███████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████.[5] Consequently, Plaintiff

---

[4] Contrary to the allegation in Paragraph 66 of the Amended Complaint, Plaintiff is left with a record that neither Levi nor Korsinsky received from Plaintiff any documents concerning "her proposal for her Partner compensation" of "15% commission on any fee earned from the NY Derivative Department cases, and a 10% commission for any fee earned by L&K using any of Plaintiff's clients for cases not in her department." 56.1 ¶¶123, 124.

[5] On the evening of March 28, 2019, after learning that her employment was terminated, Plaintiff violated L&K policy by accessing L&K's confidential electronic files without consent from L&K or affected clients or reviewing ethical or disciplinary rules, and she selected at least 215 pages of documents, including those involving matter status and litigation strategy concerning publicly traded companies. 56.1 ¶¶ 218, 219, 225. ████████████████████████

cannot satisfy her burden of showing retaliation. *Ruhling v. Tribune Co.*, 2007 WL 28283, at *21 (E.D.N.Y. Jan. 3, 2007)(complaint of favoritism was not protected activity where plaintiff had not framed a complaint as involving discriminatory conduct).

Nevertheless, should this Court consider whether any causation exists between employment actions and Plaintiff's purported protected activity, Plaintiff's claims of retaliation fail due to lack of causation. The record is entirely devoid of evidence of retaliatory animus or evidence that purportedly protected activity by Plaintiff was followed by adverse treatment. *Cobb v. Pozzi*, 363 F.3d 89, 108 (2d Cir. 2004)(quoting *Morris v. Lindau*, 196 F.3d 102, 110 (2d Cir.1999)). Plaintiff has no "tangible proof" of retaliation and her conclusory assertions of retaliatory motive are insufficient to establish retaliation. *Cobb*, 363 F.3d at 108 (citing *Morris v. Lindau*, 196 F.3d at 111).

With a record showing that Plaintiff never expressed wanting more pay due to *any* protected characteristic, and lacking evidence that Levi or Korsinsky ever expressed displeasure at her purported complaints of discrimination, Plaintiff is left trying to prove retaliation through temporal proximity. When a plaintiff attempts to

establish a causal connection through temporal proximity alone, the temporal relationship between the protected activity and adverse action must be "very close." *Clark County Sch. Dist. v. Breeden,* 532 U.S. 268, 273 (2001); *Hollander v. Am. Cyanamid Co.,* 895 F.2d 80, 85 (2d Cir.1990)(finding a period of three to four months insufficiently proximate to support claim). District Courts in this Circuit consistently have found that an intervening period of more than two to three months is insufficient to establish a causal connection through temporal proximity alone. 2010)(collecting cases and noting that although the Second Circuit has not drawn a bright line to define the outer limits for causality based on temporal proximity, "many courts in this circuit have held that periods of two months or more defeat an inference of causation"). *See also*, *Jones v. New York City Bd. of Educ.*, 2012 WL 1116906, at *14 (S.D.N.Y. 2012).

Plaintiff asserts that she addressed Korsinsky about her compensation in May 2018 (Am. Compl. ¶¶61, 67) and about a handful of purportedly "offensive" or "sexist" comments in May and July of 2018 (Am. Compl. ¶¶62, 63, 64, 70, 71, 72).[6] Such a break in time, from July 2018 to employment termination on March 28, 2019, is too great to establish any indicia of retaliatory motive on the basis of temporal proximity. Furthermore, as set forth above in I.B. and I.C, Defendants had legitimate non-discriminatory reasons for terminating Plaintiff's employment due to her performance and behavior during a period when she was giving priority to obtaining

---

[6] The non-discriminatory status of the trivial and stray remarks purportedly attributed to Korsinsky are addressed by Defendants at I.C., above.

29

new employment with a different law firm and to poaching clients so she could transfer portable business from L&K to that prospective employer.

Plaintiff also cannot support any claim of retaliation on the basis of case assignments (Am. Compl. ¶¶92-95). It is undisputed, on the basis of Plaintiff's own secret recordings, that in early 2019, months *after* July 2018 when Plaintiff supposedly engaged in protected activity, Korsinsky was still encouraging and coaching Plaintiff on how to build a profitable docket. 56.1 ¶106, 109, 110. He continued to counsel her to focus her attention on high level matters rather than "small little cases" and on how to properly staff cases more economically by utilizing lower paid junior attorneys so Plaintiff could perform "higher level" work that is more profitable to Plaintiff and L&K to maximize potential fees for her own benefit and the benefit of L&K. 56.1 ¶106 Both Levi and Korsinsky continued to offer tangible financial inducements to Plaintiff to remain productive and loyal to L&K. 56.1 ¶¶104, 109, 110. Despite Plaintiff's distorted contention, Plaintiff cannot show retaliation where her own surreptitious audio recording shows that any reassignment of cases occurred in the context of relieving Plaintiff from low value cases and freeing her to work on high value cases likely to be profitable to L&K and Plaintiff. *See Ebel*, 2022 WL 2359245, at *18 (no adverse action because no evidence of any concrete situation limiting or circumscribing authority); *Conforti v. Sunbelt Rentals, Inc.*, 201 F. Supp. 3d 278, 297 (E.D.N.Y. 2016)(no specifics); *Beyer v. Cnty. of*

*Nassau*, 524 F.3d 160, 164 (2d Cir. 2008) (no proffer of objective indicia of material disadvantage; subjective disappointment not enough).

Additionally, Plaintiff's assertion of a retaliatory office relocation in January 2019 (Am. Compl. ¶¶97-99) is a triviality that is not sustainable. It is undisputed that Korsinsky decided to move Plaintiff's office from the room adjacent to his office so he could have a conference room and privacy where his conversations would not be overheard by Plaintiff. 56.1 ¶168. Korsinsky selected an office for Plaintiff that was directly adjacent to the one where she had previously worked and which measured 10'9" x 14'2" instead of 11'6" x 14'2", a negligible difference. 56.1 ¶169. Such a benign and trivial change, instituted for a rational business reason is not retaliatory. *Beyer*, 524 F.3d at 164; *See also*, *E.E.O.C. v. Bloomberg L.P.*, 967 F.Supp.2d 816, 847 (S.D.N.Y. 2013)(holding that the plaintiff's denial of an office or phone following protected activity did not constitute an adverse employment action).

Plaintiff filed an Amended Complaint on May 31, 2022, adding a claim that counterclaims asserted two years earlier in Defendants' June 1, 2020 Answer, Defenses and Counterclaims (Dkt. No. 19) were retaliatory. Am. Compl. ¶¶124-128. Plaintiff cannot show any adverse action to support this retaliation claim because her own testimony and documentary account indicate she has enjoyed material success since the counterclaims were filed. Plaintiff continues to be employed by the same law firm that hired her in July 2019 and her employment status and earnings have not been impaired in any measure by Defendants' counterclaims filed in June 2020.

56.1 ¶¶238, 240. Furthermore, Defendants' counterclaims "are not actionable adverse actions unless they are 'totally baseless.'" *Grauer v. UBS Fin. Services, Inc.*, 2008 WL 11398936, at *8 (S.D.N.Y. Dec. 17, 2008). Far from being "totally baseless," the merit of Defendants' counterclaims is validated by ample evidence supplied by Plaintiff's document production and deposition testimony establishing Plaintiff's faithless and disloyal service (56.1 ¶¶202-206) and her tortious interference with Defendants' prospective economic advantage (56.1 ¶¶207-211). Plaintiff's retaliation contention cannot be sustained because it relies on nothing other than conclusory assertions of retaliatory motive and imagination which do not fulfill Plaintiff's burden, *Cobb*, 363 F.3d at 108, particularly in the context of her documented scheming.

Finally, because the record establishes that retaliation played "no role" in Defendants' actions, summary judgment dismissal of Plaintiff's NYCHRL claim is appropriate, just as dismissal under federal and state law is appropriate. *Ya-Chen Chen*, 805 F.3d at 76.

## IV.   PLAINTIFF'S BREACH OF CONTRACT CLAIM FAILS AS A MATTER OF LAW

Plaintiff's breach of contract claim to recover payment for purportedly accrued but unused vacation days that remained at the time her employment was terminated is equally without merit. L&K's policy governing vacation days makes expressly states that vacation pay in lieu of vacation time off will not be given to employees. 56.1 ¶¶29, 48. No contract ever existed between Plaintiff and Defendants

that governed any of the terms of her employment, including vacation. 56.1 ¶29. *Edwards v. Schrader-Bridgeport Int'l, Inc.*, 205 F. Supp. 2d 3, 15 (N.D.N.Y. 2002); *Grisetti v. Super Value, Inc.*, 189 Misc.2d 800, 801 (2d Dep't 2001). There is no basis for Plaintiff's breach of contract claim and this claim should be dismissed, and summary judgment granted in favor of Defendants.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court issue an order granting Defendants' motion for summary judgment, dismissing the case in its entirety and granting Defendants such other and further relief as the Court deems just and proper.

Dated: New York, New York
     September 23, 2022

EPSTEIN BECKER & GREEN, P.C.

By: */s/ Allen B. Roberts*
    Allen B. Roberts
    Jessica Giambrone Palmese
    875 Third Avenue
    New York, New York 10022
    Telephone: (212) 351-4500
    *Attorneys for Defendants*
    *Levi & Korsinsky, LLP,*
    *Eduard Korsinsky and*
    *Joseph Levi*