
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

AMY MILLER,

                Plaintiff,

                - v -

LEVI & KORSINSKY, LLP,
EDUARD KORSINSKY, and JOSEPH LEVI,

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

20-CV-01390 (LAP)(BCM)

_____

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

_____

EPSTEIN BECKER & GREEN, P.C.
Allen B. Roberts
Jessica Giambrone Palmese
875 Third Avenue
New York, New York 10022
Tel: (212) 351-4500
*Attorneys for Defendants Levi & Korsinsky, LLP, Eduard Korsinsky and Joseph Levi*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................... 1

ARGUMENT .................................................................................................................................. 3

I.     DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT BECAUSE PLAINTIFF HAS NOT ESTABLISHED A *PRIMA FACIE* CASE OF RETALIATION  3

II.    DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT BECAUSE PLAINTIFF HAS NOT ESTABLISHED A *PRIMA FACIE* CASE OF DISCRIMINATION ................................................................................................... 5

    A.   Plaintiff Has Not Established a *Prima Facie* Case of Discriminatory Pay ................. 5

    B.   Plaintiff Has Not Established a *Prima Facie* Case of Discriminatory Denial of a Bonus Agreement .................................................................................................. 7

    C.   Plaintiff Has Not Established a *Prima Facie* Case of Discriminatory Employment Termination ........................................................................................................ 8

III.   PLAINTIFF HAS NOT ESTABLISHED A *PRIMA FACIE* CASE FOR EQUAL PAY 11

IV.   PLAINTIFF HAS NOT ESTABLISHED ENTITLEMENT TO SUMMARY JUDGMENT ON HER RETALIATION CLAIM .......................................................... 12

CONCLUSION ............................................................................................................................. 13

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bentley-Ammonds v. Northwell Health, Inc.*,
   No. 21-835-cv,
   2022 WL 893716 (2d Cir. March 28, 2022) ............................................................................9

*Bucek v. Gallagher Bassett Servs., Inc.*,
   No. 16-CV-1344 (KMK),
   2018 WL 1609334 (S.D.N.Y. Mar. 29, 2018) ................................................................3, 6, 11

*Christiansburg Garment Co. v. EEOC*,
   434 U.S. 412 (1978) ..............................................................................................................14

*Cordell v. Verizon Commc'ns, Inc.*,
   331 F. App'x 56 (2d Cir. 2009) ..............................................................................................9

*E.E.O.C. v. Bloomberg L.P.*,
   967 F.Supp.2d 816 (2013) ......................................................................................................5

*Edwards v. Thomson Reuters (Tax & Acct.) Inc.*,
   No. 19 Civ. 93 (ER),
   2022 WL 767218 (S.D.N.Y. Mar. 14, 2022) ..........................................................................4

*Fahrenkrug v. Verizon Servs. Corp.*,
   652 F. App'x 54 (2d Cir. 2016) ..............................................................................................4

*Filippi v. Elmont Union Free Sch. Dist. Bd. of Educ.*,
   No. 09–cv–4675 (JFB)(ARL),
   2012 WL 4483046 (E.D.N.Y. Sept. 27, 2012) ........................................................................4

*Garcia v. Barclays Capital, Inc.*,
   281 F.Supp.3d 365 (S.D.N.Y. 2017) ......................................................................................7

*Jeffreys v. City of New York*,
   426 F.3d 549 (2d Cir. 2005) ...................................................................................................3

*Moccio v. Cornell Univ.*,
   889 F. Supp. 2d 539, 574 (S.D.N.Y. 2012),
   *aff'd*, 526 F. App'x 124 (2d Cir. 2013) ...................................................................................6

*Murphy v. Bd. of Educ. of Rochester City Sch. Dist.*,
   420 F. Supp. 2d 131 (W.D.N.Y. 2006) .................................................................................14

*Patacca v. CSC Holdings, LLC*,
   No. 16-cv-0679 (SFJ) (ARL),
   2019 WL 1676001 (E.D.N.Y. Apr. 17, 2019) ........................................................................3

*Prate v. Freedman*,
    583 F.2d 42 (2d Cir. 1978)..................................................................................................14

*Renz v. Grey Advertising Inc.*,
    135 F.3d 217 (2d Cir. 1997)..................................................................................................9

*Univ. of Tex. Sw. Med. Ctr. v. Nassar*,
    570 U.S. 338 (2013)..............................................................................................................4

*Ya-Chen Chen v. City Univ. of New York*,
    805 F.3d 59 (2d Cir. 2015)....................................................................................................4

**Other Authorities**

Fed R. Civ. P. Rule 56 ..................................................................................................................2

ii

**PRELIMINARY STATEMENT**

For her opposition, Plaintiff was confronted with the undisputed record that as a female attorney and mother of two young children, she received more professional recognition, opportunity and advancement during her 31 months of employment by Defendant L&K,[1] the firm founded and managed by individual Defendants Levi and Korsinsky, than she had at any law firm before or afterwards. Against the background of all the undisputed reasons that Plaintiff enthused about her happiness and "loving" the first 21 months of her L&K employment (56.1 ¶¶53, 54, 56, 57, 58, 94, 230), Plaintiff was left to devote her Preliminary Statement to the absurd theory that "[e]verything changed on May 16, 2018." Pl. Br. at 1-2. As repositioned by her Preliminary Statement, Plaintiff effectively reduces her ten-count Complaint, arraying six counts of discrimination and unequal pay,[2] to an incoherent argument that she suffered retaliation by asking for fee-based bonuses, despite her controverting admissions that her request was satisfied by: (i) Korsinsky giving constructive guidance to aid improvement in her productivity and to create opportunity for her to earn fee-based bonuses (56.1 ¶¶104, 106); (ii) Levi telling her she would be considered for fee-based bonuses on a case-by-case basis (56.1 ¶103); and (iii) Korsinsky offering her a percentage of fees generated by her most significant client (56.1 ¶¶107, 108).

---

[1] All terms defined in Defendants' opening brief ("D. Br.") are adopted in this brief.
[2] Plaintiff's ten-count Amended Complaint ("Am. Compl.") asserts only three counts of retaliation (Counts 2, 4, and 9), accompanied by four counts of discrimination based on her status as a female and mother (Counts 1, 6, 7, and 8), two counts of unequal pay (Counts 3 and 5), and one breach of contract count (Count 10).

Against the force of the record as set forth in Defendants' opening brief, Plaintiff's opposition decrees May 16, 2018 as Day-1 of her "everything changed" theory of retaliation, a proposition debunked by the undisputed record showing that Plaintiff cannot establish that the desire to retaliate was the but-for cause of any challenged employment action. Plaintiff's opposition disregards her admittedly toxic conflicts and confrontations with Korsinsky and her other derelictions that Defendants endured to the breaking point, as Plaintiff pursued a protracted job search to leave L&K with portable business and became reluctant to generate new cases, leading inevitably to her employment termination. Plaintiff's opposition also fails to save her discrimination claims from summary judgment dismissal because Plaintiff does not fulfill her acknowledged responsibility to supply evidence establishing a discriminatory motive for any allegedly adverse action. Pl. Br. at 7-8.

Unable to take back material facts that are sourced from her own words in audio recordings, writings and deposition testimony and to satisfy Fed R. Civ. P. Rule 56 by addressing Defendants' demonstration of material reasons for dismissal of her claims, Plaintiff's opposition resorts to legally deficient hyperbolic innuendo, fanciful speculation and extraneous musings – all having no connection to either the criteria essential to a *prima facie* case for each count pleaded by Plaintiff or to the undisputed record of legitimate non-discriminatory and non-retaliatory reasons for Defendants' actions.[3] *Patacca v. CSC Holdings, LLC*, No. 16-cv-0679 (SFJ) (ARL),

---

[3] The deficiency of Plaintiff's opposition is epitomized by her tender of a declaration from a two-month administrative employee that contributes nothing at the heart of

2

2019 WL 1676001, at *13 (E.D.N.Y. Apr. 17, 2019); *Bucek v. Gallagher Bassett Servs., Inc.*, No. 16-CV-1344 (KMK), 2018 WL 1609334, at *14, 14 n.25 (S.D.N.Y. Mar. 29, 2018). As the Second Circuit made clear in *Jeffreys v. City of New York*, 426 F.3d 549 (2d Cir. 2005), Plaintiff cannot defeat Defendants' compelling, detailed presentation of undisputed facts simply by relying on her own fanciful version of events, "conjecture or surmise," "conclusory allegations or unsubstantiated speculation," or by casting "some metaphysical doubt as to the material facts." *Id*. at 554 (citations omitted). Separate from Defendants' entitlement to summary judgment, Plaintiff's tactical motion for summary judgment on her retaliation claim fails for lack of legal support.

## ARGUMENT

**I.   DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT BECAUSE PLAINTIFF HAS NOT ESTABLISHED A *PRIMA FACIE* CASE OF RETALIATION**

Plaintiff's retaliation claims are defeated in the first instance because her opposition fails to present any facts that she ever engaged in protected activity by complaining about discrimination (D. Br. at 25-27), the essential first prong of a *prima facie* case. *Bucek*, 2018 WL 1609334, at *16, 16 n.29. Plaintiff's discussion about wanting more compensation and the comparison of her compensation to that of Enright and Porritt simply do not rise to the level of protected activity. *Edwards v. Thomson Reuters (Tax & Acct.) Inc.*, No. 19 Civ. 93 (ER), 2022 WL 767218, at *6 (S.D.N.Y.

---

any material fact (Pl. Br. at 10), instead of competent evidence from others having actual knowledge of facts concerning her several assertions that stand unsupported and as inadmissible hearsay.

3

Mar. 14, 2022). Instead of addressing Defendants' arguments by showing predicate protected activity essential to a *prima facie* case, Plaintiff's opposition obfuscates with the simplistic observation that she is a woman and Enright and Porritt are men who received fee-based bonuses. Pl. Br. at 34-35. However, that bald assertion does not satisfy Plaintiff's obligation to show a complaint of unfair treatment *due to* membership in a protected class. *Filippi v. Elmont Union Free Sch. Dist. Bd. of Educ.*, No. 09–cv–4675 (JFB)(ARL), 2012 WL 4483046, at *16, 18 (E.D.N.Y. Sept. 27, 2012). Besides, Plaintiff has no basis for disputing that two female attorneys also were entitled to such fee-based bonuses. 56.1 ¶¶73, 74, 75, 76.

Thus, Plaintiff's simplistic generalizations do not fulfill either the obligation that she "must prove 'that the desire to retaliate was the but-for cause of the challenged employment action'" for her Title VII claims, *Ya-Chen Chen v. City Univ. of New York*, 805 F.3d 59, 70 (2d Cir. 2015)(*citing Univ. of Tex. Sw. Med. Ctr. v. Nassar,* 570 U.S. 338, 352 (2013)), and NYSHRL claims, *Fahrenkrug v. Verizon Servs. Corp.*, 652 F. App'x 54, 56 (2d Cir. 2016), or the broader standard applicable under NYCHRL, *Ya-Chen Chen*, 805 F.3d at 76-77.

Beyond being devoid of any connection to a predicate complaint of discrimination, Plaintiff's opposition fails to deliver any facts to support her bombastic claim of an "unbroken chain of retaliation" and "drumbeat of retaliatory animus" (Pl. Br. at 35-36) after May 16, 2018. Notwithstanding its inconsequential static of disembodied buzz words, sound bites and spin, Plaintiff's opposition fails to address the explanations in Defendants' opening brief showing that allegedly adverse

4

actions were actually neutral occurrences having nothing to do with a discriminatory animus or retaliatory motive.[4] Plaintiff's opposition also fails to controvert the undisputed evidence of positive treatment Plaintiff received after May 16, 2018. D. Br. at 9, 13, 30. Indeed, in July 2018, Plaintiff wrote about her work being "super fun" and "feel[ing] like a complete lawyer now, which is awesome." 56.1 ¶100. Accordingly, Plaintiff's unsubstantiated opposition is insufficient to defeat summary judgment dismissal because Plaintiff has not established a *prima facie* case of retaliation or controverted material facts showing why dismissal is appropriate. *E.E.O.C. v. Bloomberg L.P.*, 967 F.Supp.2d 816, 831, 831 n.4 (2013).

## II. DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT BECAUSE PLAINTIFF HAS NOT ESTABLISHED A *PRIMA FACIE* CASE OF DISCRIMINATION

### A. Plaintiff Has Not Established a *Prima Facie* Case of Discriminatory Pay

Completely missing the "sine qua non of a gender-based discrimination action claim," Plaintiff does not present any kernel of evidence that Enright and Porritt, as the comparators who are the focus of her discrimination claims (Pl. Br. at 8-12), were favored *because* they are men and she is a woman – as distinct merely from Plaintiff's status as female and the status of Enright and Porritt as male. *Moccio v.*

---

[4] For example, Plaintiff's opposition makes no pretense of addressing: (i) L&K's gender-neutral interest in the office presence and productivity of its attorneys (56.1 ¶262) and unhappiness with Plaintiff's absences (D. Br. at 14); (ii) rational management of a Patriot National case, including granting Plaintiff's request to rejoin the team (D. Br. at 10-11, 12); (iii) setting Plaintiff's 2018 bonus in the context of her confrontations with Korsinsky and Defendants' awareness of her active search to leave L&K (D. Br. at 10-13), while presenting other economic inducements (D. Br. at 12); (iv) the rationale for case assignments to junior attorneys (D. Br. at 30); and (v) relocation of her office (D. Br. at 31).

*Cornell Univ.*, 889 F. Supp. 2d 539, 574 (S.D.N.Y. 2012)(*citing Patane v. Clark*, 508 F.3d 106, 111 (2d Cir. 2007)), *aff'd*, 526 F. App'x 124 (2d Cir. 2013); *Bucek*, 2018 WL 1609334, at *12 (plaintiff's claims dismissed for failure to show discriminatory animus as motivating factor).[5]

Furthermore, Plaintiff presents no facts to refute the documentation and testimony that L&K offered fee-based bonuses to both male and female attorneys who had been successful partners in their prior law firms. 56.1 ¶¶73, 74, 75, 76. Other attorneys, male and female alike, who commenced their L&K employment without such a successful track record as a partner did not receive the compensation arrangements for fee-based bonuses prior to achieving a fee threshold. Pl. Ex. 1, Miller deposition Tr. ("Miller Tr.") at 316:19-22; 56.1 ¶¶77, 78, 79, 80, 82, 83, 84, 85, 87, 88. Plaintiff does not contend that her August 2016 placement in the group of male and female attorneys who did not receive fee-based bonuses was discriminatory.

Although Plaintiff complains about her compensation relative to her chosen comparators, Enright and Porritt (56.1 ¶116), she fails to show that Levi and

---

[5] In addition to Plaintiff's other unsubstantiated fanciful attributions of motive to Defendants is the preposterous notion that Defendants would deprive L&K of substantial fees simply to avoid sharing a small percentage with Plaintiff – a proposition for which Plaintiff understandably does not offer any evidentiary support. Plaintiff's gender-neutral opportunity at L&K remains unparalleled. In the 2½ years of her new employment by Cohen Milstein Sellers & Toll PLLC, corresponding to her tenure at L&K, Plaintiff still had not received the partner title Defendants granted after 16 months of employment, and she did not benefit from her new firm's fee-based bonus system, although Plaintiff declares herself "happy" with that employment. 56.1 ¶¶234, 235, 236.

Korsinsky acted discriminatorily in making compensation decisions based on the productivity of Enright and Porritt.[6] Plaintiff admits that Enright generated fees of $12,020,380 between 2017 and 2018 and Porritt's fee generation for those years was $12,759,115. 56.1 ¶¶140, 141. In unfavorable contrast, all the cases in which Plaintiff participated between 2017 and 2018 generated fees of only $1,816,815. 56.1 ¶137. A compensation difference that takes account of such contrasting productivity is not discriminatory, *Garcia v. Barclays Capital, Inc.*, 281 F.Supp.3d 365, 382–83 (S.D.N.Y. 2017), and thus Plaintiff has not established a *prima facie* case on that basis.

### B. Plaintiff Has Not Established a *Prima Facie* Case of Discriminatory Denial of a Bonus Agreement

Plaintiff's further argument that she suffered a discriminatory denial of a bonus agreement (Pl. Br. at 17-23) similarly lacks merit. With her "everything changed" theory, Plaintiff would have it appear – contrary to undisputed record evidence – that Defendants foreclosed consideration of fee-based bonuses for her after May 16, 2018. However, Plaintiff's writings in July 2018 show a different reality, her: (i) acknowledgment of a conversation in which Korsinsky told her that her cases needed to bring in more money before she was going to be paid any bonus or commission (56.1 ¶101); (ii) expression of hope that she would "bring in some

---

[6] With no basis in the record, Plaintiff suggests that Levi and Korsinsky should have given some unspecified weight to Plaintiff's purported leadership of a litigation team and development of complex cases (Pl. Br. at 8) – notwithstanding that her performance in those respects was undisputedly deficient (56.1 ¶¶104, 105, 106), and nothing in the record supports her wayward notion that team leadership or complex case development counted as compensation factors.

7

good fees and get a decent bonus" (56.1 ¶100); and (iii) confirmation that she would not benefit from "my title change" until "my cases pay up" (56.1 ¶102). Plaintiff admits being told by Levi in December 2018 that Defendants would consider paying her on a "case-by-case" basis going forward (56.1 ¶103), and that was followed in early January 2019 by Korsinsky's discussion with her about actions she could take to focus her attention on building a profitable docket with high level matters to create a more valuable docket and maximize potential fees to benefit herself and L&K (56.1 ¶¶104, 106). Plaintiff further admits receiving a proposal from Korsinsky in March 2019, whereby she would receive 10% of claims filing fees L&K generated from Amalgamated Bank matters. 56.1 ¶¶107, 108. Nothing presented in Plaintiff's scattershot argument and unfocused record citations detracts from the undisputed evidence showing Defendants' openness to paying a fee-based bonus and giving their support and encouragement so Plaintiff would qualify. The record does not support a *prima facie* case of discriminatory denial of a bonus agreement because of Plaintiff's sex.

### C. Plaintiff Has Not Established a *Prima Facie* Case of Discriminatory Employment Termination

Plaintiff has not pointed to any evidence indicating that her sex was a factor when Defendants decided to terminate her employment, just as it was not a factor when they provided substantive benefits and unprecedented favorable treatment, beginning with her 2011 interview and continuing to the time she was hired in 2016 and throughout her employment. 56.1 ¶¶4, 5, 9, 10, 11, 15, 21, 22, 69, 70, 94, 100, 101, 102, 234, 235, 236, 237, 238. *See Cordell v. Verizon Commc'ns, Inc.*, 331 F.

8

App'x 56, 58 (2d Cir. 2009); *Renz v. Grey Advertising Inc.*, 135 F.3d 217, 220 (2d Cir. 1997); *Bentley-Ammonds v. Northwell Health, Inc.*, No. 21-835-cv, 2022 WL 893716 at *2 (2d Cir. March 28, 2022). Nothing presented in Plaintiff's opposition places her or Defendants in a position comparable to the participants in the stream of cases she cites undiscerningly. Pl. Br. at 13. In contrast to those other circumstances, Plaintiff acknowledges Defendants' gender-neutral actions from commencement of employment through their giving her the title of Partner in January 2018, but brands them as sexist discriminators as of May 16, 2018, allegedly for not acceding immediately to her request for fee-based bonuses (56.1 ¶121),[7] even though her generation of fees had not materialized (56.1 ¶¶100, 101, 102) and she was reluctant to generate new cases as she pursued a job search to leave L&K (56.1 ¶¶168, 169, 170, 171).

In addition to failing to present a *prima facie* case by connecting Plaintiff's employment termination to a discriminatory motive based on her sex, familial or caregiver status, Plaintiff's opposition conspicuously avoids the undisputed record evidence of her ongoing conflict and confrontations with Korsinsky over substantive

---

[7] Although the "plan" Plaintiff devised for settling the Fox fee during Korsinsky's Passover observance in April for $400,000 less than instructed by him (56.1 ¶151) was perceived by Levi and Korsinsky as confrontational and defiant (56.1 ¶¶152, 197) and understood by Plaintiff as an unfortunate "situation" she created but admittedly did not want to repeat (Miller Tr. at 139:20-22), Plaintiff perversely pleads it as a springboard for her May 2018 request to participate in fee-based bonuses (Am. Compl. ¶¶56, 57, 58), showcasing it as the centerpiece of her discrimination, equal pay and retaliation causes of action.

9

Case 1:20-cv-01390-LAP   Document 123   Filed 01/12/23   Page 14 of 17

client matters and law firm economics prior to her employment termination.[8]

Although Plaintiff avowedly wanted to avoid another "Fox situation,"[9] her friction with Korsinsky persisted, as evidenced by Korsinsky's statements to Plaintiff in March 2019 that he thought she had acted to marginalize his participation in the Amalgamated Bank McKesson case and she was not acting like a team player, detrimentally affecting the profitability of the case to L&K and creating a power struggle with him (56.1 ¶200). Contrary to the opposition's contortions to downplay the significance of Plaintiff's behavior as a factor in her employment termination, Plaintiff wrote on June 8, 2019 that her husband believed that she lost her job with L&K "for being unable to control [her]self when [her] boss acted like a complete asshole." 56.1 ¶196. Nor can Plaintiff neutralize her protracted job search and her absences on March 26 and 27 associated with six interviews to secure an anticipated employment offer (56.1 ¶¶184, 185, 186, 187) as factors in her March 28 employment termination. Further, Plaintiff's March 31, 2019 response on a prospective employer's Lateral Candidate Due Diligence Questionnaire certifies as the reason for her employment termination: "Ed Korsinsky requested that I leave L&K on 3/28/19 because he believed that I was looking for another job, and should focus my efforts on

---

[8] 56.1 ¶¶149, 150, 151, 154, 155, 156, 157, 170, 171, 199, 200.
[9] Belying her own contrary rationalizations, Plaintiff admits that in August 2018 she wanted to keep Korsinsky "fully informed" about a Patriot National matter because she "did not want to have another Fox situation," (Miller Tr. at 139:20-22), an unmistakable reference to the tension resulting from the "plan" to settle the Fox fee in April 2018 without giving Korsinsky "an opportunity to mess with resolving this fee issue." 56.1 ¶151.

10

finding one." 56.1 ¶194. Indeed, through June 2019, Plaintiff continued to relate that her employment termination was attributable to her job search. 56.1 ¶195.

\*\*\*

Plaintiff's opposition fails to deliver the essential facts necessary to establish a *prima facie* case that her sex was a factor in any pleaded adverse employment action under Title VII or NYSHRL or that she was treated less well than others because of her sex, familial status, or caregiver status under the NYCHRL.[10]

### III. PLAINTIFF HAS NOT ESTABLISHED A *PRIMA FACIE* CASE FOR EQUAL PAY

Plaintiff's opposition concerning her equal pay claim is bewildering and inadequate. After reciting the standard for a *prima facie* case, Plaintiff's opposition presents nothing to satisfy that standard by demonstrating that she had productivity comparable to Enright and Porritt. Pl. Br. at 32-34. Plaintiff's mere participation in cases generating less than $2 million from 2017 through 2018 (56.1 ¶137) is woefully *incomparable* to actual fee generation of more than $12 million in the same period by each of Enright and Porritt, her chosen comparators (56.1 ¶¶140, 141). While Plaintiff's opposition asserts that "everything changed" on May 16, 2018, she presents nothing to show generation after May 16, 2018 of any fees for which she could receive a fee-based bonus. Indeed, Plaintiff admits that she decided in August 2018 to leave L&K for "better opportunities" and "more income" (56.1 ¶162), and

---

[10] By failing to associate any adverse action under the NYCHRL to her familial or caregiver status, or showing that her sex played a role in any pleaded adverse action, Plaintiff has abandoned and waived those contentions. *Bucek*, 2018 WL 1609334, at \*14, 14n.25.

she was reluctant to engage in activity that would generate new cases for L&K before her planned departure (56.1 ¶168).

Plaintiff's deposition testimony establishes that all she wanted in May 2018 was a negotiation about a fee-based bonus (56.1 ¶121). She got more than that. Plaintiff's explicit deposition testimony establishes her undisputed discussion with Korsinsky about the satisfaction of L&K's $2.5 million threshold amount for a fee-based bonus. Miller Tr. at 316:19-22. Additionally, Levi told her he was open to considering paying her on a "case-by-case" basis going forward (56.1 ¶103), and Korsinsky offered her a percentage for certain Amalgamated Bank cases (56.1 ¶¶107, 108). On such undisputed facts, Plaintiff has not established a *prima facie* case of unequal pay for bonus amount or terms.

## IV. PLAINTIFF HAS NOT ESTABLISHED ENTITLEMENT TO SUMMARY JUDGMENT ON HER RETALIATION CLAIM

Plaintiff's opposition leaves undisturbed Defendants' showing that Plaintiff's documented scheming defeats her retaliation claim by validating Defendants' basis for asserting that Plaintiff was faithless and disloyal and that she tortiously interfered with Defendants' prospective economic advantage. D. Br. at 31-32. She offers no facts to support her unsubstantiated speculation imputing retaliatory intent and animus to Defendants' counterclaims (Pl. Br. at 40-41), or to show that Defendants' counterclaims are baseless. Indeed, Plaintiff's writings and deposition testimony reveal the sordid agreement with Mark Lebovitch to transfer the Amalgamated Bank McKesson case to Lebovitch's law firm in exchange for direct payment of as much as $500,000 (the amount of Plaintiff's L&K billings) (56.1 ¶¶203-209) – a deal that

was never put in writing because Lebovitch "didn't want it to be discoverable for Ed [Korsinsky]" (Miller Tr. at 201:2-5).

## CONCLUSION

For the foregoing reasons,[11] Defendants respectfully request that the Court issue an order granting Defendants' motion for summary judgment, dismissing the case in its entirety and granting Defendants such other and further relief as the Court deems just and proper, including Defendants' attorneys' fees.[12]

Dated: New York, New York
       January 12, 2023

EPSTEIN BECKER & GREEN, P.C.

By: /s/ Allen B. Roberts
    Allen B. Roberts
    Jessica Giambrone Palmese
    875 Third Avenue
    New York, New York 10022
    Telephone: (212) 351-4500
    *Attorneys for Defendants*
    *Levi & Korsinsky, LLP,*
    *Eduard Korsinsky and*
    *Joseph Levi*

---

[11] Additionally, Plaintiff's opposition fails to save her breach of contract claim with evidence controverting L&K's Handbook policy that precludes vacation pay for unused vacation time. D. Br. at 32-33.

[12] Attorneys' fees are warranted against Plaintiff, a sophisticated and experienced litigator boasting "lucrative" real estate investments in addition to substantial earned income (56.1 ¶233), who should bear the consequences for her tenacious, vexatious and costly pursuit of frivolous claims, initiated with an objective of "blackmail[ing]" Korsinsky and exacting a favorable separation agreement for which she would have considered getting three or four months of her annual salary of $285,000 a "total win." 56.1 ¶¶22, 227, 232. *See Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 422 (1978); *Murphy v. Bd. of Educ. of Rochester City Sch. Dist.*, 420 F. Supp. 2d 131, 134 (W.D.N.Y. 2006); *Prate v. Freedman*, 583 F.2d 42, 46 (2d Cir. 1978) ("reasonable attorneys' fees should be awarded to a prevailing defendant in a Title VII action found to have been unreasonable, vexatious or groundless unless there exist affirmative reasons for not doing so.").