UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

AMY MILLER,

                    Plaintiff,

-against-

LEVI & KORSINSKY, LLP, EDUARD
KORSINSKY, and JOSEPH LEVI,

                    Defendants.

---

No. 20 CV 1390 (LAP)

MEMORANDUM & ORDER

LORETTA A. PRESKA, Senior United States District Judge:

    Plaintiff Amy Miller ("Plaintiff") brings this action against defendants Levi & Korsinsky, LLP ("L&K"), Eduard Korsinsky ("Korsinsky"), and Joseph Levi ("Levi") (collectively "Defendants").[1]  Against all Defendants, Plaintiff alleges sex and familial status discrimination under the New York State Human Rights Law, N.Y. Exec. Law § 296 et seq. (the "NYSHRL") (Count 6); sex and familial status discrimination under the New York City Human Rights Law, Administrative Code of the City of New York § 8-107 et seq. (the "NYCHRL") (Count 7); caregiver discrimination under the NYCHRL (Count 8); retaliation under the NYSHRL, the NYCHRL, and the Equal Pay Act, 29 U.S.C. § 206, et seq. ("Equal Pay Act") (Counts 4 and 9); and violations of the Equal Pay Act (Count 3) and the New York Equal Pay Law, N.Y. Labor Law § 194 ("NY Equal Pay Law") (Count 5).  Against L&K

---

[1] (See Am. Compl. ("AC"), dated May 31, 2022 [dkt. no. 79].)

only, Plaintiff also alleges sex/gender discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII") (Counts 1 and 2) and a breach of contract claim (Count 10).

Before the Court is Defendants' motion for summary judgement pursuant to Federal Rule of Civil Procedure 56 on all of Plaintiff's claims.[2]  Plaintiff opposes the motion and cross-moves for summary judgement on her claim for retaliation based on Defendants' counterclaims pursuant to Rule 56.[3]  Defendants oppose Plaintiff's cross motion.[4]  For the reasons set forth below, Defendants' motion for summary judgement is GRANTED in

---

[2] (See Mot. for Summ. J., dated Sept. 27, 2022 [dkt. no. 106]; Mem. of Law in Supp. of Mot. for Summ. J. ("Defs.' Br."), dated Sept. 27, 2022 [dkt. no. 107]; Def. Rule 56.1 Statement ("Def. 56.1"), dated Sept. 27, 2022 [dkt. no. 108]; Decl. of Eduard Korsinsky in Supp. of Mot. for Summ. J., dated Sept. 27, 2022 [dkt no. 109]; Decl. of Joseph Levi in Supp. of Mot. for Summ. J., dated Sept. 27, 2022 [dkt no. 110]; Decl. of Allen Roberts in Supp. of Mot. for Summ. J. ("Roberts Decl."), dated Sept. 27, 2022 [dkt. no. 111].)

[3] (See Pl.'s Cross-Mot. for Partial Summ. J., dated Nov. 14, 2022 [dkt. no. 118]; Pl.'s Mem. of Law in Opp'n to Defs.' Mot. for Summ. J. and in Supp. of Cross-Mot. ("Pl.'s Br."), dated Nov. 14, 2022 [dkt. no. 117]; Pl.'s Rule 56.1 Statement ("Pl.'s Counter 56.1"), dated November 14, 2022 [dkt. no. 116]; Decl. of Samuel Maduegbuna in Supp. of Mot. for Summ. J. ("Maduegbuna Decl."), dated Sept. 27, 2022 [dkt no. 120]; Pl.'s Reply Mem. of Law in Supp. of Summ. J. Pursuant to Fed. R. Civ. Proc. 56 ("Pl.'s Reply"), dated Jan. 22, 2023 [dkt. no. 124].)

[4] (See Defs.' Reply Mem. of Law in Supp. of Mot. for Summ. J. and in Opp'n to Pl.'s Mot. for Summ. J. ("Defs.' Reply Br."), dated Jan. 12, 2023 [dkt. no. 123]; Defs.' Counter Statement to Pl.'s Counter 56.1 ("Defs' Counter 56.1"), dated Jan. 12, 2023 [dkt. no. 121].)

part and DENIED in part.  Plaintiff's cross motion for summary judgment is GRANTED.

## I.  Background

L&K is a law firm that primarily practices in the areas of securities and derivative litigation on a contingency basis. Levi and Korsinsky are the founding and managing partners of L&K with sole and exclusive responsibility for personnel decisions in the New York office, including the decision to promote an attorney, determine compensation structure for partners, grant bonuses to employees, assign and reassign cases, and terminate an employee.

Plaintiff is and has been a practicing attorney for over twenty years.  She graduated from law school in 2001 and started her career at Cadwalader, Wickersham & Taft LLP, where she worked from 2001 to 2009.  She then worked for Bernstein Litowitz Berger & Grossmann LLP from 2009 to 2014 and Grant & Eisenhofer PA from 2014 to 2016.  Since transitioning to plaintiff-side representation, Plaintiff has concentrated on corporate governance matters, including securities litigation, derivative cases, and appraisal cases.

On June 13, 2016, Plaintiff contacted Korsinsky to inquire about the possibility of joining L&K.[5]  On June 18, 2016, following interviews, Levi and Korsinsky offered Plaintiff an "Of Counsel" position at L&K at an annual salary of $250,000. Plaintiff countered and requested an annual base salary of $285,000, which L&K accommodated.  Plaintiff accepted L&K's offer on July 6, 2016, with a base salary of $285,000 and a promise of discretionary bonuses based on her and L&K's performance.  Plaintiff commenced employment with L&K on August 15, 2016.  Plaintiff worked on derivative litigation cases at L&K, though the parties dispute whether Plaintiff was the head of the derivative litigation practice.[6]

Things appeared to start well.  In December of 2016, Korsinsky described Plaintiff as competent and suggested that she would want but deserve partnership.  In May of 2017, Plaintiff secured a significant institutional client.  In June of 2017, Korsinsky described Plaintiff's work as exceptional and her team as energized and engaged.  Plaintiff, who had never been promoted to partner prior to her time at L&K, was promoted

---

[5] The parties previously discussed Plaintiff's joining L&K in 2012, but these discussions did not culminate in an employment relationship.

[6] Though there is conflicting evidence on this point, construing the evidence in Plaintiff's favor, the Court assumes that Plaintiff was the head of the derivatives practice for purposes of this motion.

to partner in December of 2017.[7]  This promotion was not accompanied by any change in Plaintiff's compensation structure.

On May 16, 2018, Plaintiff, after discussing her compensation with Svetlana Mayzus and purportedly being told that she was doing equal work to Porritt and Enright and deserved a fee-based bonus agreement,[8] approached Korsinsky and asked for a fee-based bonus agreement.  When Plaintiff asked Korsinsky for a fee-based bonus agreement, Korsinsky asked Plaintiff whether her husband had directed her to make the request.  Korsinsky then asked whether Plaintiff wanted Korsinsky to call her husband and have Plaintiff's husband handle the bonus negotiations for her.

---

[7] The parties dispute whether Plaintiff was just given the title of partner or actually promoted to partner.  So far as the Court can tell from its review of the record, no "partner" at L&K is a partner in the traditional sense except for Levi and Korsinsky, meaning all "partners" are partners in title and name only.  In any event, assuming that being promoted to partner is somehow different from being given the title of partner, construing the evidence in Plaintiff's favor, the Court assumes that Plaintiff was promoted to partner for purposes of this motion.
[8] The parties dispute Ms. Mayzus' precise tile and responsibilities.  Defendants characterize her as the Office Manager with ministerial administrative duties.  Plaintiff characterizes her as the Director of Administration and Finance with substantial responsibilities over non-attorney staff, negotiation of contracts, payroll, human resources, hiring of lower-level staff (subject to the approval of Levi and Korsinsky), and supervising and reviewing the books.  However, there is no dispute that Ms. Mayzus had no supervisory role over attorneys or that Levi and Korsinsky were the sole arbiters of partner compensation and bonus decisions.  There is no evidence suggesting Ms. Mayzus played any role in these determinations.

On May 17, 2018, Levi described Plaintiff as too soft and unsophisticated when negotiating fees with other firms but too aggressive internally when negotiating her bonus.  On May 18, 2018, immediately after Plaintiff requested a fee-based bonus, Korsinsky wrote that Plaintiff was "coasting" and then, on May 22, 2018, when Plaintiff stated that she would be working from home, Levi stated that the relationship would not last.  On May 22, 2018, Levi and Korsinsky began scrutinizing Plaintiff's work from home habits and again suggested that things would not last. After Plaintiff requested a fee-based bonus agreement, Korsinsky spoke with her about her work from home habits and told Plaintiff about how he had discussed his wife's work with his wife's boss and, while purportedly joking, asked his wife's boss to fire his wife so she could be at home with their children. Korsinsky then described his wife to Plaintiff as someone who was honest about being unable to work at home and told Plaintiff that his wife could no longer perform her prior, high-performance job while at home with children.  Korsinsky told Plaintiff that he did not feel she was being equally honest with him.

On August 29, 2018, Levi emailed Korsinsky to tell him that Plaintiff complained about her pay again and intended to request more compensation the next day.  Korsinsky responded that it might be a good time to terminate Plaintiff's employment.  In

December of 2018, when Plaintiff attempted to negotiate her bonus and stated in that negotiation that another female partner had described her prior negotiations with Defendants, Plaintiff testified that Levi told her that the female partner knew her place and would not have done that.[9]  There is also evidence to suggest that, in 2019, Defendants targeted Plaintiff with an audit of her case expenses because they did not like her and wanted to fire her.  On March 19, 2019, Defendants discussed demanding to speak to one of Plaintiff's clients and to "joke" about Plaintiff's disparaging the client, in hopes of either keeping the client or, if Plaintiff denied Defendants access to the client, creating "pretext" to fire Plaintiff.  Plaintiff was ultimately terminated during a meeting with Korsinsky on March 28, 2019.

On February 18, 2020, Plaintiff commenced the instant lawsuit asserting various claims based on, among other things, alleged violations of various laws governing discrimination, retaliation, and equal pay.  On June 1, 2020, Defendants answered, and L&K asserted counterclaims alleging Plaintiff was a faithless and disloyal employee and that she tortiously

---

[9] Levi unequivocally denies making this statement.  Either Plaintiff or Levi is being untruthful, but the parties' credibility is not for the Court to determine at this juncture, and the Court simply notes here that there is admissible evidence that this statement was made without determining whether it was made.

interfered with its business relations.  Following Plaintiff's
motion to dismiss for failure to state a claim and after
considering the parties' briefing, the Court dismissed L&K's
counterclaims in their entirety on February 12, 2021.  L&K did
not attempt to amend its counterclaims in response to the
Court's decision.  Following the close of discovery, Plaintiff
sought and received permission to file an amended complaint
asserting additional retaliation claims based on Defendants'
counterclaims based on evidence uncovered in discovery, which
she filed on May 31, 2022.  In discovery, both Levi and
Korsinsky testified that their counterclaims were based not on
facts but on "intuition" and "impressions."  Korsinsky testified
that it was not until discovery that Defendants had the "hard
facts" regarding Plaintiff's purported malfeasance.  To date,
Defendants have not sought to revive their counterclaims, even
based on the newly discovered evidence that purportedly supports
L&K's counterclaims.

## II.  Legal Standards

### A.  <u>Summary Judgment</u>

Summary judgment is appropriate where "the movant shows
that there is no genuine dispute as to any material fact and the
movant is entitled to judgment as a matter of law."  Fed. R.
Civ. P. 56(a).  The movant bears the burden to show the absence
of a dispute as to a material fact.  <u>See</u> <u>Celotex Corp. v.</u>

<u>Catrett</u>, 477 U.S. 317, 323 (1986).  Where the non-moving party
bears the burden of proof at trial, the moving party may
discharge its summary judgment burden in "two ways: (1) by
submitting evidence that negates an essential element of the
non-moving party's claim, or (2) by demonstrating that the non-
moving party's evidence is insufficient to establish an
essential element of the non-moving party's claim."  <u>Nick's
Garage, Inc. v. Progressive Cas. Ins. Co.</u>, 875 F.3d 107, 114 (2d
Cir. 2017).  In assessing the record, the Court "must view the
evidence in the light most favorable to the . . . [non-moving]
party," <u>Tolan v. Cotton</u>, 572 U.S. 650, 657 (2014) (internal
quotation marks omitted), and "resolve all ambiguities and draw
all reasonable inferences against the movant," <u>Caronia v. Philip
Morris USA, Inc.</u>, 715 F.3d 417, 427 (2d Cir. 2013).  At the same
time, "the mere existence of some alleged factual dispute" is
not enough to prevent summary judgment – the dispute must be
material.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48
(1986).  A fact is "material" only if it "might affect the
outcome of the suit under the governing law."  <u>Id.</u> at 248.
Finally, "conclusory statements or mere allegations are not
sufficient to defeat a summary judgment motion."  <u>Johnson v.
Killian</u>, 680 F.3d 234, 236 (2d Cir. 2012) (per curiam)
(alterations omitted).

B.   **Equal Pay Act and New York Equal Pay Law**

"To prove a violation of the EPA, a plaintiff must demonstrate that (1) the employer pays different wages to employees of the opposite sex; (2) the employees perform equal work on jobs requiring equal skill, effort, and responsibility; and (3) the jobs are performed under similar working conditions."  E.E.O.C. v. Port Auth. of N.Y. and N.J., 768 F.3d 247, 254-55 (cleaned up).  Violations of the NY Equal Pay Law are analyzed in the same way as violations of the Equal Pay Act. Santiago v. ACACIA Network, 22-cv-228 (JGK), 2022 WL 6775835, at *7 n.3 (S.D.N.Y. Oct. 10, 2022) (citing Talwar v. Staten Island Univ. Hosp., 610 F. App'x 28, 30 n.2 (2d Cir. 2015)).

C.   **Discrimination**

Title VII claims are evaluated under "'the three-step burden shifting analysis of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).'" Lenzi v. Systemax, Inc., 944 F.3d 97, 107 (2d Cir. 2019) (quoting Kerzer v. Kingly Mfg., 156 F.3d 396, 400-01 (2d Cir. 1998)).  "To establish a prima facie case of gender discrimination under Title VII and the NYSHRL, a plaintiff must demonstrate: (1) membership in a protected class; (2) satisfactory job performance; (3) an adverse employment action; and (4) circumstances surrounding the employment action that give rise to an inference of discrimination."  Fahrenkrug v.

<u>Verizon Servs. Corp.</u>, 652 Fed. App'x. 54, 56 (2d Cir. 2016).
The burden at this stage is minimal, but "a plaintiff must
proffer some admissible evidence of circumstances that would be
sufficient to permit an inference of discriminatory motive."
<u>Risco v. McHugh</u>, 868 F.Supp.2d 75, 98-99 (S.D.N.Y. 2012) (citing
<u>Bennett v. Watson Wyatt & Co.</u>, 136 F.Supp.2d 236, 246 (S.D.N.Y.
2001), <u>aff'd</u>, 51 Fed. App'x. 55 (2d Cir. 2002)).

Discrimination claims under the NYCHRL must be analyzed
"separately and independently" from state and federal
discrimination claims, as the NYCHRL's provisions are "uniquely
broad." <u>Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.</u>, 715
F.3d 102, 109 (2d Cir. 2013) (citing <u>Hernandez v. Kaisman</u>, 103
A.D.3d 106, 957 N.Y.S.2d 53, 58 (1st Dep't 2012)). "To establish
a gender discrimination claim under the NYCHRL, the plaintiff
need only demonstrate 'by a preponderance of the evidence that
she has been treated less well than other employees because of
her gender.'" <u>Id.</u> at 110 (quoting <u>Williams v. N.Y.C. Hous.
Auth.</u>, 61 A.D.3d 62, 872 N.Y.S.2d 27, 39 (1st Dep't 2009)).

### D.   **Retaliation**

Title VII and Equal Pay Act retaliation claims are also
evaluated under a three-step burden-shifting analysis. <u>Jute v.
Hamilton Sundstrand Corp.</u>, 420 F.3d 166, 173 (2d Cir. 2005)
(citations omitted); <u>see</u> <u>Wilson v. N.Y. and Presbyterian Hosp.</u>,
21-1971-cv, 2022 WL 17587564, at *1 (2d Cir. Dec. 13, 2022)

(summary order).  State law retaliation claims are reviewed
under the same framework.  Kwan v. The Andalex Grp. LLC, 737
F.3d 834, 843 (2d Cir. 2013) (citations omitted).  The plaintiff
must first establish a prima facie case of retaliation by
demonstrating: "(1) participation in a protected activity; (2)
that the defendant knew of the protected activity; (3) an
adverse employment action; and (4) a causal connection between
the protected activity and the adverse employment action."
Jute, 420 F.3d at 173 (quoting McMenemy v. City of Rochester,
241 F.3d 279, 282-83 (2d Cir. 2001)).  "Once the plaintiff has
established a prima facie showing of retaliation, the burden
shifts to the employer to articulate some legitimate, non-
retaliatory reason for the employment action."  Kwan, 737 F.3d
at 845 (citations omitted).

    To prevail on a retaliation claim under the NYCHRL, a
plaintiff must demonstrate that he or she took an action
opposing his or her employer's discrimination, and that, as a
result, "the employer engaged in conduct that was reasonably
likely to deter a person from engaging in such action."
Mihalik, 715 F.3d at 112 (citing Williams, 872 N.Y.S.2d at 33-
34.)

## III. Discussion

### A. <u>Equal Pay</u>

Defendants argue that Plaintiff has not demonstrated that Porritt or Enright are appropriate comparators because Porritt and Enright had significantly more relevant experience and established track records of fee generation. (Defs.' Br. 16, 18-19, 24.)  Plaintiff responds not by arguing that she had comparable experience but that she was similarly situated in that she developed cases and ran a group overseeing complex litigation. (Pl. Br. 8, 32.)  In other words, Plaintiff avoids discussing her and her purported comparators' experience levels and prior performance by attempting to redirect the discussion to their current responsibilities.  Plaintiff's strategy is unavailing.

Plaintiff "bear[s] the burden in . . . [her] prima facie case of justifying the choice of a particular coworker as a comparator." <u>Hatzimihalis v. SMBC Nikko Sec. Am., Inc.</u>, No. 20 CIV. 8037 (JPC), 2023 WL 3764823, at *8 (S.D.N.Y. June 1, 2023) (the "many differences that exist between most pairs of employees make it unreasonable to infer, from the mere fact that two employees are paid differently, that their employer pays different compensation to employees of different sexes").  Thus, to "raise an inference of discrimination by demonstrating the disparate treatment of similarly situated employees" a plaintiff

"must show she was similarly situated in all material respects to the individuals with whom she seeks to compare herself." Cooper v. Templeton, 629 F. Supp. 3d 223, 230–31 (S.D.N.Y. 2022), aff'd sub nom. Cooper v. Franklin Templeton Invs., No. 22-2763-CV, 2023 WL 3882977 (2d Cir. June 8, 2023) (plaintiff's claims failed because the purported comparators were not alleged to be "similarly situated in terms of position, seniority, job responsibilities, business unit, performance, length of experience, or even geography"); Robinson v. Am. Int'l Group, Inc., 2009 U.S. Dist. LEXIS 90801, *12-15 ("[T]o make out a prima facie case of unequal pay . . . a plaintiff must show that she shared sufficient employment characteristics with that comparator so that they could be considered similarly situated. Comparators must be 'similarly situated all material respects.'").

Plaintiff has not carried her burden.  The difference in experience and work history between Porritt and Enright, on the one hand, and Plaintiff, on the other, a difference Plaintiff does not even attempt to address, is too significant for Porritt and Enright to serve as Plaintiff's comparators.  Both Porritt and Enright were partners at significant law firms before joining L&K.  (Pl.'s Counter 56.1 ¶¶ 74-75.)  For many years, Porritt was a successful partner at both Wilson Sonsini and Akin Gump, and Enright was a successful partner at Finkelstein &

Thompson.  (Id.)  It is undisputed that Plaintiff was never a
partner prior to working at L&K and has no experience running a
litigation team as a partner.  Thus, Plaintiff has not shown
that her "length of experience" or her prior positions render
Porritt and Enright appropriate comparators with sufficient
shared employment characteristics.  Cooper, 629 F. Supp. 3d at
231; Robinson, 2009 U.S. Dist. LEXIS 90801, *15.  Plaintiff has
therefore failed to carry her prima facie burden on her equal
pay claims.

Even assuming that Plaintiff did carry her burden, Porritt
and Enright's prior experience as partners and records of
generating fees, (Pl.'s Counter 56.1 ¶¶ 74-75), provide non-
pretextual justification for the pay disparity.  Indeed, "[a]n
EPA claim must be dismissed where an employer can justify a wage
differential on factors such as salary negotiated at hire,
inducement to hire the best person for the job, [and] an
employee's earnings at a prior employer."  Boatright v. U.S.
Bancorp, No. 18-cv-7293 (LJL), 2020 U.S. Dist. LEXIS 236604, at
*40 (S.D.N.Y. Dec. 16, 2020); see also Moccio v. Cornell Univ.,
889 F. Supp. 2d 539, 570-71 (S.D.N.Y. 2012); Virgona v.
Tufenkian Import-Export Ventures, Inc., 2008 U.S. Dist. LEXIS
72139, 2008 WL 4356219, at *10 (S.D.N.Y. Sept. 23, 2008).  It is
reasonable, and often expected, that when a person transitions
to a new place of employment, that person will leverage prior

success and experience to negotiate larger compensation at the new place of business.  Boatright, 2020 U.S. Dist. LEXIS 236604, at *40 (EPA claim failed where, among other things, the purported comparator "had to be recruited away from another high-paying position" while plaintiff did not, and comparator had previous relevant experience directly applicable to new role).  Plaintiff apparently used the leverage available to her based on her credentials and experience to secure a higher base salary (higher than any other attorney at L&K besides Levi and Korsinsky) but did not or could not secure a fee-based bonus agreement.  (Pl.'s Counter 56.1 ¶¶ 21-23.)  Porritt and Enright apparently did have the leverage to secure such a fee-based bonus agreement upon joining L&K.  L&K's choice to pay Porritt and Enright more based on their highly relevant, and distinct, experience as partners running teams and generating fees at prior law firms and the need to induce them to join L&K are substantial and non-pretextual reasons justifying the disparity between Porritt and Enright's pay structure and Plaintiff's.  Eisenhauer v. Culinary Inst. of Am., 2021 U.S. Dist.  LEXIS 212822, *20-21 (affirmative defense established where pay differential was based on a factor other than sex, such as "prior experience" and "professional credentials at the time of hire"); Boatright, 2020 U.S. Dist. LEXIS 236604, at *41-42.  Plaintiff declined to address these differences and thus has

16

introduced no evidence suggesting these differences were pretextual.

As such, Plaintiff has failed to make out a prima facie case on her equal pay claims and, "even if she had, Defendants have rebutted it . . . [and] are entitled to summary judgment on Plaintiff's [equal pay] claim[s]." Boatright, 2020 U.S. Dist. LEXIS 236604, at *42.

## B. Discrimination

The first two elements of Plaintiff's discrimination claims are not in serious dispute.  Plaintiff is in a protected class because she is a woman and she possessed "the basic skills necessary" to perform her role.  Slattery v. Swiss Reinsurance Am. Corp., 248 F.3d 87, 92 (2d Cir. 2001).  Defendants do not contend otherwise.

As to the third element, Plaintiff asserts that she suffered two adverse acts in that she was "(i) denied a fixed percentage bonus agreement like comparable male partners, and (ii) terminated after seeking equal pay and refusing to conform to a complacent gender stereotype." (Pl. Br. 8.)  Defendants do not dispute that termination is an adverse employment action that satisfies the third element.  (Defs.' Br. 16 ("With the exception of her employment termination, which Defendants address separately, Plaintiff's claims of discrimination fail because she cannot establish any actionable adverse employment

actions.").)  Though Defendants never fully develop the
argument, they do not appear to concede that failure to provide
Plaintiff with a bonus agreement was an adverse employment
action.  (Defs.' Br. 17 (stating without further legal analysis
that "[o]n this record, none of the allegations [regarding
Plaintiff's pay] rise to the level of materially adverse
employment actions").)

To the extent Defendants argue that the refusal to pay a
bonus cannot be materially adverse, the Court disagrees.
Undercompensating, or continuing to undercompensate, a person
for a discriminatory reason is as adverse as affirmatively
reducing the compensation of a person below his or her worth for
a discriminatory reason.  The two acts are both sides of the
same coin.  To be sure, the latter may be more easily identified
and connected to specific discriminatory actions or conduct, but
the more insidious nature of the former and the difficulty of
flushing it out is no reason to find it is less adverse or not
adverse at all.  See Banks v. GM, LLC, No. 21-2640, 2023 U.S.
App. LEXIS 23757, at *46 (2d Cir. Sep. 7, 2023) (observing that
a "failure to promote" can qualify as an "adverse action" and
that "[i]ndeed 'no particular type of personnel action is
automatically excluded from serving as the basis of a cause of
action under Title VII, as long as the plaintiff is aggrieved by
the action'") (quoting Cones v. Shalala, 199 F.3d 512, 521 (D.C.

18

Cir. 2000)); see also Lenzi v. Systemax, Inc., 944 F.3d 97, 109
(2d Cir. 2019) (permitting "Title VII" claim based on "wage
discrimination on the basis of sex"); Brightman v. Physician
Affiliate Grp. of N.Y., P.C., No. 20cv4290 (DLC), 2021 U.S. Dist.
LEXIS 95327, at *17 (S.D.N.Y. May 19, 2021) (identifying "pay
discrimination" as an "adverse employment action[]").
Therefore, the Court finds that Plaintiff has adduced evidence
sufficient to satisfy the third element because Defendants'
refusal to offer Plaintiff a fee-based bonus agreement and their
termination of Plaintiff are adverse employment actions.

Thus, the Court turns to the fourth element, whether the
"circumstances surrounding the employment action . . . give rise
to an inference of discrimination." Fahrenkrug v. Verizon
Servs. Corp., 652 Fed. App'x. 54, 56 (2d Cir. 2016). Defendants
argue that Plaintiff has not satisfied her prima facie burden as
to the denial of a bonus agreement because (i) Defendants
provided bonus agreements to both women and men and (ii) the
employees Plaintiff compares herself to who received bonus
agreements are not appropriate comparators. (Defs.' Br. 16-19.)
Defendants argue that Plaintiff has not satisfied her prima
facie burden as to her termination because (i) it is illogical
to infer that the Defendants, who hired Plaintiff knowing she
was a woman, mother, and caregiver, fired her for those same
reasons and (ii) Korsinsky's allegedly sexist remarks were

trivial, stray remarks that are insufficient to suggest discriminatory intent.  (Defs.' Br. 19-21.)

Although the question is close, Plaintiff has carried her prima facie burden on her discrimination claims.  As an initial matter, and as discussed in more detail above with regard to Plaintiff's equal pay claims, the Court agrees with Defendants that Porritt and Enright's experiences and backgrounds render them inappropriate comparators.  However, "Title VII does not require a plaintiff alleging pay discrimination to first establish an EPA violation—that is, that she received less pay for equal work.  Rather, all Title VII requires a plaintiff to prove is that her employer discriminated against her with respect to her compensation because of her sex."  Lenzi, 944 F.3d at 110 (cleaned up).  "To be sure, one way an employer might discriminate against an employee because of her sex is to pay her less than her male peers who perform equal work," but it is not the only way.  Id. at 110.  "A plaintiff may prove discrimination either by direct evidence of intent to discriminate or 'indirectly showing circumstances giving rise to an inference of discrimination.'"  Banks, 2023 U.S. App. LEXIS 23757, at *47-48 (quoting Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 87 (2d Cir. 2015).  "To prove discrimination indirectly, a plaintiff can meet the requirements of the McDonnell Douglas burden shifting framework or by otherwise

20

creating a mosaic of intentional discrimination by identifying bits and pieces of evidence that together give rise to an inference of discrimination." Id. (cleaned up).

Though it is not the most artful mosaic, Plaintiff has done so. Plaintiff testified that when she asked for a fee-based bonus on May 16, 2018, Korsinsky commented that it seemed like "there was a third person in the room" and asked Plaintiff whether her "husband ma[d]e [her] do this" and whether Korsinsky should "call [her] husband to negotiate for [her]." (Miller Tr. 119:17-120:3.) Reacting on May 17, 2018, Levi wrote to Korsinsky that Plaintiff was "too soft and unsophisticated" when negotiating fees with other firms but too "aggressive . . . internally" when negotiating her bonus. (Defs.' Counter 56.1 ¶ 255.) On May 18, 2018, immediately after Plaintiff requested a fee-based bonus, Korsinsky wrote that Plaintiff was "coasting" and then, on May 22, 2018, when Plaintiff stated that she would be working from home, Levi wrote that the "relationship won't last." (Defs.' Counter 56.1 ¶¶ 258-59.) On May 22, 2018, Levi and Korsinsky also began scrutinizing Plaintiff's work from home habits and again commented that it "won't last." (Id. ¶¶ 260-61, 268, 271.) After Plaintiff "ask[ed] for money" (i.e., requested a fee-based bonus agreement), Korsinsky spoke with her about her work from home habits and told Plaintiff about how he had discussed his wife's work with her boss and "joke[d]"

that he asked his wife's boss to fire his wife because Korsinsky "really want[ed] her at home and she want[ed] to be home with the kids."  (Korsinsky Tr. 302:9-304:4.)  Korsinsky further testified that he described his wife to Plaintiff "as an example of somebody who was honest about not being [able] to work[] at home" and that he told Plaintiff that his wife could no longer "do the same [high-performing] job" she had done previously while "at home with little babies writhing around."  (Id. 305:6-23.)  Korsinsky told Plaintiff this charming anecdote because he "didn't feel . . . [Plaintiff] was giving the same honesty to" him.  (Id.)

In addition to the temporal proximity of all of these comments and actions to Plaintiff's request for a bonus agreement, Defendants also directly linked Plaintiff's request to their discussion surrounding her termination.  For example, on August 29, 2018, when Levi emailed Korsinsky to tell him that Plaintiff "kvetched" about "her pay and will come to me tomorrow to ask for more," to which Korsinsky responded: "maybe a good time to fire her."  (Defs.' Counter 56.1 ¶ 291.)  Plaintiff further testified that in December of 2018, when she attempted to negotiate her bonus and stated in that negotiation that another female partner had described her prior negotiations with Defendants, Levi told her that the female partner "never would have done that because [she] knows her place."  (Miller Tr.

22

144:25-145:4.)  There is also evidence to suggest that, in 2019,
Defendants targeted Plaintiff with an audit of her case expenses
because they did not like her and wanted to fire her.  (Ex. 58
to Maduegbuna Decl. (Gonzales Decl.) ¶ 11.)  And, on March 19,
2019, Defendants discussed demanding to speak to one of
Plaintiff's clients and to "joke" about Plaintiff's disparaging
the client, in hopes of either keeping the client or, if
Plaintiff denied Defendants access to the client, creating
"pretext" to fire Plaintiff.  (Ex. 35 to Maduegbuna Decl.)

    Though less directly connected to Plaintiff's claims, there
are additional facts in the record that could suggest
discriminatory intent or stereotypical views.  For example,
Plaintiff also testified that Korsinsky "told [her] that"
another female partner at L&K "apologized to him for getting
pregnant a second time."  (Miller Tr. 220:6-8.)  Plaintiff also
testified that Korsinsky wanted Plaintiff to "use [her] gender
inappropriately" in a fee dispute by "play[ing] . . . up" to the
court deciding the fee issue the fact that certain individuals
"had touched [her] inappropriately" and "made inappropriate
sexual comments to" her.  (Miller Tr. 91:6-21.)

    The Court finds that there is sufficient evidence to carry
Plaintiff's prima facie burden of demonstrating discriminatory
intent.  As an initial matter, "stereotypical remarks about the
incompatibility of motherhood and employment can certainly be

23

evidence that gender played a part in an employment decision"
and "can by itself and without more be evidence of an
impermissible, sex-based motive." Back v. Hastings on Hudson
Union Free Sch. Dist., 365 F.3d 107, 122 (2d Cir. 2004).
Korsinsky's comments about Plaintiff's purported inability to
work from home, particularly considered in the context of
Defendants' sudden interest in monitoring Plaintiff's work from
home schedule, internal comments, and other behaviors described
above that occurred immediately after she requested a fee-based
bonus agreement, is sufficient, when considered in the light
most favorable to Plaintiff, to raise an inference of
discriminatory intent. Back, 365 F.3d at 115; Zambrano-
Lamhaouhi v. N.Y.C. Bd. of Educ., 866 F. Supp. 2d 147, 171-72
(E.D.N.Y. 2011).  Though such an inference is not required, a
reasonable factfinder could conclude that Defendants refused to
provide Plaintiff with a fee-based bonus agreement and
terminated her because they did not believe that Plaintiff was
carrying her weight because she was a mother and caregiver.

Even were this not sufficient, demanding conformance with
gender stereotypes is also a form of discrimination. Price
Waterhouse v. Hopkins, 490 U.S. 228, 250 (1989) ("[A]n employer
who acts on the basis of a belief that a woman cannot be
aggressive, or that she must not be, has acted on the basis of
gender."); Greenbaum v. Handelsbanken, 67 F.Supp.2d 228, 253

(S.D.N.Y. 1999) (jury could find bank promotion denial for woman who was described negatively as "aggressive" despite positive work record could be found "inappropriately stereotypical and gender-biased"); Johnson v. J. Walter Thompson U.S.A., LLC, 224 F. Supp. 3d 296, 310-11 (S.D.N.Y. 2016) (finding descriptions of females as "'bossy' c[ould] be understood not as a sex-neutral insult but rather as invoking a [sexist] double standard"); Zhao v. State U. of N.Y., 472 F. Supp. 2d 289, 310 (E.D.N.Y. 2007) ("[B]oth the Supreme Court and the Second Circuit have held that decisions resulting from 'stereotyped' impressions or assumptions about the characteristics or abilities of women violate Title VII."); Kahn v. Fairfield U., 357 F. Supp. 2d 496, 505-06 (D. Conn. 2005) (conclusory statements that female was difficult, failed to listen, and was arrogant could, "[i]n context, . . . be considered improper gender stereotypes"); Hussain v. Fed. Express Corp., 657 F. App'x 591, 594 (7th Cir. 2016) ("The evidence, including Truesdale's comments that Hussain was 'overly aggressive,' 'too emotional,' and showed too much facial expression, reasonably suggests that Truesdale did not promote her because of her sex, or at least a trier of fact could so conclude."). Levi unintentionally articulated the double-standard women face by calling Plaintiff both too "aggressive" and too "soft" in the same breath when discussing her request to be given a fee-based bonus agreement. Levi later

25

commented that, unlike Plaintiff, another female partner would not have negotiated her bonus because she "knew her place." Korsinsky's comment regarding Plaintiff's husband's negotiating for her could also be reasonably construed as a suggestion that a woman should not or could not handle such negotiations herself.  Again, though the inference is not required, a reasonable jury could view this evidence and conclude that Defendants held a stereotypical view of women with which Plaintiff did not conform and that this contributed to their continued refusal to provide Plaintiff with a fee-based bonus agreement and their ultimate termination of Plaintiff.  See, e.g., Greenbaum, 67 F.Supp.2d at 253; Hussain, 657 F. App'x at 594; Kahn, 357 F. Supp. 2d at 505-06.

The Court is also unpersuaded by Defendants' argument that their comments were nothing more than stray remarks.  It is true that "'stray remarks' alone do not support a discrimination suit."  Danzer v. Norden Sys., 151 F.3d 50, 56 (2d Cir. 1998).  However, where there are "other indicia of discrimination," such as "evidence that, if believed, tends to show that the remarks were part of a sequence of events culminating in" the adverse employment action, "the remarks can no longer be deemed 'stray,' and the jury has a right to conclude that they bear a more ominous significance."  Id. at 55-56.  Here, there is evidence that Defendants immediately began scrutinizing Plaintiff's work

from home practices and determined the relationship would not last because of her request for a fee-based bonus agreement and subsequently discussed firing her over her anticipated renewed bonus request, audited Plaintiff's records to find a reason to fire her, and sought to create a "pretext" to fire her.  Thus, a jury could conclude that the statements were not made out of the blue but were closely related to the adverse employment actions complained of.  Tomassi v. Insignia Fin. Grp., Inc., 478 F.3d 111, 115 (2d Cir. 2007) ("The more a remark evinces a discriminatory state of mind, and the closer the remark's relation to the allegedly discriminatory behavior, the more probative that remark will be."); Kirsch v. Fleet Street, Ltd., 148 F.3d 149, 162-63 (2d Cir. 1998) (rejecting the label "stray" where decision-makers uttered the remarks near the time of plaintiff's discharge).  In addition, Plaintiff has identified other remarks by Defendants, such as that a female partner knew her place and would not have negotiated and that another partner apologized for her pregnancy, that could be reasonably interpreted to bolster the conclusion that the remarks were not stray.  See Lieberman v. Gant, 630 F.2d 60, 69 (2d Cir. 1980) ("Evidence of general patterns of discrimination by an employer is relevant even in an individual disparate treatment case."); Banks, 2023 U.S. App. LEXIS 23757, at *40 ("it is not germane that the racial epithets were directed at other employees

instead of" plaintiff).  Though "one need not believe
plaintiff's evidence, . . . that is for a jury to decide, and
not a court at summary judgment," and the additional indicia
identified by Plaintiff are sufficient to send the question of
the significance of these remarks to the jury.  Danzer, 151 F.3d
at 56.

The Court is also unpersuaded by Defendants argument that,
because they hired Plaintiff knowing she was a woman, mother,
and caregiver, it is unreasonable to infer that they fired her
based on those same characteristics.  Initially, in light of the
"evidence that" Defendants "made comments that could be
construed as overtly discriminatory," the "same actor inference"
"is not dispositive."  Braunstein v. Barber, No.
06CIV.5978(CS)(GAY), 2009 WL 1542707, at *1 (S.D.N.Y. June 2,
2009).  Furthermore, the "inference is less compelling when a
significant period of time elapses between the hiring and
firing" particularly "where circumstances could have changed
over the course of time."  Carlton v. Mystic Transp., Inc., 202
F.3d 129, 138 (2d Cir. 2000); Thomas v. iStar Fin., Inc., 438 F.
Supp. 2d 348, 361 (S.D.N.Y. 2006) (rejecting same actor
inference given three-year gap).  And, in any event, "even at
the summary judgment stage of litigation, the same-actor
inference is permissive, not mandatory, and even if the same
individuals made both decisions, the Court would not be

compelled to give the defendant the benefit of the inference."
Ehrbar v. Forest Hills Hosp., 131 F. Supp. 3d 5, 24-25 (E.D.N.Y.
2015); see also Benedith v. Malverne Union Free Sch. Dist., 38
F. Supp. 3d 286, 319 (E.D.N.Y. 2014); Memnon v. Clifford Chance
US, LLP, 667 F. Supp. 2d 334, 351 (S.D.N.Y. 2009) ("[A]s several
courts have found, the same-actor inference is permissive, not
mandatory, and even if the same individuals made both decisions,
the Court would not be compelled to give [defendant] the benefit
of the inference at this stage of the litigation, and I
don't."). Though the Court might find the same actor inference
sufficient to defeat a motion for summary judgment by Plaintiff,
the Court does not find that the, at best, weak inference is
sufficient for Defendants to secure summary judgment.

Defendants also argue that two female attorneys allegedly
received a fee-based bonus agreement and that this fact
undermines any "inference of gender discrimination" because
"both women and men receive preferential treatment." (Defs.'
Br. 17-18 (citing Filippi v. Elmont Union Free Sch. Dist. Bd. of
Educ., 2012 WL 4483046, at *14 (E.D.N.Y. Sept. 27, 2012)).)
This argument is also misplaced. Contrary to Defendants'
sanguine reading of the holding, Filippi actually held that
"[a]n inference of gender discrimination is undermined where
plaintiff identifies both women and men who receive preferential
treatment." 2012 WL 4483046, at *14 (emphasis added).

Plaintiff did no such thing.  Defendants injected the two female

attorneys into the proceedings; Plaintiff has never previously

mentioned them.  Defendants may ultimately succeed in convincing

a jury that Defendants provided both male and female attorneys

with fee-based bonus agreements in a non-discriminatory manner

based on criteria that Plaintiff did not satisfy.  But this is

not the argument that Defendants have advanced here.  Defendants

have instead opted to attack Plaintiff's prima facie showing

with an inapposite case that involved a female plaintiff who

affirmatively sought to rely on the preferential treatment of

other females to satisfy her burden.  The Court rejects

Defendants' implicit invitation, supported by inapposite

caselaw, improperly to shift the burden to Plaintiff to nullify

evidence, at the prima facie stage, that Defendants have an

affirmative obligation to demonstrate once the burden shifts to

them.  And, in any event, Defendants' argument, as advanced

here, would fail on the merits because "[d]iscrimination against

one employee cannot be cured, or disproven, solely by favorable

or equitable, treatment of other employees of the same race or

sex."  Brown v. Henderson, 257 F.3d 246, 252 (2d Cir. 2001).

    As such, the Court finds that Plaintiff has satisfied her

prima facie burden.  The burden thus shifts to Defendants to

identify a non-discriminatory basis for their actions.  Before

proceeding with this analysis, the Court notes that Defendants

drafted a preliminary statement and statement of undisputed facts that suggested that they would argue that, even if Plaintiff satisfied her prima facie burden, Defendants acted based on non-discriminatory, non-pretextual justifications. (Defs.' Br. 1-15.)  However, Defendants did not advance any such arguments in their moving brief as to the discrimination claims. (Id. at 15-21.)  Undeterred by the absence of any windmills, Plaintiff made the inexplicable decision to tilt vigorously at hypothetical arguments regarding non-discriminatory justification and pretext never actually raised by Defendants. (Pl. Br. 17-32.)  Defendants then responded to Plaintiff's arguments on some of these points on reply and obliquely suggest that certain of their decisions were non-discriminatory and non-pretextual.  (Defs.' Reply Br. 9-11.)  Ordinarily, the Court would not consider arguments raised for the first time in reply. However, faced with the unusual conundrum presented by Defendants who did not advance arguments in their moving briefs but who did respond to arguments that Plaintiff unnecessarily made in opposition, the Court does consider Defendants' reply arguments to the extent they are directly responsive to Plaintiff's opposition.  Alfadda v. Fenn, 89 Civ. 6217 (LMM), 90 Civ. 4470 (LMM), 1993 U.S. Dist. LEXIS 17645, at *4 (S.D.N.Y. Dec. 16, 1993) (considering issued raised in reply brief that "addresse[d] issues not raised in" the "opening motion" when the

opposition "opened the door" because a "reply brief['s] . . .
purpose is to respond to the arguments made in opposition to the
initial motion").  Otherwise, the Court declines to play Sancho
on Plaintiff's lengthy quest to respond to arguments that
Defendants may have alluded to but did not affirmatively raise.

With that caveat, the Court addresses Defendants' argument
that "Plaintiff's opposition conspicuously avoids the undisputed
evidence of her ongoing conflict and confrontations with
Korsinsky over substantive client matters and law firm economics
prior to her employment termination."  (Defs.' Reply Br. 9-11.)
The Court, in light of Plaintiff's arguments, construes
Defendants' argument to be that they have rebutted Plaintiff's
prima facie showing by introducing evidence that they had non-
discriminatory and non-pretextual reasons to terminate
Plaintiff's employment.  In support of this argument, Defendants
identify the purported friction between Plaintiff and Korsinsky,
evidence that Plaintiff's husband believed that Plaintiff was
fired "for being unable to control [her]self when [her] boss
acted like a complete asshole," Plaintiff's protracted job
search, and her subsequent statements that she was terminated
because she was looking for another job.  (Defs.' Reply Br. 9-11
(citing (Defs.' 56.1 ¶¶ 149-51, 154-57, 170-71, 184-87, 194-96,
199, 200).)

The Court assumes without deciding that these purported facts adequately rebut Plaintiff's prima facie showing, but finds that there is sufficient evidence for a jury to find that Defendants' purported reasons for Plaintiff's termination are pretextual.  Indeed, the Court of Appeals has held that "bizarre or duplicitous processes might strengthen a plaintiff's showing of pretext."  McPherson v. NYC Dept. of Educ., 457 F.3d 211, 216 (2d Cir. 2006); Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 147 (2000) ("In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose.").  A jury could conclude that Defendants' proffered reason for terminating Plaintiff is pretextual in light of their extended campaign to find a reason to terminate Plaintiff. (Defs.' Counter 56.1 ¶¶ 260-61, 268, 271 (tracking Plaintiff's work from home schedule); Ex. 58 to Maduegbuna Decl. (Gonzales Decl.) ¶ 11 (auditing Plaintiff's cases).)  Indeed, it goes, almost without saying, that the Defendants' literal attempt to find a "pretext," (Ex. 35 to Maduegbuna Decl.), to fire Plaintiff is sufficient, by itself, to allow a jury to conclude that Defendants' reasons for terminating Plaintiff were, in fact, pretextual.  Thus, even if Defendants satisfied their burden of demonstrating a non-discriminatory reason for

terminating Plaintiff, there are questions of fact as to whether this reason is pretextual that can only be resolved by a jury.

As such, Defendants' motion for summary judgment on Plaintiff's discrimination claims is denied.

### C.   **Retaliation**

Defendants argue that Plaintiff's pre-litigation retaliation claims fail because she cannot demonstrate "that she participated in an activity protected by statute."  (Defs.' Br. 25-28.)  Defendants assert that there is no evidence that Plaintiff ever complained about discrimination while employed at L&K and that Plaintiff's requests for a compensation structure akin to that of Enright and Porritt, who happen to be male – without alluding to their gender, her gender, or any other protected characteristic – is insufficient to qualify as a protected activity.  (Id.)  Plaintiff concedes that she never used the phrase "discrimination" and does not dispute that her retaliation claim turns on her request to be compensated like Enright and Porritt without mention of their gender or any assertion of unequal treatment on the basis of gender, familial status, or caregiver status.  (Pl.'s Br. 34-35.)  Instead, Plaintiff argues that it is possible to infer that her request to be paid like Enright and Porritt was a complaint about disparate pay based on a protected characteristic because they are both male and she is female and because Defendants

purportedly viewed Plaintiff as being sensitive to gender
discrimination.  (Id.)  Plaintiff argues that this "context" is
sufficient to support a finding that Defendants knew that
Plaintiff's request was really a complaint about "lower pay for
women."  (Id.)

The Court agrees with Defendants that Plaintiff has adduced
no evidence showing that Plaintiff engaged in a protected
activity prior to her termination and filing of the instant
lawsuit.  In her opposition, Plaintiff does not cite to any
evidence in the record to establish what she said to Defendants.
Based on the Court's independent review of the record, the only
evidence of what Plaintiff said to Defendants is that she "asked
. . . to be paid equally to Don [Enright] and Nick [Porritt]."
(Pl.'s Counter 56.1 ¶ 86 (quoting Miller Tr. 119:17-120:3).)

To demonstrate that he or she engaged in protected
activity, "[t]he onus is on the speaker to clarify to the
employer that he [or she] is complaining of unfair treatment due
to his [or her] membership in a protected class and that he [or
she] is not complaining merely of unfair treatment generally."
Filippi v. Elmont Union Free Sch. Dist. Bd. of Educ., 2012 WL
4483046, at *16 (E.D.N.Y. Sept. 27, 2012) (quoting Aspilaire v.
Wyeth Pharms., Inc., 612 F.Supp.2d 289, 308-09 (S.D.N.Y 2009));
Risco v. McHugh, 868 F.Supp.2d 75, 98-99 (S.D.N.Y. 2012)
("[I]nformal complaints must be sufficiently specific to make it

clear that the employee is complaining about conduct prohibited
by Title VII."); Rojas v. Roman Catholic Diocese of Rochester,
660 F.3d 98, 108 (2d Cir. 2011) ("The competent evidence in the
record showed that any complaints Rojas made were generalized
and therefore the Diocese could not reasonably have understood
that she was complaining of conduct prohibited by Title VII."
(internal quotation omitted)); Lucio v. N.Y.C. Dep't of Educ.,
575 F. App'x 3, 5 n.2 (2d Cir. 2014) (summary order) (to state a
claim of retaliation under NYCHRL, the plaintiff show "that her
employer could have been aware that" she was opposing
discriminatory practice) (citing Albunio v. City of N.Y., 16
N.Y.3d 472, 479 (N.Y. 2011)).  Thus, a plaintiff must adduce
evidence showing that the plaintiff's employer "must have
understood, or been able to understand, that plaintiff's
opposition was directed at conduct prohibited by Title VII."
Velasquez v. Goldwater Mem'l Hosp., 88 F.Supp.2d 257, 264
(S.D.N.Y. 2000); Ramos v. City of New York, 1997 WL 410493, at
*2-3 (S.D.N.Y. 1997) ("[I]n order to be protected activity the
complainant must put the employer on notice that the complainant
believes that discrimination is occurring."); Johnson v. City
Univ. of N.Y., 48 F.Supp.3d 572, 577 (S.D.N.Y. 2014) ("It is
objectively unreasonable to believe that complaining about poor
treatment in the workplace entirely unrelated to any trait,
protected or otherwise, is a 'protected activity' under Title

VII."); Ruhling v. Tribune Co., 2007 WL 28283, at *21 (E.D.N.Y. Jan. 3, 2007) (complaint of favoritism was not protected activity where plaintiff had not framed a complaint as involving discriminatory conduct).

Asking to be paid like two individuals who happen to be male, under these facts, is not enough to put the Defendants on notice that Plaintiff was complaining of a gender-based pay disparity. Even viewing the evidence in the light most favorable to Plaintiff, she "has failed to raise a triable issue of fact demonstrating that she was engaged in protected activity," and Defendants are entitled to "summary judgment on Plaintiff's retaliation claims" to the extent her retaliation claims are based on their actions prior to Plaintiff's filing her lawsuit. Velasquez, 88 F. Supp. 2d at 264 (summary judgment granted where "Plaintiff never told [employer] that she believed that [a] policy was discriminatory" and "did not in any way link her comments to her protected status"); Ramos, 1997 WL 410493, at *3 (declining to find that employer with "extensive civil rights record" should have "draw[n] the inference" that plaintiff's complaint was that he was treated unfairly due to membership in protected class when plaintiff's "complaint [did not] make that point sufficiently clear" and granting summary judgment). Defendants are therefore granted summary judgment as

to Plaintiff's retaliation claims to the extent those claims
rely on pre-litigation conduct.

Defendants' assertion of counterclaims after Plaintiff
filed her lawsuit, however, is a different matter.  The filing
of a lawsuit asserting claims for discrimination is protected
activity, and Defendants clearly had notice of that protected
activity because they answered the Complaint and asserted
counterclaims.  Grauer v. UBS Fin. Servs., Inc., No. 07 CIV.
5450 (LAP), 2008 WL 11398936, at *7 (S.D.N.Y. Dec. 17, 2008)
(finding that plaintiff "engaged in a protected activity when he
filed [discrimination] suit" and observing that defendant
"clearly had notice of the suit because it has asserted
counterclaims"); Torres v. Gristede's Operating Corp., 628 F.
Supp. 2d 447, 472 (S.D.N.Y. 2008) (finding that there was no
question that plaintiffs "participated in a statutorily
protected activity when they filed formal complaints" and that
defendants knowledge of plaintiffs "engagement in protected
activity is also undisputed: [defendant] answered the
[plaintiffs'] initial complaint").  Furthermore, "[c]laims or
lawsuits designed to deter claimants from seeking legal redress
may, under certain circumstances, constitute impermissibly
adverse retaliatory actions." Robinson v. De Niro, No. 19-CV-
09156 (LJL), 2023 WL 4862772, at *32 (S.D.N.Y. May 25, 2023)
(cleaned up).  Such claims are actionable when there is evidence

showing "that the lawsuit or counterclaim was filed both with a retaliatory motive and that it was filed without a reasonable basis in fact or law." Id. (cleaned up).

Defendants argue that they are entitled to summary judgment on this claim because their counterclaims were not "totally baseless," relying on the evidence derived via discovery that, according to Defendants, shows that Plaintiff was a "faithless and disloyal" employee and that she tortiously interfered with Defendants' prospective economic advantage. (Defs.' Br. 32.) Defendants further argue that Plaintiff cannot establish the requisite retaliatory motive. (Id.) Plaintiff both opposes Defendants' motion to summary judgment and affirmatively moves for summary judgment on her claim based on the retaliatory counterclaims. (Pl. Br. 37-41.)

Defendants' arguments regarding the baselessness of their claims are misguided. The question is what Defendants knew when they asserted their counterclaims. See Robinson, 2023 WL 4862772, at *32 (focusing on whether the facts and the law supported the counterclaims at the time of filing). Pointing to evidence Defendants ascertained after they asserted their claims does not demonstrate that their counterclaims, at the time they

were asserted, had a basis in fact.[10]  Defendants do not argue,
much less identify evidence showing, that they were aware of any
of the facts on which they now rely prior to the assertion of
their claims.  And the only evidence in the record suggests that
Defendants "didn't have . . . evidence" to support their
counterclaims and were instead relying on "intuition."  (Levi
Tr. 306:7-307:16; see also Levi Tr. 306:7-307:20 (when asked to
identify his "factual basis," "other than the e-mails" disclosed
in discovery, for believing that Plaintiff disparaged
Defendants, Levi testified that he relied on his "intuition
. . . that she was working against us" and his "impression" that
Plaintiff was "trying to exclude" Korsinsky, which his
"intuition le[d] [him] to believe that maybe there's a reason
for that"); Korsinsky Tr. 384:10-386:3 (testifying that his
suspicions were based on his "intuition").)  Indeed, Korsinsky
even testified that "until discovery, we really didn't have the
hard facts of the scheme – of the various schemes and lies."
(Korsinsky Tr. 386:20-387:8.)  Beyond their explicit testimony
that they were not aware of facts supporting their counterclaims
prior to filing, Defendants also implicitly admit this by
pointing only to evidence adduced through discovery to argue

---

[10] And, the Court notes, Defendants have not attempted to revive
their prior claims based on this evidence, which is further
evidence that the claims do not have merit even with the benefit
of post-claim discovery.

that their counterclaims were not baseless, instead of
identifying a single fact that they were aware of prior to
filing the claims. As such, the Court concludes that the
undisputed evidence demonstrates that Defendants had no factual
basis to assert their counterclaims at the time they asserted
them, rendering those counterclaims baseless.[11]

Plaintiff has also adduced evidence sufficient to establish
retaliatory motive. Defendants' counterclaims were filed
"shortly after" Plaintiff filed her lawsuit, and "temporal
proximity can support a causal connection at the prima facie
stage." Ebel v. G/O Media, Inc., No. 20 CIV. 7483 (PAE), 2022
WL 2359245, at *26 (S.D.N.Y. June 30, 2022). Furthermore,
"[o]ther considerations strengthen this inference." Torres, 628
F. Supp. 2d at 474. For example, as discussed above, Defendants
filed their "counterclaims without" having a factual basis. See

---

[11] The Court also rejects Defendants' argument that Plaintiff
cannot demonstrate any adverse action because "she has enjoyed
material success since the counterclaims were filed" and
"continues to be employed by the same law firm that hired her in
July 2019." (Defs.' Br. 31-32.) It is sufficient that
Defendants' "allegations and implications of the counterclaim[s]
shed a negative light on [P]laintiff's professionalism and
ethics in a profession that holds such qualities in high
regard." Yankelevitz v. Cornell Univ., No. 95 CIV. 4593 (PKL),
1996 WL 447749, at *5 (S.D.N.Y. Aug. 7, 1996). Harm to her
professional reputation and the need to defend against a
retaliatory lawsuit could well dissuade a reasonable person from
filing a complaint. Nunez v. Metro. Learning Inst., Inc., No.
18-CV-1757(EK)(VMS), 2021 WL 1176219, at *5 (E.D.N.Y. Mar. 29,
2021). The Court declines to hold that the harm must be
employment specific. Id.

id.  Furthermore, Defendants only "half-heartedly support[ed]
the counterclaims," id., failing even to attempt to amend
following dismissal or, even today, to revive their
counterclaims based on the discovered evidence that supposedly
renders those counterclaims meritorious.  Thus, the burden
shifted to Defendants "to articulate some legitimate, non-
retaliatory reason for the employment action."  Kwan, 737 F.3d
at 845 (citations omitted).  Instead of doing so, Defendants
rely solely on their argument that Plaintiff did not satisfy her
prima facie burden and offer no such reason or alternative
explanation.  (Defs.' Br. 32; Defs.' Reply Br. 12.)  As such,
Plaintiff's prima facie showing, which arguably just meets the
threshold, is completely unrebutted, and she is entitled to
summary judgment on her retaliation claims that are based on
Defendants' counterclaims.

> **D.   Breach of Contract**

Plaintiff's breach of contract claim to recover payment for
accrued but unused vacation days that remained at the time of
her employment termination is without merit.  There is no breach
of contract claim because there was no contract requiring
payment for vacation time.  The handbook language is clear: the
handbook "does not constitute an express or implied employment
contract."  (Pl.'s Counter 56.1 ¶ 33.)  The handbook does not
create an "implied contractual obligation upon the defendants to

pay the plaintiff for his unused vacation time" because of its "conspicuous inclusion of language disclaiming any intent to create a binding contract." Martin v. S. Container Corp., 938 N.Y.S.2d 335, 338 (2d Dep't 2012) (quoting Lobosco v. New York Tel. Co./NYNEX, 96 N.Y.2d 312, 317 (N.Y. 2001) ("Routinely issued employee manuals, handbooks and policy statements should not lightly be converted into binding employment agreements.")). Even if the Court assumed the handbook was a contract, which it was not, Defendants would not be required to pay Plaintiff for her accrued but unused vacation time.  The handbook is perfectly clear: "[e]mployees will not be given vacation pay in lieu of vacation time off."  (Pl.'s Counter 56.1 ¶ 48.)  Based on the clear language, Defendants had no obligation to pay Plaintiff for accrued but unused vacation time.  As such, there is no genuine issued of fact because Plaintiff is not entitled to vacation pay and Defendants are granted summary judgment on Plaintiffs' breach of contract claim.

## IV.  Conclusion

For the reasons set forth above, Defendants' motion for summary judgment on Plaintiffs claims for discrimination under the NYSHRL, NYCHRL, and Title VII (Counts 1, 6, 7, and 8) is DENIED.  Defendants' motion for summary judgment on Plaintiff's claims for violations of the EPA and the NY Equal Pay Law (Counts 3 and 5) and breach of contract (Count 10) is GRANTED.

Defendants' motion for summary judgment on Plaintiff's claims
for retaliation under the NYSHRL, NYCHRL, EPA, and Title VII
(Counts 2, 4, and 9) is GRANTED as to the portion of Plaintiff's
claims that are based on conduct that preceded Plaintiff's
lawsuit and DENIED as to the portion of Plaintiff's claims that
are based on Defendants' filing of counterclaims.  Plaintiff's
cross-motion for summary judgment on her claims of retaliation
based on Defendants' filing of counterclaims is GRANTED.

The Clerk of the Court shall close the open motions at dkt.
nos. 106 and 118.  Counsel shall confer and inform the Court by
letter no later than October 11, 2023, how they propose to
proceed.

**SO ORDERED.**

Dated:     September 27, 2023
           New York, New York

_Loretta A. Preska_
LORETTA A. PRESKA
Senior United States District Judge

44